Daniel J. O'Connor (*Pro Hac Vice*)
Edward K. Runyan (*Pro Hac Vice*)
**BAKER & MCKENZIE LLP**
One Prudential Plaza
130 East Randolph Drive
Chicago, IL 60601
Telephone: +1 312 861 8000
daniel.j.oconnor@bakernet.com
edward.k.runyan@bakernet.com

Tod L. Gamlen (SBN 83458)
**BAKER & MCKENZIE LLP**
660 Hansen Way
Palo Alto, CA 94303-1044
Telephone: +1 650 856 2400
tod.l.gamlen@bakernet.com

Attorneys for Plaintiff

BARCO N.V.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| BARCO N.V., a Belgian corporation<br><br>    Plaintiff,<br><br>    v.<br><br>TECHNOLOGY PROPERTIES LTD.,<br><br>PATRIOT SCIENTIFIC CORP., and<br><br>ALLIACENSE LTD.,<br><br>    Defendants. | Case No.  **C 08 05398 JF**<br><br>**BARCO'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,809,336** |

TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................1

II.     BACKGROUND – THE TECHNOLOGY OF THE '336 PATENT. .............................3

III.    APPLICABLE LAW ................................................................................................4

IV.     ARGUMENT ...........................................................................................................7

        A.      Barco Is Entitled To Summary Judgment Under *Exigent*........................7

        B.      Barco Is Entitled To Summary Judgment Based On TPL's Inadequate
                Infringement Contentions. ........................................................................9

        1.      TPL's Infringement Contentions Rely Upon Publications That Have No
                Connection To The Accused Products..................................................12

        2.      TPL's Infringement Contentions Rely Upon Technical Information For
                Chips Other Than The Accused Chips..................................................15

        3.      TPL's Contentions Are Speculative And Conclusory Rather Than Factual...........18

        4.      TPL's Infringement Contentions Omit Claim Limitations....................21

V.      CONCLUSION .....................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................5, 6

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
731 F.2d 831 (Fed. Cir. 1984)...............................................................................5

*Berger v. Rossignol Ski Co., Inc.*,
2006 WL 1095914 (N.D. Cal. April 25, 2006), *aff'd*, 2007 WL 200935 (Fed. Cir. Jan.
12, 2007), *cert. denied* 128 S.Ct. 48 (2007)......................................................9

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002).............................................................................14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986).........................................................................................4, 5, 6

*Continental Can Co. v. Monsanto Co.*,
948 F.2d 1264 (Fed. Cir. 1991).............................................................................5

*Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.*,
347 F.3d 1314 (Fed. Cir. 2003).............................................................................10

*Exigent Technology, Inc. v. Atrana Solutions, Inc.*,
442 F. 3d 1301 (Fed. Cir. 2006)................................................................... passim

*FEC v. Toledano*,
317 F.3d 939 (9th Cir. Cal. 2002).........................................................................6

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
2005 U.S. Dist. LEXIS 41837 (N.D. Cal. Sept. 2, 2005) ...................................7, 10

*Genentech, Inc. v. Amgen, Inc.*,
289 F.3d 761 (Fed. Cir. 2002)...............................................................................9

*Lockheed Martin Corp. v. Space Sys./Loral, Inc.*,
324 F.3d 1308, 1321 (Fed. Cir. 2003)...................................................................10

*Moore USA, Inc. v. Standard Register Co.*,
229 F. 3d 1091 (Fed. Cir. 2000)............................................................................21

*O2 Micro International, Ltd. v. Monolithic Power Systems, Inc.*,
467 F.3d 1355 (Fed. Cir. 2006).............................................................................9

*Pennwalt Corp. v. Durand-Wayland, Inc.*,
　833 F.2d 931 (Fed. Cir. 1987) (*en banc*) ..............................................................................10

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.*,
　491 F.3d 1342 (Fed. Cir. 2007)..............................................................................................14

*Phonometrics, Inc. v. Northern Telecom, Inc.*,
　133 F.3d 1459 (Fed. Cir. 1998)..............................................................................................5

*Renesas Tech. Corp. v. Nanya-Tech. Corp.*,
　2004 U.S. Dist. LEXIS 23601 (Nov. 10, 2004)........................................................7, 11, 15

*TechSearch, L.L.C. v. Intel Corp.*,
　286 F.3d 1360, 1369-70 (Fed. Cir. 2002) ..............................................................................6

*Utstarcom, Inc. v. Starent Networks Corp.*,
　2009 U.S.Dist. LEXIS 93869 (NDIL, Sept. 16, 2009) ..........................................................6

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
　520 U.S. 17, 29 (1997).............................................................................................................10

*Wolverine World Wide, Inc. v. Nike Inc.*,
　38 F.3d 1192 (Fed. Cir. 1994)................................................................................................15

**PLEASE TAKE NOTICE** that on January 14, 2010 at 9:00 a.m., or as soon thereafter as counsel may be heard, the undersigned shall appear before Judge Jeremy Fogel in the Courtroom usually occupied by him (i.e., Courtroom 3, fifth floor) at the U.S. Courthouse, 280 South 1st Street, San Jose, CA 95113, and then and there present the following motion by and on behalf of Plaintiff, Barco N.V.: MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT OF U.S. PATENT NO. 5,809,336.

**RELIEF REQUESTED:** Barco N.V. seeks Summary Judgment that it does not infringe the asserted claims of United States Patent No. 5,809,336.

## I. INTRODUCTION.

Defendants TPL, Patriot Scientific Corp. and Alliacense Ltd. (collectively "Defendants" or "TPL") allege that Barco N.V. ("Barco") infringes three patents: United States Patent Nos. 5,440,749; 5,530,890; and 5,809,336. All three of these patents concern various aspects of microprocessors. Defendants allege that certain Integrated Circuits ("ICs" or "chips") in Barco's products contain microprocessors or features relating to microprocessors that infringe the patents. Barco does not make or design microprocessors. Instead, Barco buys products that contain microprocessors, "off-the-shelf", from chipmakers and uses them as components in its products, which are projectors and other video-related products.

Barco moves herein for summary judgment of noninfringement of U.S. Patent No. 5,809,336 ("the '336 Patent") pursuant to *Exigent Technology, Inc. v. Atrana Solutions, Inc.*, 442 F. 3d 1301 (Fed. Cir. 2006). In *Exigent*, the Federal Circuit held that a party seeking summary judgment of noninfringement need not present evidence of noninfringement. Instead, a party may move for summary judgment of noninfringement by stating the limitations that are not met by its product, pointing out how they are not met, and stating that the patent holder does not have

evidence of infringement: "[W]e conclude that nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations."  442 F. 3d at 1308-09.

In this motion, Barco does precisely what is set forth in *Exigent*.  Barco states that TPL will not be able to establish that any accused Barco product infringes any claim of the '336 patent. Specifically, as more fully set forth herein, each claim of the '336 patent requires a microprocessor with a variable speed clock, and the accused microprocessors in Barco's products lack a variable speed clock.  Further, Barco states that the clocks in the accused products are fixed, not variable, and are thus the opposite of what the claims require.  There is no need for claim construction, because there is no construction of variable speed clock that would be met by the accused products – they have a fixed clock.[1]  It would be wasteful for Barco to be required to continue on in this case under the '336 patent under these circumstances.

Further following the roadmap of *Exigent*, Barco states that TPL does not have evidence of infringement.  Barco makes this statement based on the infringement contentions of TPL which make no attempt to show that Barco's products have a microprocessor with a variable speed clock. Indeed, TPL's claim charts, which are a part of the infringement contentions, do not show the location of any specific accused circuitry or components, but instead only provide conclusory allegations.  They are based not on any reverse engineering or scientific analysis, but rather on general product literature.  Nonetheless, those contentions, as inadequate as they are, do not even mention the "variable speed" limitation.

As revealed by their infringement contentions for the '336 patent, Defendants allege infringement of highly complex circuit structures that must be *inside* an integrated circuit chip.

---

[1] Moreover, the parties have agreed to a definition of "variable speed" as:  "capable of operating at different speeds."

However, most of their contentions begin with a photograph of the *outside* of the chip and the circuit board it is on and do not go much further. In addition, for at least two limitations of every asserted claim, Defendants base their allegations of infringement *not on any actual product*, but on published articles and papers that have no connection to the accused products. Defendants' contentions are not based on any reverse engineering of the accused chips or on any other scientific analysis or study of the accused chips.

Under this District's Patent Local Rules and this Court's Orders, Defendants were required to set forth their infringement contentions *with particularity* in February 2009. For the three asserted patents, however, Defendants served only vague, speculative and conclusory statements that are not sufficient to establish infringement or to preclude summary judgment as a matter of law. Because Defendants' infringement contentions for the '336 Patent do not support their infringement claims regardless of what claim construction is used, there is no need for the Court to construe the claims before granting summary judgment of noninfringement. Therefore, under *Exigent*, Barco is entitled to summary judgment of noninfringement of the '336 Patent as a matter of law. Further, Barco is entitled to summary judgment because the Defendants' infringement contentions are woefully deficient under this Court's Patent Local Rules.

## II. BACKGROUND – The Technology Of The '336 Patent.

U.S. Patent No. 5,809,336 ("High Performance Microprocessor Having Variable Speed System Clock")("the '336 patent") is directed generally to a microprocessor system on a single integrated circuit, wherein the central processing unit is driven by a variable speed clock. All claims require a variable speed system clock. *See* Exh. B at claims 1, 6, 10, 11, 13, and 16 (i.e., all of the independent claims of the patent). The claims also require a second clock that is independent of the variable speed clock that is connected to an on-chip input/output interface. *Id.*

The variable speed clock is described and claimed as an "entire ring oscillator" variable speed system clock. *Id.*

The variable speed allows the clock to vary in accordance with temperature changes, voltage swings, and variations in semiconductor processing, all of which can affect transistor propagation delays. '336 patent, col. 16, ln. 45-49.  Because the ring oscillator system clock in the patented invention is made from the same transistors on the same die as the microprocessor, the inventors allege it will have the same characteristics of variability as the microprocessor.  Col. 17, ln. 5-10.

The specification distinguishes the patented microprocessor, which uses two clocks (one variable speed system clock on the same chip as the microprocessor, and a second off-chip fixed-speed clock) from "most processors" that use a single clock which is not variable speed.  Col. 17, ln. 12-37.

The purported advantage of the '336 patent is that the variable speed clock will vary with changes in temperature and voltage in the same way that the frequency capability of the CPU will vary, so that as the CPU is capable of operating at a higher speed (due to favorable temperature and voltage conditions), the variable speed clock will also run at a higher speed.  Col. 16, ln. 59 – col. 17, ln. 10.

## III.  APPLICABLE LAW

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted).  A party opposing summary judgment must demonstrate the existence of a genuine issue of material fact and may not rely solely on its pleadings or on conclusory factual allegations.  *Id.* at 322-23.  Instead, the non-moving party must offer specific evidence supporting

its claim that there exists a genuine issue of material fact. *Id.* at 324. To demonstrate that the dispute is "genuine," the non-moving party must offer evidence that would allow a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[C]ourt[s] should utilize the salutary procedure of Fed. R. Civ. P. 56 to avoid unnecessary expense to the parties and wasteful utilization of the jury process and judicial resources." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

Summary judgment is as appropriate in patent cases as it is in other areas of litigation, and should be granted where doing so would avoid unnecessary trial. *Continental Can Co. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991). Claims of noninfringement are amenable to summary judgment. *See, e.g., Phonometrics, Inc. v. Northern Telecom, Inc.*, 133 F.3d 1459, 1453 (Fed. Cir. 1998). "Although an infringement analysis usually involves both issues of law and questions of fact, summary judgment of noninfringement may still be proper." *Phonometrics,* 133 F.3d at 1463.

A party seeking summary judgment of noninfringement need not present affirmative evidence of noninfringement. Instead, a party accused of infringement need do nothing more than squarely put into focus the burden of proof that the law places on a patent holder asserting a patent. *Exigent Tech. v. Atrana Solutions, Inc.,* 442 F.3d 1301 (Fed. Cir. 2006). In the *Exigent* case, the Federal Circuit explained:

> The *Celotex* Court also made clear that all that is required is "notice [to the party with the burden of proof] that she had to come forward with all of her evidence." *Id.* at 326. In the light of *Celotex*, we conclude that nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations.

*Id.* at 1309 (quoting *Celotex*).

In *Exigent*, the Federal Circuit expressly held that there is no need for the movant to come forth with evidence that a claim element is missing, but rather the movant's burden is carried by pointing out to the district court that there is an absence of evidence on a necessary part of the non-movant's case:

> [O]n issues in which the non-movant bears the burden of proof . . . the movant need not 'produce evidence' showing the absence of a genuine issue of material fact in order to properly support its summary judgment motion. . . . 'The burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case.'

*Id.* at 1307-08 (quoting *Celotex*); s*ee Utstarcom, Inc. v. Starent Networks Corp.*, 2009 U.S.Dist. LEXIS 93869 (NDIL, Sept. 16, 2009) (recommending grant of summary judgment of noninfringement based on *Exigent*); *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1369-70 (Fed. Cir. 2002) ("Summary judgment of noninfringement is . . . appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, because such failure will render all other facts immaterial").

Unless there is sufficient evidence to enable a jury to find for the non-moving party on the issue for which summary judgment is sought, there is no issue for trial, and summary judgment should be granted. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Thus, to create a genuine issue of material fact, the party with the burden of proof (TPL in this case) must "go beyond the pleadings" and set forth specific facts to support their contention. *See Celotex*, 477 U.S. at 324. The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal. *FEC v. Toledano*, 317 F.3d 939, 950 (9th Cir. Cal. 2002) ("In order to survive a motion for summary judgment, the responding party must present competent evidence that creates a genuine issue of material fact . . . . It is no longer enough to deny the moving party's allegations in a general way,

1    or to demand that the moving party be 'put to its proof.'") (*citing Anderson v. Liberty Lobby, Inc.*,

2    477 U.S. 242, 248-52 (1986)).

3        Further, summary judgment of noninfringement in a patent case is also appropriate for

4    failure to satisfy this Court's Patent Local Rules regarding infringement contentions.  *Renesas*

5    *Tech. Corp. v. Nanya-Tech. Corp.,* 2004 U.S. Dist. LEXIS 23601, *8-9 (Nov. 10, 2004); *Fresenius*

6    *Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2005 U.S. Dist. LEXIS 41837, *30-31 (N.D. Cal.

7    Sept. 2, 2005).

8

9    **IV.   ARGUMENT**

10

11       **A.  Barco Is Entitled To Summary Judgment Under *Exigent***

12       TPL will not be able to establish, with admissible evidence, that any Barco product

13   infringes any claim of the '336 patent.  All the claims of the '336 patent require a variable speed

14   system clock[2].  No accused microprocessor has a variable speed system clock regardless of how

15   any claim is construed.  *See* Exh. P (list of asserted claims – see text highlighted in yellow).  No

16   accused microprocessor has a variable speed clock that "varies in the same way," or "tracks"[3], the

17   processing frequency (or "frequency capability") of the microprocessor as required by the claims,

18   again regardless of how any claim is construed.  *See id.* (see text highlighted in red).  Further, no

19   accused microprocessor has a clock or oscillator whose frequency or speed varies as a function of

20   manufacturing variations or variations in temperature or voltage applied to the chip, as required by

21   the claims, regardless of any claim construction.  *See id.* (see text highlighted in green).

22       For reference, a listing of the asserted claims with the limitations that are not found in the

23   accused microprocessors in highlight is attached as Exh. P.  Instead of a variable speed clock, all

24

25   _____

26   [2] The language of the claims referring to a "variable speed clock" varies slightly in form, but not in
     substance: claims 1 and 11 require "an entire ring oscillator *variable speed system clock*," claims

27   10 and 16 "an entire *variable speed clock*," and claims 6 and 13 require "varying . . . the clock
     rate."

28   [3] Again, the claim language, but not the meaning, differs between the claims.

the accused microprocessors use fixed-frequency system clocks that are designed *not to vary*, and that *do not vary* as a function of manufacturing variations or variations in temperature or voltage of the chip (as required by the claims). In other words, the system clock in the accused product is the opposite of what is claimed.

Because TPL has the burden of proving infringement at trial, it is now on notice that it must come forward with all of its evidence that the accused microprocessors meet these limitations to avoid summary judgment. *Exigent*, 442 F.3d at 1309. In *Exigent*, the Defendant stated in its summary judgment motion that the Plaintiff would "not be able to establish that any system of Atrana infringes any claim of the '885 Patent. Most importantly, no Atrana system includes a control processor meeting the requirements of any of the claims of the '885 Patent." *Id*. at 1309. The accused infringer in *Exigent* also made similar statements regarding other claim limitations that were not met by the accused products. In response, the patent owner argued that summary judgment was improper because Atrana did not support its summary judgment motion with admissible evidence establishing noninfringement. *Id*. at 1308. The Federal Circuit rejected this argument, stating that "it is clear that Atrana did not have to support its motion with evidence of noninfringement." *Id*. (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The Court went on to explain that "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Id*. at 1309. Doing so triggers the requirement at the summary judgment stage that a patent owner must come forward with all its evidence of infringement. *Id*.

Barco further asserts that TPL has no evidence that Barco meets the foregoing limitations. Barco makes this assertion based on TPL's infringement contentions (the shortcomings of which are set forth more fully in the next argument), which do not contain any evidence that the

microprocessors in Barco's products include variable speed system clocks as claimed. Therefore, under *Exigent*, Barco is entitled to summary judgment of no infringement of the '336 patent.

### B. Barco Is Entitled To Summary Judgment Based On TPL's Inadequate Infringement Contentions.

This Court's Patent Local Rules are intended to promote the prompt resolution of patent infringement disputes by requiring "parties to crystallize their theories of the case early in the litigation" so as to "prevent the 'shifting sands' approach to claim construction." *See O2 Micro International, Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (quoting *Atmel Corp. v. Info. Storage Devices, Inc., U.S. Dist. LEXIS 17564 at *7 (N.D. Cal. 1998).*

The failure to serve adequate infringement contentions has led to summary judgment of noninfringement in this district and in other courts with similar Patent Local Rules, and patentees have been barred from resisting summary judgment motions by offering theories or evidence of infringement that were not previously disclosed in their contentions. *Berger v. Rossignol Ski Co., Inc.*, 2006 WL 1095914, at *5 (N.D. Cal. April 25, 2006), *aff'd*, 2007 WL 200935 (Fed. Cir. Jan. 12, 2007), *cert. denied* 128 S.Ct. 48 (2007) (granting summary judgment of noninfringement where patentee, in opposing motion, attempted to present evidence of infringement not included in its preliminary infringement contentions; the court declined to accept evidence in summary judgment opposition or permit amendment of contentions); *see also O2 Micro*, 467 F.3d at 1366-68 (affirming district court enforcement of rule related to contentions and grant of motion for summary judgment of noninfringement); *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) (affirming summary judgment where the district court precluded patentee from asserting infringement by the doctrine of equivalents when theory had not been included in infringement claim chart.).

Moreover, Summary Judgment of Noninfringement is proper under the all-elements rule where at least one element of each asserted claim is missing from the accused products. "To prove infringement, the patentee must show that the accused device meets each claim limitation." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.,* 347 F.3d 1314, 1324 (Fed. Cir. 2003); s*ee Warner-Jenkinson Co. v. Hilton Davis Chem. Co*., 520 U.S. 17, 29 (1997); *Pennwalt Corp. v. Durand-Wayland, Inc*., 833 F.2d 931, 935-36 (Fed. Cir. 1987) (*en banc*). Summary judgment of noninfringement is proper where there is no genuine issue as to whether the accused device lacks a single claim element or its equivalent. *Lockheed Martin Corp. v. Space Sys./Loral, Inc*., 324 F.3d 1308, 1321 (Fed. Cir. 2003).

Under this district's Patent Local Rules, TPL was required to serve Infringement Contentions that identify "specifically where each limitation of each asserted claim is found within an accused instrumentality."  Patent L.R. 3-1(c).  As will be explained in detail below, the charts TPL served on Barco do not identify where each limitation is found.  In some cases, the charts do not even refer to an accused product, but instead refer to irrelevant articles, white papers, and "principles of physics."  TPL also failed to sufficiently specify whether the alleged infringement was literal or under the Doctrine of Equivalents as required by Patent L.R. 3-1(e).  Instead, TPL used the following boilerplate placeholder: "In the event that a claim element is not found to be literally present in the Accused Instrumentalities, TPL asserts that the Accused Instrumentalities infringe under the doctrine of equivalents," without disclosing its theory of infringement under the doctrine of equivalents pursuant to Patent L.R. 3-1(c).  *See, e.g.,* Exhibit C at 3:24-26 (Def.'s Patent Local Rule 3-1 Disclosure of Asserted Claims and Infringement Contentions).  This does not comply with the rules. *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2005 U.S. Dist. LEXIS 41837, *30-31 (N.D. Cal. Sept. 2, 2005) (granting summary judgment of no infringement

under the doctrine of equivalents where patentee did "not include this theory of infringement as part of its Final Infringement Contentions").

Review of TPL's contentions regarding the '336 patent shows them to be baseless, speculative, and conclusory.  None of the contentions are based on actual testing or analysis of the microscopic structure inside the accused microprocessor chips, even though that level of study of the accused products would be required to show, under the Patent Local Rules, exactly *where* the limitations of the claims are met.  The Northern District of California has held that, in cases such as this, "reverse engineering or its equivalent is required":

> To satisfy Rule 11 and Patent L.R. 3-1, courts in this district have held that a "plaintiff [must] compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products."  [*Network Caching Technology, LLC v. Novell, Inc.*, 2002 WL 32126128 *5 (N.D. Cal. Aug. 13, 2002).]  To make such a comparison, "reverse engineering or its equivalent is required."  *Id.*

*Renesas Tech. Corp. v. Nanya-Tech. Corp.*, 2004 U.S. Dist. LEXIS 23601, *8-9 (Nov. 10, 2004).

Here, the claims are all directed to specific microscopic structures within integrated circuits.  *See, e.g.*, Exhibit D ('336 patent) at claim 1: "A microprocessor system comprising a *single integrated circuit* . . .".  Instead of reverse engineering the accused products or providing an equivalent to reverse engineering, as they were required to do, each and every one of TPL's "analyses" begins with an image of the *outside* (i.e., packaging) of a chip that is accused.  The contentions regarding what is inside the chips are pure speculation, fabrication, and conclusion.

TPL's contentions are rife with the phrase "Reverse Engineering Report" or "Teardown Report" but the contentions do not even come close to real reverse engineering, which in the case of integrated circuits means de-lidding the accused chips and taking photographs of the microscopic circuitry inside ("photomicrographs") and then creating schematics from the photomicrographs showing where and how the circuitry is connected as claimed.  *See, e.g.,* Exh. H

at 3, 4, 8, etc.; Exh. I at 3, 4, 6, etc.  In stark contrast to this, TPL's contentions *do not show where a single physical component* inside the accused chips is located.

### 1. TPL's Infringement Contentions Rely Upon Publications That Have No Connection To The Accused Products.

TPL's contentions are all fatally flawed.  For <u>at least two limitations</u> of <u>every</u> independent claim, they do not even refer to any accused, actual product to show where the limitations are, but instead refer to publications that have no connection to the accused products, without attempting to explain why the publications are pertinent.  TPL's contentions in this regard are often identical for different products, and where they are not identical, they are nearly so.  The following are examples from TPL's claim charts:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



25  Exhibit I at 9-10 (emphasis in original).

26
27
28

TPL's infringement contentions as to each independent claim of the '336 Patent and each accused product are replete with references to "Zuchowski" and "Sundaresan."[4]   Some also cite "Fetzer."   For the claim limitations where they are cited, the Zuchowski and Sundaresan publications are the only purported "evidence" of infringement TPL provides.   Not only do these contentions fail to comply with Patent L.R. 3-1(c) (requiring "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality"), no reasonable jury could find infringement based upon these contentions.   In a patent infringement case, there is a strict requirement that the *accused product* be compared to the claims.   *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1365, (Fed. Cir. 2002); *see also Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1350-51 (Fed. Cir. 2007) (finding that the patent owner's reliance on "indirect evidence in the form of advertising and other materials generated by the defendants," instead of "direct testing or other scientific evidence" was insufficient to support the patent owner's theory of infringement).

In addition, all of TPL's contentions for the asserted independent claims include a statement just as irrelevant as those above, as follows:



*See*, *e.g.,* Exh. D at 5.   This conclusory statement (and similar statements) about "the laws of physics" and "the state of the art" does not and cannot show that any Barco product meets the claim limitation of a ring oscillator and a processing frequency varying together or tracking each

---

[4] *See* Exh. D at 4-5, 9-10, 14, 17-18, 22-23, 27-28, 32, 35-36; Exh. E at 4-5, 9-10, 14, 17-18, 22-23, 27-28, 32, 35-36; Exh. F at 6-7, 11-12, 14, 19-20, 24-25, 29-30, 32-33, 37-38; Exh. G at 7-8, 12-13, 15-16, 20-21, 25-26, 30-31, 33-34, 38-39; Exh. H at 7-8, 14-15, 18-19, 25-26, 32-33, 39-40, 43-44, 50-51; Exh. I at 9-10, 17-18, 23, 29-30, 37-38, 45-46, 51, 57-58; Exh. J at 6-7, 13-14, 19, 24-25, 31-32, 38-39, 44, 49-50; Exh. K at 7-8, 11-15, 19, 25-26, 32-33, 39-40, 44, 50-51; Exh. L at 7-8, 12-13, 15-16, 20-21, 25-26, 30-31, 33-34, 38-39; Exh. M at 7-8, 12-13, 15-16, 20-21, 25-26, 30-31, 33-34, 38-39; Exh. N at 8-9, 13-14, 17, 22-23, 27-28, 32-33, 36, 41-42.

other.  The California District Courts require reverse engineering or "its equivalent."  *Renesas Tech., supra*.  A vague reference to the laws of physics and the state of the art does not meet this standard.

As noted above, TPL's irrelevant contentions appear for every independent claim, for two limitations.  Under the all-elements rule, if the contentions show that just one limitation cannot be found in an accused device, the device does not infringe.  Further, if an accused product does not infringe an independent claim, then that same accused product cannot infringe any of the dependent claims that derive from that independent claim.  *Wolverine World Wide, Inc. v. Nike Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).  This is because any dependent claim *includes* all the limitations of the independent claim from which it depends.  Therefore, TPL's contentions fail to show that Barco infringes *any* claim of the '336 patent.

### 2. TPL's Infringement Contentions Rely Upon Technical Information For Chips Other Than The Accused Chips.

Many of TPL's contentions are also deficient because they accuse one particular chip of infringing, but rely on technical information from a <u>different</u> chip or product to purportedly show that a claim limitation is met.  In each instance where TPL has done this, there are no facts and no sufficient explanation linking the non-accused product to the accused product.  For example, TPL accuses Barco's RLM R6+ projector of infringing because it uses a Texas Instruments DDP1011 chip, but the only information specific to Texas Instruments in TPL's contentions is for a Texas Instruments DDP1000, without a single word explaining how the DDP1011 might have the same features of the DDP1000.  TPL weakly suggests, without proof, that these two Texas Instruments products are in the same "family," but even if true, that does not prove that the DDP1011 has the same accused features as the DDP1000.  The following excerpt from TPL's contentions shows TPL's jump from the accused DDP1011 to the DDP1000:



Exh. K at 3 (red ovals added).

The following table lists the Barco products and accused chips for which TPL has "analyzed" a non-accused chip or product in its contentions to purportedly show how Barco infringes.

| Barco Product | Accused Chip | Non-Accused Product (relied upon for "infringement") |
|---|---|---|
| iCon H400 Projector[5] | DDP3020 (Texas Instruments) | CDCDLP223 (Texas Instruments) |
| SIM 5R Projector[6] | DDP3020 (Texas Instruments) | CDCDLP223 (Texas Instruments) |
| SLM R12 Projector[7] | DDP1011 (Texas Instruments) | DDP1000 (Texas Instruments) |
| AXON Media Server[8] | TTB4398A0 (LSI Logic) | ARM7TDMI[9] Core |
| iCon H500/H250 Projector[10] | DDP3020 (Texas Instruments) | CDCDLP223 (Texas Instruments) |
| iD R600 Projector[11] | DDP3020 (Texas Instruments) | CDCDLP223 (Texas Instruments) |

For these accused products, TPL has alleged that a non-accused chip or core meets the claim limitation for every asserted independent claim, or shows that it is met be the accused chip without showing any connection between the accused chip and the non-accused chip. No reasonable jury could find that the presence of a feature in DDP1000 chip proves that a DDP1011 chip infringes a patent, and the same is true for the DDP3020 and TTB4398A0 chips. Accordingly, TPL cannot show infringement of <u>any</u> asserted claim for these products.

---

[5] *See* Exh. F at 3, 5, 8, 10, 13, 16, 18, 21, 23, 26, 28, 31, 34, 26, 39.
[6] *See* Exh. G at 3, 6, 9, 11, 14, 17, 19, 22, 24, 27, 29, 32, 35, 27, 40.
[7] *See* Exh. H at 3, 9, 10, 16, 17, 27, 28, 34, 35, 41, 42, 52, 53.
[8] *See* Exh. I at 4, 7, 15, 27, 35, 43, 55.
[9] For the TTB4398A0 contention, TPL relies on an LSI application brief which states that "A typical HDD has a dual ARM MPU." Exh. I at 5 (PIC00001813). The application brief makes no mention of the accused TTB4398A0 product, nor does it mention the ARM7TDMI processor that TPL alleges is in the TTB4398A0. TPL shows no link at all between the accused TTB4398AO and the ARM7TDMI core.
[10] *See* Exh. L at 3, 6, 9, 11, 14, 19, 22, 24, 27, 29, 32, 35, 37, 40.
[11] *See* Exh. M at 3, 6, 9, 11, 14, 19, 22, 24, 27, 29, 32, 35, 37, 40.

### 3.  TPL's Contentions Are Speculative And Conclusory Rather Than Factual.

TPL's contentions are also deficient because they ask the Court to assume that limitations are present without showing where the accused devices contain them.  As a glaring example, for the limitation of an "entire ring oscillator *variable speed system clock*" (or "entire *variable speed clock*") of asserted claims[12] 1, 6, 7, 9, 10, 11, and 13-16, the contentions are devoid of any showing of a *variable speed* clock in any of the accused products.   At most, the contentions offer speculation that the accused products have a ring oscillator,[13] but they completely ignore the rest of the claim limitation—a variable speed clock, of which a ring oscillator *could* be (but is not necessarily) a part.

TPL's contention for Barco's Axon Media Server is also representative of this shortcoming. For the limitation of claim 1 regarding the "variable speed system clock" limitation, TPL states that



Exh. I at 8 (emphasis added).   Again, TPL's infringement contentions are replete with similar, insufficient contentions.[14]   These contentions show that TPL is not even sure there *is* a ring oscillator, that it cannot say *where* it is (as required by the Patent Local Rules) if it exists, that it cannot say what *kind* of a ring oscillator it is, and cannot show that it is *connected* to a central processing unit as required by the claims.   Moreover, these contentions do not even address the

---

[12] Claims 1 and 11 refer to the element as an "entire ring oscillator variable speed system clock;" claims 6, 7, 9, 13-15 as "an entire oscillator . . . varying"; claims 10, 15 and 16 as an "entire variable speed clock."

[13] A ring oscillator is a specific type of oscillator, which creates a voltage signal that changes over time (i.e., generates a signal with a frequency) from a non-varying (DC) voltage.

[14] *See* Exh. F at 5, 10, 16, 18, 23, 28, 34, 36; Exh. G at 6, 12, 17, 20, 24, 30, 35, 38; Exh. H at 6, 13, 21, 24, 31, 38, 46, 49; Exh. I at 8, 16, 25, 28, 36, 44, 53, 56; Exh. J at 5, 12, 21, 23, 30, 37, 46, 48; Exh. K at 6, 13, 21, 24, 31, 38, 46, 49; Exh. L at 6, 12, 17, 20, 24, 30, 35, 38; Exh. M at 6, 12, 17, 20, 24, 30, 35, 38; Exh. N at 7, 12, 19, 21, 26, 31, 38, 40.

remainder of the claim limitation regarding "variable speed."  Even further, TPL contends that, *if a ring oscillator is present, it may be "* ███████████████████████████████

███████████████████ *".*  *Id.*  However, claims 1 and 11 require that the variable speed clock (which TPL alleges comprises the ring oscillator) must vary due to "operating voltage" of the integrated circuit."  Exhs. A-B, '336 Patent and its reexamination certificate, claims 1, 11.  TPL does not explain how a person of ordinary skill in the art would understand that a *current* controlled oscillator would form a variable speed clock that varies due to the operating *voltage* of the integrated circuit as required by the claims.  TPL's contentions that rely on such speculation are inadequate to resist a motion for summary judgment.

The co-inventor of the '336 Patent, Charles Moore, admitted that it is not possible to tell from the mere presence of a phase-locked loop (PLL) if a circuit contains the on-chip clock of the invention:



Exh. Q, Dep. Of Charles Moore, *TPL v. Matsushita*, 2-05CV-494 (TJW).  The schematic referred to, deposition exhibit 41 (from TPL's contentions in the Texas case) is reproduced below, and shows as much or more detail than TPL's contentions against Barco.



Exh. R.  This contention is very similar to those TPL has served on Barco in this case.

How the <u>variable speed</u> clock limitation is met by any accused product is entirely missing from TPL's contentions.  Even if TPL had shown that a ring oscillator is present, which they have not, they have made no showing that a ring oscillator necessarily varies in frequency (or speed, as it is also referred to in the '336 patent).  TPL offers no explanation of how one of ordinary skill in the art would understand that a ring oscillator is a variable speed clock.

TPL also uses its inadequate "indicates the presence of" language for the claim limitation of a "second clock independent of said ring oscillator variable speed system clock connected to said input/output interface."  With just slight changes for different accused products, the following is representative of the substance of all of TPL's contentions regarding this claim limitation:

Exh. I at 13 (Contention for Barco's Axon Media Server) (emphasis added).  TPL's contentions include this speculative, boilerplate language for every asserted claim and nearly every accused

product[15,16].  Incredibly, TPL contends that because an *entire circuit board* has a SATA input or output, a *particular chip* on that board (the chip TPL chooses) has "a second clock independent of said ring oscillator variable speed system clock connected to said input/output interface, wherein a clock signal of said second clock originates from a source other than said ring oscillator variable speed system clock."

TPL's statement that this alleged second clock "███████████████████████" is entirely conclusory and unsupported by evidence.  There is no evidence or explanation of the clock's independence whatsoever in the contentions.  The contentions do nothing but copy and paraphrase the claim language itself.  Such conclusory assertions are insufficient as a matter of law. *Moore USA, Inc. v. Standard Register Co.*, 229 F. 3d 1091, 1112 (Fed. Cir. 2000).  In addition, the contentions do not even allege that the second clock is connected to the claimed input/output interface as claimed.  TPL's vague statement that a particular communication system "███████ ██████████████" does not show where any alleged second clock is, or how it is connected. Indeed, even if it is true that a particular communication system "██████████████████ ████," the clock that generates those timing signals need not be connected to the input/output interface of the accused chip, and the clock need not be independent of the first clock on the chip.

### 4.   TPL's Infringement Contentions Omit Claim Limitations.

For the limitation of an "entire ring oscillator *variable speed system clock*" (or "entire *variable speed clock*" or "entire *oscillator*" that has a "varying" frequency) of all asserted claims (1, 6, 7, 9, 10, 11, and 13-16), TPL's contentions are devoid of any showing of a *variable speed* clock

---

[15] The only exception is that for some accused products, the Barco iCon H400, SIM 5R, SLM R12+, RLM R6+, iCon H500/H250, DX-700, and ID R600+ products, TPL made no statement at all explaining where this limitation is met in the accused product.  None of the contentions include *more* detail than the statement (like the one above) that embedded timing signals indicate the presence of a second clock, which is independent of the CPU clock.

[16] *See* Exh. D at 7, 12, 20, 25, 30, 38; Exh. I at 13, 21, 33, 41, 49, 61; Exh. N at 10, 15, 24, 29, 34, 43.

in any of the accused products.   At most, the contentions offer speculation that the accused

products have a ring oscillator.   As discussed in more detail above, ring oscillators do not

necessarily vary in frequency, and TPL offers no explanation of how one of skill in the art would

understand that the *accused*, alleged ring oscillator is *necessarily* a variable speed clock.   Indeed,

the claim language "entire ring oscillator variable speed system clock" indicates that more than *just*

a ring oscillator is required.   The following illustrates TPL's failure to show the variable speed

limitation:



Exh. I at 8 (Purported analysis of Barco Axon Media Server compared to claim 1).   This contention

is representative: *none* of TPL's contentions show any more than this as to the "variable speed"

limitation of any asserted claim.   Exh. D-N.   TPL's failure to show a variable speed clock in its

contentions means that Barco should be granted summary judgment of noninfringement of all the asserted claims, specifically claims 1, 6, 7, 9, 10, 11 and 13-16.

## V.  CONCLUSION

Barco submits that it has established it is entitled to summary judgment on two bases: under the approach set forth in *Exigent*, and by reason of the inadequacy of TPL's infringement contentions.  Accordingly, Barco respectfully requests that this Court enter summary judgment of noninfringement of the '336 patent in favor of Barco.

Dated:  December 1, 2010                              BAKER & McKENZIE LLP


                                                     By: s/ Edward K. Runyan
                                                         Edward K. Runyan
                                                         Daniel J. O'Connor
                                                         Tod L. Gamlen
                                                         Attorneys for Plaintiff Barco N.V.

1

## PROOF OF SERVICE

2

I, Nataliya S. Schouten, declare I reside in the State of Illinois, over the age of eighteen
3
years, and not a party to the within action; my business address is Baker & McKenzie LLP,
130 East Randolph Drive, Chicago, IL  60601.  On December 1, 2010, the following
4
documents were served:

5
   **1.  BARCO'S   MOTION   FOR   SUMMARY   JUDGMENT   OF   NON-
6         INFRINGEMENT OF U.S. PATENT NO. 5,809,336**

7  by transmittal via email to the persons listed below:

8          Charles T. Hoge
           choge@knlh.com
9          Counsel for Patriot Scientific Corp.

10
I declare under penalty of perjury under the laws of the State of Illinois that the above is true
11
and correct.

12
Executed on December 1, 2010, at Chicago, Illinois.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28