1   John L. Cooper (State Bar No. 050324)
        jcooper@fbm.com
2   Nan Joesten (State Bar No. 191288)
        njoesten@fbm.com
3   Eugene Y. Mar (State Bar No. 227071)
        emar@fbm.com
4   Farella Braun & Martel LLP
    235 Montgomery Street, 17th Floor
5   San Francisco, CA 94104
    Telephone:    (415) 954-4400
6   Facsimile:    (415) 954-4480

7   Attorneys for Defendants
    TECHNOLOGY PROPERTIES LIMITED
8   and ALLIACENSE LIMITED

9   Charles T. Hoge, Esq. (State Bar No. 110696)
        choge@knlh.com
10  Kirby Noonan Lance & Hoge
    35 Tenth Avenue
11  San Diego, CA 92101
    Telephone:    (619) 231-8666
12  Facsimile:    (619) 231-9593

13  Attorneys for Defendant
    PATRIOT SCIENTIFIC CORPORATION

14

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                      SAN JOSE DIVISION

18  BARCO N.V.,                          Case No. 5:08-cv-05398 JF (HRL)
                                         (*Related to* 5:08-cv-00877 JF and 5:08-cv-
19              Plaintiff,               00882 JF)
         v.
20                                       **DEFENDANTS TECHNOLOGY**
    TECHNOLOGY PROPERTIES LTD.,          **PROPERTIES LTD., PATRIOT**
21  PATRIOT SCIENTIFIC CORP., and        **SCIENTIFIC CORP. AND ALLIACENSE**
    ALLIACENSE LTD.,                     **LTD.'S OPPOSITION TO BARCO'S**
22                                       **MOTION FOR SUMMARY JUDGMENT**
                Defendants.
23                                       Date:     February 25, 2011
                                         Time:     9:00 a.m.
24                                       Dept.:    Courtroom 3, 5th Floor
                                         Judge:    The Honorable Jeremy Fogel
25
                                         **PARTIALLY FILED UNDER SEAL**
26

27

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

23129\2505708.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................... 1

II. STATEMENT OF FACTS ................................................................................ 2

   A.  The '336 Patent Infringement Allegations Against Barco ...................................... 2

   B.  It Is Highly Impractical To Establish Infringement Via The Reverse
       Engineering Method Suggested By Barco ................................................................ 3

   C.  TPL Has Not Yet Been Able To Obtain Critical Discovery ..................................... 4

       1.  TPL Lacks Key Information It Is Likely To Obtain In Discovery ............... 4

       2.  Barco Is Attempting To Short-Circuit Discovery With Its Early
           Summary Judgment Motion ......................................................................... 5

       3.  Barco Has Refused To Provide Discovery On Its Accused Products ........ 5

           a.  Barco Refuses To Produce Relevant Documents ........................... 5

           b.  Barco Did Not Produce Documents Showing Operation Of
               Its Accused Products, As Required By Patent Local Rule 3-
               4(a) ............................................................................................... 6

           c.  Barco Refuses To Answer Relevant Interrogatories ..................... 6

           d.  TPL Has Subpoenaed Third-Party Chip Suppliers ....................... 7

III. ARGUMENT .................................................................................................... 7

   A.  The Accused Products Contain An On-Chip Ring Oscillator Capable Of
       Varying That Varies With, Or Tracks, The Speed Of The CPU ............................. 8

       1.  Dr. Oklobdzija Shows How The Accused Products Reach The
           Claim Limitations, Satisfying Defendants' Evidentiary Burden
           Under *Celotex* ........................................................................................... 9

           a.  "an entire ring oscillator variable speed system clock,"
               "entire oscillator … clocking," and "entire variable speed
               clock." ......................................................................................... 9

               (1)  AMCC Power PC 405 GP Microprocessor ....................... 10

               (2)  Agere 100404226 ............................................................... 11

               (3)  LSI Logic TTB4398A0 ...................................................... 12

               (4)  Xilinx Virtex-5 .................................................................. 12

               (5)  Texas Instrument DDP3020 Microprocessor ................... 12

               (6)  Texas Instruments DDP1011 Microprocessor ................. 13

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

- i -

23129\2505708.1

2. The Accused Products Are Capable Of "Varying." ................................. 14

3. On-Chip Oscillators In Barco's Products Vary With The Speed Of The CPU ...................................................................................... 14

4. Barco's Attorney Arguments Are Provided Without Support, And Therefore Barco's Motion Should Be Denied. ......................................... 15

B. Summary Judgment Is Not A Permissible Remedy For Incomplete Infringement Contentions; Even If It Were, Summary Judgment Here Is Improper Because TPL's Contentions Are Sufficient ........................................... 16

1. Summary Judgment Is Not The Appropriate Remedy ............................ 16

2. TPL's Infringement Contentions Are Sufficient ..................................... 18

a. Barco's Complaints That TPL Omitted Details Are Without Merit ................................................................................. 18

(1) "entire ring oscillator variable speed system clock," "entire oscillator . . . clock," and "entire variable speed clock." ............................................................... 18

(2) Location Of Independent "second clock." ....................... 19

(3) Location Of Ring Oscillator And Its ConnectionT CPU ................................................................................ 20

b. The Evidence In TPL's Infringement Contentions Is Sufficient ...................................................................................... 21

C. In The Alternative, The Court Should Deny Summary Judgment And Allow TPL To Complete Key Discovery ........................................................... 22

1. Early Summary Judgment Is Disfavored. ................................................ 22

2. TPL's Declarations Identify The Specific Facts It Seeks, How They Will Be Obtained, And Why They Are Important to Proving Infringement. ............................................................................................ 24

a. TPL Is Likely To Get Key Chip Schematics ............................... 24

b. TPL Intends To Depose People Knowledgeable About The Microprocessors' Design And Operation ..................................... 25

IV.    CONCLUSION .................................................................................................. 25

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

- ii -

23129\2505708.1

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*American Guaranty & Insurance Co. v. Westchester Surplus Lines Insurance Co.,*
    334 Fed. Appx. 839 (9th Cir. 2009) ................................................................. 23

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .......................................................................................... 8

*Berger v. Rossignol Ski Co.,*
    No. C 05-02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006) ............ 17

*Blough v. Holland Realty, Inc.,*
    574 F.3d 1084 (9th Cir. 2009) ......................................................................... 24

*Exigent Technology, Inc. v. Altrana Solutions,*
    442 F.3d 1301 (2006) ....................................................................................... 23

*Fresenius Medical Care Holdings v. Baxter International, Inc.,*
    No. C 03-1431 SBA, 2005 U.S. Dist. LEXIS 41837 (N.D. Cal. Sept. 2, 2005) ......... 17, 18

*In re Gabapentin Patent Litigation,*
    503 F.3d 1254 (Fed. Cir. 2007) ......................................................................... 9

*Genentech v. Amgen, Inc.,*
    289 F.3d 761 (Fed. Cir. 2002) ......................................................................... 17

*Hoffman-La Roche Inc. v. Invamed Inc.,*
    213 F.3d 1359 (Fed. Cir. 2000) ....................................................................... 22

*Klingele v. Eikenberry,*
    849 F.2d 409 (9th Cir. 1988) ........................................................................... 22

*Mid-South Grizzlies v. National Football League,*
    720 F.2d 772 (3d Cir. 1983) ............................................................................ 24

*Moore U.S.A., Inc. v. Standard Register Co.,*
    229 F.3d 1091 (Fed. Cir. 2000) ....................................................................... 21

*Morrissey v. Boston Five Central Savings Bank,*
    54 F.3d 27 (1st Cir. 1995) ............................................................................... 24

*Network Caching Technology, LLC v. Novell, Inc.,*
    No. C-01-2079 VRW, 2002 WL 32126128 (N.D. Cal., Aug. 13, 2002) ................. 16, 21

*Network Caching Technology., LLC v. Novell, Inc.,*
    No. C-01-2079 VRW, 2003 WL 21699799 (N.D. Cal. Mar. 21, 2003) .............. 16, 18, 21

*O2 Micro International, Ltd. v. Monolithic Power System, Inc.,*
    467 F.3d 1355 (Fed. Cir. 2006) ....................................................................... 17

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999)...................................................................................... 8, 9

*Rambus, Inc. v. Hynix Semiconductor Inc.*,
    642 F. Supp. 2d 970 (N.D. Cal. 2008) ............................................................................ 16

*Renesas Technology Corp. v. Nanya Technology Corp.*,
    No. C 03-05709 JF HRL, 2004 WL 2600466 (N.D. Cal., Nov. 10, 2004)................. 16, 22

*Rosemount, Inc. v. Beckman Instruments, Inc.*,
    727 F.2d 1540 (Fed. Cir. 1984)...................................................................................... 19

*Six Flags, Inc. v. Westchester Surplus Lines Insurance Co.*,
    565 F.3d 948 (5th Cir. 2009)........................................................................................... 24

*VISA International Serice Association v. Bankcard Holders of America*,
    784 F.2d 1472 (9th Cir. 1986)................................................................................... 22, 23

*Wenger Manufacturing, Inc. v. Coating Machine System, Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001)........................................................................................ 9

## FEDERAL STATUTES

Fed. R. Civ. Proc.  11.............................................................................................................. 21
Fed. R. Civ. Proc.  56(d) .............................................................................................. 8, 22, 24

## MISCELLANEOUS

Patent L.R. 3-1 ........................................................................................................... 1, 17, 21

Patent L.R. 3-4 .............................................................................................................. 6, 24

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                  - iv -                  23129\2505708.1

## I.     **INTRODUCTION**

Despite the fact that the parties have only now completed claim construction discovery and have not even finished briefing the disputed claim terms at issue, Plaintiff Barco N.V. ("Barco") baldly asserts that its products do not infringe the asserted claims of United States Patent No. 5,809,336 ("the '336 patent"), and it is therefore entitled to summary judgment of noninfringement.  This motion is premature and should be denied.

Unlike the *Exigent* case upon which Barco's Motion is based, the parties in this and the two related cases[1] are actively engaged in claim construction discovery, including discovery related to the thirteen disputed terms of the '336 patent.  Defendants Technology Properties Ltd. ("TPL"), Patriot Scientific Corp., and Alliacense Ltd. (collectively "Defendants") oppose Barco's Motion for Summary Judgment ("Motion") because Barco's assertion that the accused devices do not contain an entire ring oscillator variable speed system clock that varies as a function of manufacturing variations or variations in temperature or voltage of the chip, as required by the '336 patent, is incorrect and contrary to:  (1) the accompanying report of Defendants' expert, Dr. Vojin Oklobdzija, and (2) the relevant industry literature.  At the very least, there are sufficient material facts in dispute as to whether Barco infringes the '336 patent to preclude summary judgment of noninfringement at this early stage of the case.

Barco's Motion also raises for the first time a concern that Defendants' infringement contentions are insufficient, and then wrongly contends that summary judgment is proper on that basis.  That is not the law.  As required by Patent Local Rule 3-1, the infringement contentions specifically set forth where each limitation of each asserted claim is found within each accused product, and are therefore sufficient.  Barco is also wrong on the law that Defendants are limited to proving their case with evidence identified in their infringement contentions.  It would be illogical to have such a limitation, since contentions must be served early in the case, long before discovery has been completed.  All of the information identified in Defendants' infringement contentions is relevant and admissible to prove infringement of the '336 patent claims.

---

[1] *Acer, Inc., et al. v. Technology Properties Ltd., et al.*, 5:08-cv-00877 JF (HRL), and *HTC Corp., et al.  v. Technology Properties Ltd., et al.*, 5:08-cv-00882 JF (HRL).

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

1    Based on the expert testimony filed with this opposition, as well as the evidence identified

2    in the infringement contentions, the Court should deny Barco's Motion.  In the alternative, were

3    the Court otherwise inclined to grant Barco's Motion, Defendants request the Court either deny

4    Barco's Motion pursuant to Federal Rule of Civil Procedure 56(d) (formerly Federal Rule of Civil

5    Procedure 56(f)), or continue the hearing to permit completion of discovery concerning the

6    structure and operation of the microprocessors found in the accused devices.

7    **II.**    **STATEMENT OF FACTS**

8         **A.**    **The '336 Patent Infringement Allegations Against Barco.**

9    Plaintiff Barco initiated this case on December 1, 2008 by filing an action for declaratory

10   judgment of noninfringement and invalidity of three patents.  Compl. For Declaratory J. 1 (Dkt.

11   1).  On February 17, 2009, Defendants Technology Properties Ltd. ("TPL"), Alliacense Limited

12   and Patriot Scientific Corp. (collectively "Defendants") brought counterclaims alleging

13   infringement.  Answer and Countercls., 5–8 (Dkt. 27); *see also* Answer and First Am.

14   Countercls., 5–9 (Dkt. 40).  The patents-in-suit are in the Moore Microprocessor Patent ("MMP")

15   Portfolio and cover novel architectures and clocking mechanisms critical to the efficient high-

16   speed performance of today's microprocessors.  *See, generally*, Answer and Countercls. to

17   Compl. For Declaratory J., Exs. A–C (patents-in-suit) (Dkt. 27-2 – 27-4).  The MMP Portfolio

18   patents, including the '336 patent, have been licensed to over eighty companies worldwide – and

19   nearly all of those licensees have demanded that their license be applicable to all their

20   microprocessor-based products.  At least thirty-nine of these licensees use the same

21   microprocessor manufacturers as Barco.

22   TPL alleges that Barco infringes U.S. Patent No. 5,809,336 ("the '336 patent"), among

23   other patents, for which Barco now moves for a judgment of noninfringement.  Answer and First

24   Am. Countercls., 8, (Dkt. 41).  TPL asserts that Barco infringes claims 1, 6, 7, 9 through 11, and

25   13 through 16 of the '336 patent.  Am. Patent L.R. 3-1 Infringement Contentions For Reexamined

26   '336 Patent ("Am. Infr. Cont."), 2 (Barco's Motion For Summary Judgment of Non-Infringement

27   of U.S. Patent No. 5,809,336 ("Barco Mot."), Ex. C; Dkt. No. 112-3); *see also* '336 Patent,

28   correction, and amendments (Barco Mot., Exs. A, B; Dkt 112-1-2)  Each of these claims requires

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                          - 2 -                          23129\2505708.1

1  a microprocessor system with a first clock that is an on-chip oscillator connected to the CPU and

2  capable of varying, and a second clock that is connected to an input/output ("I/O") interface and

3  independent from the first clock, thus permitting the CPU and I/O interface to operate

4  asynchronously relative to each other.  '336 Patent, correction, and amendments (Barco Mot.,

5  Exs. A, B).

6  Barco had at least seven months to seek more specificity in Defendants' Preliminary

7  Infringement Contentions ("PICs"), but never did and instead sought  summary judgment.

8  Declaration of Eugene Y. Mar in Support of Defendants' Opposition to Barco's Motion for

9  Summary Judgment ("Mar Decl."), ¶ 2 (filed concurrently).  Defendants first served PICs on

10  Barco on February 20, 2009.  *Id.*, ¶ 2; Ex. A.  Barco raised no concerns.  *Id.*, ¶ 2.  This case then

11  was halted during reexamination proceedings, from June 16, 2009 to February 12, 2010.  *Id.*

12  After the USPTO issued the '336 patent reexamination certificate, Defendants served the

13  operative, amended PICs on April 30, 2010, illustrating that eleven Barco products contain all the

14  claim elements, including variable speed clocks, and infringe the '336 patent.  Am. Infr. Cont. at

15  2–3 (Barco Mot., Ex. C).

16  **B.    It Is Highly Impractical To Establish Infringement Via The Reverse
         Engineering Method Suggested By Barco.**

17

18  Barco's Motion posits that Defendants should have reverse engineered the various

19  microprocessors[2] at issue, without disclosing that it is highly impractical to delid a

20  microprocessor and work down through multiple layers of differing materials on the chip to find

21  ten to twenty transistors arranged as a ring oscillator, amidst the millions, or even as many as a

22  billion, transistors on the chip.  Declaration of Vojin Oklobdzija in Support of Defendants'

23  Opposition to Barco's Motion for Summary Judgment ("Oklobdzija Decl."), ¶¶ 61-64 (filed

24  concurrently).  Even with a road map from the chip designers it would be very difficult to find

25  such a relatively small feature on the chip.  *Id.*, ¶¶ 63-64.  The more efficient approach is to

26  discover, through document productions and depositions, the specific design and operation of

27

28  _____

[2] The eleven accused products use six different microprocessors manufactured by four chip
suppliers:  Texas Instruments, AMCC, LSI Corporation, STMicroelectronics, and Xilinx.
Oklobdzija Decl., ¶13.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                - 3 -                                    23129\2505708.1

each of the six microprocessors at issue here.  Defendants have undertaken that task by first seeking discovery from Barco, and now moving to targeted subpoenas for documents, and eventually depositions, from the chip suppliers themselves.  Mar Decl., ¶¶ 3–8, 10–12.

### C.     TPL Has Not Yet Been Able To Obtain Critical Discovery.

TPL has been diligent in propounding discovery concerning Barco's infringement of the '336 patent but Barco refuses to produce the necessary information.  Barco thus is withholding the very evidence necessary to address its Motion.  Moreover, TPL has not yet had a fair opportunity to obtain the information through depositions or from other sources because discovery in this case is in its initial stages.

### 1.     TPL Lacks Key Information It Is Likely To Obtain In Discovery.

As shown in the accompanying declarations of Dr. Vojin Oklobdzija and Eugene Mar, TPL lacks a plethora of information relevant to Barco's infringement of the '336 patent.  TPL is likely to obtain that data if the Court allows it to complete discovery and Barco fulfills its obligations to produce relevant information.  Through discovery, TPL is likely to obtain documents concerning the microprocessors' clock trees, clock circuitry diagrams, timing diagrams, system and transistor level schematics for the clocking circuitry and phase-locked loops, schematic diagrams of the ring oscillator used in the phase-locked loops, block diagrams of the phase-locked loops including the circuit schematics for each block of the phase-locked loops, simulation procedures and results for the clocking circuitry and phase-locked loops, and results from testing the clocking circuitry and phase-locked loops.  *See* Oklobdzija Decl., ¶ 60; Mar Decl., ¶¶ 3–11, 13.  These documents will confirm that Barco's accused products contain an on-chip ring oscillator variable speed system clock clocking the CPU.  In addition to those documents, TPL expects to obtain documents concerning I/O specifications, circuit schematics for each block of the I/O interfaces, microprocessor user manuals, service manuals, and testing and simulation results for each of the I/O interfaces.  Mar Decl., ¶ 13.  As Dr. Oklobdzija notes, chip designers routinely generate these types of documents as part of the chip design and verification process.  Oklobdzija Decl., ¶ 60.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                     - 4 -                                    23129\2505708.1

2.    Barco Is Attempting To Short-Circuit Discovery With Its Early Summary Judgment Motion.

Because the parties are in an initial stage of discovery in this case, it is not surprising that essential information about the design of various microprocessors has yet to come out.  The Court has not even set a discovery cut-off date, and claim construction has not been completed.  *See*, *generally*, Stip. Continuing Case Scheduling Dates (Dkt. 107).

TPL has also not had a fair opportunity to obtain deposition evidence related to infringement.  Depositions have focused on claim construction because that is the first phase of discovery prescribed by the Court.  Mar Decl., ¶ 12; Stip. Cont. Case Scheduling Dates, 3, 6, (Dkt. 107).  To date, the only people deposed by any party in this or the related actions are the inventors, Russell Fish and Charles H. Moore, and the claim construction experts, Drs. May, Oklobdzija, and Wolfe.  Mar Decl., ¶ 12; *see also* Related Case Order (Dkt. 21).

3.    Barco Has Refused To Provide Discovery On Its Accused Products.

Barco has made neither the requisite disclosures under the Patent Local Rules nor provided information requested in discovery, all of which are essential to opposing the Motion.

a.    *Barco Refuses To Produce Relevant Documents*

Barco still has not produced key documents related to the '336 patent and required by TPL requests served nearly two years ago, on February 25, 2009.  Barco's Resp. to Defs.' First Req. For Prod. of Docs., Mar Decl., Ex. B.  For example, Barco did not produce any documents (1) showing the structure and operation of microprocessor technology incorporated into accused Barco products (Req. 14); (2) showing any infringement testing and analysis done by Barco (Reqs. 11, 26); (3) showing which Barco products contain microprocessor technology TPL asserts would enable infringement of the '336 patent (Req. 13); and (4) expressing opinions on infringement of the '336 patent (Req. 27).  *Id.*  TPL and Alliacense recently followed those requests with others to which Barco has not yet responded.  Defs.' Second Req. For Produc. of Docs. to Barco (Mar Decl., Ex. H).  Those requests seek key data for all chips implicated in Barco's infringement of the '336 patent, such as the chips' "block specifications, data sheets, … clock tree, I/O protocol specifications, … and timing diagrams."  *Id.* at Req. 78; *see also id.* at

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                - 5 -                                    23129\2505708.1

Reqs. 76, 79, 82, 83, and 86.  The requested documents are vital to establishing, contrary to

Barco's assertion, that the accused products do contain a variable speed system clock.[3]

> b.  *Barco Did Not Produce Documents Showing Operation Of Its Accused Products, As Required By Patent Local Rule 3-4(a)*

Despite the fact that Barco sued TPL for a declaratory judgment of non-infringement, it

failed to produce documents required under the Patent Local Rules.  Barco did not produce

"specifications, schematics, flow charts, … or other documentation" sufficient to show the

functioning of Barco's accused products, claiming that these documents were not relevant to the

technology described in the patents-in-suit.  *See* Patent L.R. 3-4(a) (requiring production).  Those

documents were due more than a year and a half ago and are relevant to proving that the products

contain an on-chip ring oscillator.  Mar Decl., ¶ 6.  After TPL sent two letters demanding the

documents, Barco produced but a single datasheet for a microprocessor that is not implicated in

the '336 patent.  *Id.*, ¶¶ 3–5, Exs. C, D, E.  At the same time, Barco refused to produce a datasheet

for a chip that *is* relevant.  *Id.*, Ex. E.  Barco finally produced the document in January 2011 after

another flurry of demands by TPL.  *Id.*, ¶ 5, Ex. F.  The document provided the kind of evidence

of infringement that TPL needs to oppose Barco's Motion.  *See infra* Section II.C.3.d.  TPL may

find similarly relevant evidence in other documents that Barco has not yet produced.

> c.  *Barco Refuses To Answer Relevant Interrogatories*

Barco also withheld important information relevant to its infringement of the '336 patent

by failing to provide answers to various interrogatories from TPL.  For example, interrogatory no.

3 obligated Barco to "[s]tate all facts and evidence that support or contradict" its denial that it

infringes the '336 patent (Barco's Resp. to Defs.' First Set or Interrogs., 8:1–4 (Mar Decl., Ex.

G)), but Barco's response is so vague as to be almost useless.  For example, it states that "[n]one

of the accused products have an entire ring oscillator variable speed system clock" but does not

make clear whether Barco asserts the products do not have a clock, do not have a ring oscillator,

that the clock is not variable speed, or some combination of these three.  *Id.* at 8:28–9:1.  Barco

---

[3]  To date, almost all documents Barco produced are merely patents, papers reflecting potential prior art, manuals, and invalidity contentions from related litigation in Texas.  Mar Decl., ¶ 9.  Although Barco made boilerplate objections on privilege grounds to the first set of requests and to other discovery requests, it never supported those objections with privilege logs.  *Id.*

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                    - 6 -                          23129\2505708.1

1   also never produced the evidence relevant to that denial, including documents or other evidence

2   that shed light on whether the accused products contain variable-speed clocks.  Mar Decl., ¶ 7.

3   TPL and Alliacense recently also propounded additional relevant interrogatories to which Barco

4   has not yet responded.  *Id.*, ¶ 11.  They require Barco to provide the identities of employees of

5   microprocessor manufacturers with whom Barco conferred regarding infringement, and of the

6   Barco employees most knowledgeable about clocking, on-chip oscillators, ring oscillators,

7   variable speed clocks, and the second clocks in the microprocessors used by the accused products.

8   Defs.' Third Set of Interrogs. to Barco, Interrogs. 14, 18 (Mar Decl., Ex. K).

9               *d.    TPL Has Subpoenaed Third-Party Chip Suppliers*

10          TPL is also awaiting documents subpoenaed from chip suppliers that are essential to

11   adjudicating the Motion.  The subpoenas require Applied Micro Circuits, LSI Corporation, Texas

12   Instruments and Xilinx to produce documents relevant to the operation of the accused products.

13   Each company provides chips used in Barco's products, and the subpoenas require the production

14   of, for example, (1) "block specifications, internal design documents for each block, datasheets,

15   … I/O protocol specifications … clock circuitry diagrams, and timing diagrams" for implicated

16   chips, (2) "transistor level schematics for the clocking circuitry and phase-locked loops" in those

17   chips, and (3) "schematic diagrams of all oscillators used in" the chips.  Subpoena to Applied

18   Micro Circuits Corp. (Mar Decl., Ex.  I).  TPL will also depose the engineers responsible for chip

19   design and operation for each microprocessor in the accused products.  *Id.* ¶ 11.  TPL must

20   receive these documents, and complete these depositions, before it can respond fully to the

21   Motion.

22   **III.   ARGUMENT**

23          Barco's proposition that summary judgment is an appropriate remedy for allegedly

24   incomplete and/or unsupported infringement contentions is not the law.  Barco's Motion is also

25   premature where the Court has yet to construe any of the claim terms that are the subject of this

26   Motion, the parties are only just completing claim construction, and discovery is at such an early

27   stage that the Court has not even set a fact discovery cut-off.  Nevertheless, Dr. Vojin

28   Oklobdzija's expert declaration explains in detail how the six microprocessors found in Barco's

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                 - 7 -                                23129\2505708.1

1   accused products contain an on-chip oscillator that meets the '336 patent's claim limitations of an

2   entire ring oscillator variable speed system clock, entire oscillator, or entire variable speed clock,

3   capable of varying, and varying with, the CPU.  Finally, in the event that the Court is inclined to

4   otherwise grant Barco's Motion because TPL has not met its burden, TPL respectfully requests

5   the Motion be postponed until TPL can complete fact discovery specific to this Motion pursuant

6   to Federal Rule of Civil Procedure 56(d) (formerly Fed. R. Civ. Proc. 56(f)).[4]

7   **A.      The Accused Products Contain An On-Chip Ring Oscillator Capable Of
            Varying That Varies With, Or Tracks, The Speed Of The CPU.**

8
9   Barco's Motion posits that no accused device has either (1) "a variable speed system

10  clock," (2) "a variable speed system clock that 'varies in the same way,' or 'tracks' the processing

11  frequency (or 'frequency capability') of the microprocessor," or (3) "a clock or oscillator whose

12  frequency or speed varies as a function of manufacturing variations or variations in temperature

13  or voltage applied to the chip."  Barco Mot. at 7:14-21.  But Barco's Motion ignores that each of

14  the microprocessors in the accused products has an on-chip oscillator, implemented as a ring

15  oscillator, that acts as a system clock, and is capable of varying due to voltage, temperature, or

16  manufacturing processes, while varying or tracking with the CPU.  Dr. Oklobdzija's expert

17  declaration and industry literature establish these facts, or at least show that the presence of a

18  variable speed system clock is a disputed issue of material fact precluding summary judgment.

19  To defeat Barco's Motion, Defendants need only introduce evidence on which a

20  reasonable jury could find infringement of the asserted '336 patent claims.  *Anderson v. Liberty
    Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All alleged facts must be viewed in the light most

21  favorable to Defendants, the non-movants.  *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d

22  1298, 1304 (Fed. Cir. 1999).  A determination of infringement requires a two-step analysis.

23  "First, the claim must be properly construed to determine its scope and meaning.  Second, the

24  claim as properly construed must be compared to the accused device or process."  *Wenger Mfg.,

25  Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001) (internal quotation

26

27  ────────────────
    [4] On December 1, 2010, Federal Rule of Civil Procedure 56(f) became FRCP 56(d).  *Compare*
    Fed. R. Civ. P. 56(f) (2009) *with* Fed. R. Civ. P. 56(d) (2010); *see also* Fed. R. Civ. P. 56
28  advisory committee's note (2010) ("Subdivision (d) carries forward without substantial change
    the provisions of former subdivision (f).").

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                - 8 -                          23129\2505708.1

omitted).  The first step, claim construction, is a question of law, while the second step is a question of fact.  *In re Gabapentin Patent Litig.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007).

           1.      **Dr. Oklobdzija Shows How The Accused Products Reach The Claim <u>Limitations, Satisfying Defendants' Evidentiary Burden Under *Celotex*.</u>**

    "[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims."  *Pitney Bowes*, 182 F.3d at 1304.  Here, in addition to the references mentioned in Section II.B., Dr. Oklobdzija's declaration explains how the accused Barco products contain the claim limitations at issue[5] in Barco's Motion.

           *a.*      *"an entire ring oscillator variable speed system clock," "entire oscillator … clocking," and "entire variable speed clock"*

    Dr. Oklobdzija explains how each microprocessor in the accused products contains an on-chip oscillator, capable of varying as required by the claim language.  Judge Ward previously construed "variable speed clock" to be "a circuit that generates the signal(s) used for timing the operation of the CPU," and similarly held that "variable speed" means "capable of operating at different speeds."  Markman Order, 12-13 (Mar Decl., Ex. L).  An oscillator is a circuit that generates timing signals (Oklobdzija Decl., ¶ 6-7), and since the oscillator's output is used "as a timing reference for the CPU" (*id.*)*,* it meets the relevant "variable speed clock" requirements.  Barco's accused products utilize a phase-locked loop (or "PLL"), which, as explained below, is a circuit that, when locked, manages the variation of on-chip oscillators.  Therefore, the presence of a PLL confirms both the presence of the on-chip oscillator, and its variable nature.

---

[5] Barco's Motion disregards the critical step of claim construction, as if it makes no difference for purposes of this Motion.  But Barco is wrong, because the Court cannot properly consider the suitability of the evidence of infringement without having the claim's scope and meaning determined.  *See Wenger*, 239 F. 3d at 1231.  Although Judge Ward previously construed some of these claim terms in the Texas litigation, Barco did not stipulate to all of Judge Ward's constructions, as indicated by the Joint Claims Construction Statement filed by the parties in this matter.  This is at odds with Barco's statement that "there is no need for the Court to construe the claims before granting summary judgment of noninfringement."  Barco Mot. at 3:14-15.  Further, a close read of Barco's Exhibit P shows that Barco has, without identifying precisely which claim limitations (and their competing constructions) are at issue per the Joint Claims Construction Statement, loosely color-coded various claim limitations in at least five independent claims.  In total, these limitations contain numerous disputed claim terms, making resolution of this issue on summary judgment prior to claim construction a very difficult undertaking.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

*(1)     AMCC Power PC 405 GP Microprocessor*

In the **AMCC PowerPC 405 GP** specifications (Rev. 2.01, Jan. 6, 2005), ██████████████████████████████████████████████ the presence of a PLL is undisputed:  "*This controller uses a PLL for clock generation inside the chip.*" Oklobdzija Decl., ¶ 19, Ex. 5.  The actual clock signal is generated by an on-chip voltage-controlled oscillator ("VCO"), which is a necessary and indispensable building block of a PLL.  *Id.*, ¶ 20.  A VCO, associated with a PLL, is most commonly implemented using a ring oscillator, which is confirmed by the leading papers on PLLs, in particular those published by the industry leaders Intel and IBM.  *Id.*  The Alvarez Paper relied on by Dr. Oklobdzija is specific to PowerPC microprocessors,[6] and shows in Figure 4 (reproduced below) a schematic diagram of a VCO implemented using a ring oscillator.  The red boxes highlight the presence of the ring oscillators in the PowerPC microprocessor.



Fig. 4.   Schematic diagram for Voltage Controlled Oscillator circuit showing the synchronized ring oscillators, control device, and differential stage.

The AMCC PowerPC 405 GP Clocking Specifications Table confirms that a VCO is present within the chip and that it can vary from 400 MHz up to 800 MHz, making it capable of operating at different speeds.  Oklobdzija Decl., ¶ 21.  In a PLL, the on-chip VCO, implemented using a ring oscillator, is the element producing the clocking signal used for timing the operation of the CPU.  *Id.*  As seen in Figure 2 of Ian Young's 1992 *IEEE* Paper on PLL Clock Generators, the output of the VCO is an internal clock used to time the operation of the CPU.  *Id.*, Ex. 7.

---

[6] The nomenclature of the AMCC PowerPC 405GP chip in the Barco LED Display Digitizer DX-700 indicates that it is a PowerPC microprocessor.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                      - 10 -                          23129\2505708.1

In the PowerPC 405GP, the specifications state that the PLL is used for clock generation inside the chip.  *Id.*, ¶22.  It is evident that the VCO associated with the PLL is generating the clock used for timing the operation of the CPU.  *Id.*  This clearly establishes the presence of an on-chip oscillator corresponding to the claimed on-chip ring oscillator variable speed clock.  *Id.*

*(2)   Agere 100404226*

the packaging of the TXC device resembles a crystal, and TXC's website contains photographs of crystals with identical packaging. *Id.*, ¶ 24. The crystal is an external timing reference for the PLL, and as discussed previously, a VCO is an indispensable and necessary building block of the PLL.  *Id.*, ¶ 25.  Because of the VCO's relationship to parameters, such as voltage and temperature (among others), the VCO is a variable speed oscillator by its nature.  *Id.*

As with the AMCC chip, a VCO is most commonly implemented using a ring oscillator. Oklobdzija Decl., ¶ 25.  Variability of the VCO due to voltage and other parameters is described in Ian Young's fundamental paper about PLLs.  *Id.*  The art of PLL and VCO design, including its variability based on parameters of temperature, voltage, and process, has not changed fundamentally since Young's article was published in 1992.  *Id.*  It is well known to one having ordinary skill in the art that the variable-speed VCO, implemented using a ring oscillator, is the element generating the clocking signal used to time the CPU.  *Id.*  This establishes that the Agere 100404226 microprocessor contains an on-chip oscillator that corresponds to a "ring oscillator variable speed system clock" as described in the '336 Patent.  *Id.*

---

[7] Product Report for Lighting Console Hog iPC, 4 (Barco Mot., Ex. N).

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

- 11 -

23129\2505708.1

*(3)      LSI Logic TTB4398A0*

As discussed above, and detailed in Dr. Oklobdzija's declaration, this is evidence that the Axon Media Server contains a variable speed on-chip ring oscillator.  *Id.*, ¶¶ 38-40.

In addition, Barco's Motion misrepresents TPL's reference to the ARM7TDMI core in the infringement contentions related to the LSI Logic chip found in the Axon Media Server.  The reference is only an example of the ARM CPU within the TTB4398A0 microprocessor (*see, e.g,* Axon Product Report, 6-8, 14-16 (Barco Mot., Ex. I)), as required by the '336 patent.

*(4)      Xilinx Virtex-5*

In the Xilinx Virtex 5 User Guide the presence of a VCO generating the CPU clock is clearly indicated. Oklobdzija Decl., ¶ 34; Fig. 3-5, Ex. 17.  The documents show that the Virtex-5 processor is designed to use the IBM PowerPC 440 processor block (Xilinx Virtex-5 Family Overview (v. 5.0), 1 (Oklobdzija Decl., Ex. 29)), and Dr. Oklobdzija further references industry literature by, among others, Gardner, Alvarez and Nowka, that indicates the VCO within the Xilinx Virtex-5 processor contains a variable speed on-chip ring oscillator.  Oklobdzija Decl., ¶¶ 34-35, Exs. 7, 18, 29.

*(5)      Texas Instrument DDP3020 Microprocessor*

The Texas Instrument DDP3020 is a microprocessor that is part of Texas Instrument's

---

[8] Agere Systems was acquired by LSI Logic in early 2007.  Mar Decl., ¶ 15, Ex. M.
[9] Product Report for Axon Media Server, 4 (Barco Mot., Ex. I).
[10] *See, e.g.,* Product Report for SIM 5R, 3, 5, 8 (Barco Mot., Ex. G); Product Report for iCon H500/H250, 2, 3, 5, 6, 8 (Barco Mot., Ex. L); Product Report for iCon H400 Product Report, 3, 4, 7, 9 (Barco Mot., Ex. F); Product Report for iD R600+, 2, 3, 5, 8, 10 (Barco Mot., Ex. M).

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

1    DLP (Digital Light Processing) line of processors.  Oklobdzija Decl., ¶ 26. ███████

2    ████████████████ Texas Instruments CDCDLP223 datasheet which depicts how a DLP

3    Processor chip is clocked.  *Id.*, Ex. 13.

4         Dr. Oklobdzija reviewed the DDP3020 datasheet, and opined that one of ordinary skill in

5    the art would conclude that all DLP Processor chips likely contain a PLL.  *Id.*, ¶ 27.  As explained

6    above, Dr. Oklobdzija opines that the on-chip VCO is a necessary and indispensable building

7    block of any PLL, and is most commonly implemented using a ring oscillator.[11]  *Id.*, ¶¶ 28-29.

8                              *(6)      Texas Instruments DDP1011 Microprocessor*

9    ████████████████████████████████████████████████████████████

10   ███████████████  The DDP1011 microprocessor is part of the Texas Instruments DLP line of

11   processors, and as with the DDP3020 microprocessor, the DDP1011 microprocessor also has an

12   on-chip ring oscillator variable speed clock.  Oklobdzija Decl., ¶ 31.  Additionally, TPL's

13   Infringement Contentions included a service manual for a BenQ LDP 6100 projector, which uses

14   a DDP1000 microprocessor.  *Id.*, Ex. 15.  The DDP1000 is within the DLP line of processors, and

15   the BenQ manual includes several schematics of the DDP1000 chip.  *Id.*  It is customary that

16   products in the same family have the same numbering designation where the newer product has a

17   higher number.  *Id.*  In this case, Dr. Oklobdzija has strong reason to believe that the DDP1011

18   has the same structure as the DDP1000 except for possibly minor functional enhancements

19   unrelated to clock generation.  *Id.*

20        The schematic of the DDP1000 chip in the BenQ manual shows the presence of the

21   oscillator by the pin G4 labeled "crystalen," whose purpose is to enable the external crystal

22   oscillator to create a reference signal.  *Id.*, ¶ 32.  This reference is normally used as one of the

23   inputs to a PLL, as explained above, which would contain a VCO most commonly implemented

24   using a variable speed on-chip ring oscillator.  *Id.*, ¶¶ 32-33.

25

26

27   [11] This will be further confirmed by discovery from non-party Texas Instruments.  Mar Decl., ¶¶ 10, 11.

28   [12] *See, e.g.,* Product Report for RLM R6+, 3, 4, 8 (Barco Mot., Ex. K); Product Report for SLM R12+, 3, 4, 8 (Barco Mot., Ex. H).

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                    - 13 -                                         23129\2505708.1

2.  The Accused Products Are Capable Of "Varying."

Barco's Motion claims (with no support) that the accused products have only "fixed-frequency system clocks," but that disregards the presence of the on-chip oscillator that is variable in nature, due to temperature, voltage, and process (established in Section 1, above) and ignores industry literature.  It is also contradicted by Dr. Oklobdzija's expert declaration. Industry publications included in TPL's PICs explain that integrated circuits vary[13] due to at least manufacturing process, voltage, and temperature.  Oklobdzija Decl., ¶ 46, Exs. 22-24.[14]  Dr. Oklobdzija likewise opines that the microprocessors in the accused products are subject to ordinary manufacturing process variation, as well as fluctuations in operating voltage and temperature, that causes the frequency capability to vary.  *Id.*, ¶¶ 44-45.  This is hardly a controversial point, as HTC's expert Dr. May, and Acer's expert Dr. Wolfe, testified similarly in their depositions.  *Id.*, ¶¶ 41-43.  This is sufficient to show that the accused products meet the "variation" limitation of the '336 patent.

3.  On-Chip Oscillators In Barco's Products Vary With The Speed Of The CPU.

Barco baldly states that the clocks in the accused products do not vary with or track the speed of the CPU, as required by the '336 patent.  Remarkably, this ignores that the on-chip oscillator is connected to the CPU for clocking the CPU.  This also ignores that the claimed microprocessors can operate under the variations to which typical microprocessors, including those in the accused products, are exposed.  Those variations include process variations incurred during the microprocessor manufacturing, and variations of the operating parameters that include, but are not limited to, voltage and temperature.  Oklobdzija Decl., ¶¶ 41-45.  Even among

---

[13] Judge Ward previously construed "variable speed" to mean "capable of operating at different speeds."  Markman Order, 12-13 (Mar Decl., Ex. L).  Barco has stipulated to that construction for this litigation.  *See* Jt. Claims Const. Stmt., Ex. A (Dkt. 110).
[14] Dr. Oklobdzija discusses, for example, *Zuchowski* at 366 ("Inter-die systematic variation is due to normal manufacturing tolerances that affect the mean value of a parameter from lot to lot, wafer to wafer and die to die."); *Sundaresan* at 4 ("We have presented a 7-MHz ring-oscillator-based clock generator compensated for variations in supply voltage, temperature and process conditions."); and *Fetzer* at 478 (confirming process, voltage, and temperature variations: "Because of the process, voltage, and temperature (PVT) variations described earlier, clock skew can be up to 15% of the clock distribution's insertion delay.").

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                - 14 -                23129\2505708.1

1    transistors specified to be of the same size, chip characteristics vary even where the chips are

2    produced using the same process technology; this is known as process variation. *Id.*, ¶¶ 10, 41-

3    45.  As a consequence, some of the chips will be capable of running faster than the operating

4    frequency at which they are rated and advertised, and some will have a slower operating

5    frequency capability. *Id.*  Because the on-chip oscillator's transistors are manufactured using the

6    same process technology and at the same time as those transistors comprising the CPU, any

7    change in operating parameters causes the operating frequency capability of the on-chip oscillator

8    and the processing frequency capability of the CPU to increase and decrease. *Id.*  In addition,

9    each chip may be subjected to different operating temperature and/or voltage.  It is well known to

10   one of ordinary skill in the art that a chip's capability will decrease as operating temperatures rise,

11   and increase as temperatures drop. *Id.*, ¶¶ 11, 41.  If temperature is held constant and the voltage

12   is raised by a small amount, the chip capability will increase and vice versa. *Id.*

13          In contrast, in microprocessors where the oscillator and the CPU are <u>not</u> on the same die,

14   different operating temperatures and/or voltages could cause the clock to run faster than the CPU

15   capability, creating system failure.  Oklobdzija Decl., ¶¶ 11, 41-45.  The '336 patent helps to

16   overcome this difficulty by integrating an on-chip oscillator and the CPU on the same die so that

17   the CPU and the on-chip oscillator vary together according to the needs of the system. *See id.*,

18   ¶ 11; *see, e.g.*, '336 patent, Claim 1  ("A microprocessor system, comprising a single integrated

19   circuit ….") (Barco Mot., Ex. B).  It is the same with the microprocessors in the accused products,

20   where the identified ring oscillator is on the same die as the CPU.  Oklobdzija Decl., ¶ 17.  If the

21   chip is capable of operating faster due to, e.g., increased voltage or decreased temperature, both

22   the on-chip oscillator and the CPU clocked by the on-chip oscillator will have the capability to

23   operate faster. *Id.*, ¶ 11.  Conversely, the on-chip oscillator and the CPU clocked by the on-chip

24   oscillator will have a slower operating frequency capability in response to changed operating

25   conditions such as higher temperature or lower voltage.

26          4.      Barco's Attorney Arguments Are Provided Without Support, And
                    <u>Therefore Barco's Motion Should Be Denied.</u>

27

28          Barco's attorney argument that the accused microprocessors lack a "variable speed system

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

- 15 -

23129\2505708.1

clock" (or a clock whose frequency varies as a function of manufacturing variations or variations

in temperature) is without any support.  Barco Mot. at 7-8.  While Barco is not required to submit

any evidence to bring a *Celotex* motion, "a reasonable jury would credit the only evidence it is

given.  Thus, an expert's credibility is material, and hence an issue for the jury, only if an

opposing expert or other evidence actually contradicts the expert's testimony *as to a factual

matter*."  *Rambus, Inc. v. Hynix Semiconductor Inc.*, 642 F. Supp. 2d 970, 977 (N.D. Cal. 2008).

Here, TPL has submitted both extensive documentary evidence and the detailed expert opinion of

Dr. Oklobdzija to show that the accused products infringe the '336 patent.  Because Barco has

provided only attorney argument in moving for summary judgment, no reasonable jury would

disregard TPL's evidence on the six microprocessors found in the accused products and find in

favor of Barco.  *Id.*  Barco's Motion should be denied.

### B.   Summary Judgment Is Not A Permissible Remedy For Incomplete Infringement Contentions; Even If It Were, Summary Judgment Here Is Improper Because TPL's Contentions Are Sufficient.

#### 1.   Summary Judgment Is Not The Appropriate Remedy.

Barco falsely insinuates that summary judgment of noninfringement is a proper remedy

where a party serves preliminary infringement contentions ("PIC") that are incomplete or do not

disclose enough evidence to prove infringement.  Barco cites no case for such an astonishing

result; indeed, that result would be improper because there is "no requirement that [the patentee]

thoroughly present and successfully defend its theories of infringement in the confines of a PIC

chart."  *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079 VRW, 2003 WL 21699799,

at *5 (N.D. Cal. Mar. 21, 2003) ("*Network Caching II*").  Instead, contentions are "essentially a

discovery device intended to streamline the discovery process by tak[ing] the place of a series of

interrogatories that defendants would likely have propounded."  *Renesas Tech. Corp. v. Nanya

Tech. Corp.*, No. C 03-05709 JF (HRL), 2004 WL 2600466, at *2 (N.D. Cal., Nov. 10, 2004)

(internal quotations omitted), citing *Network Caching Tech., LLC v. Novell, Inc.*, No. C-01-2079

VRW, 2002 WL 32126128, at *3–4 (N.D. Cal., Aug. 13, 2002) ("*Network Caching I*").  Granting

summary judgment on infringement contentions that are incomplete or do not disclose enough

evidence to prove infringement would be like throwing out a patentee's case because it answered

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

- 16 -

23129\2505708.1

1   interrogatories insufficiently.  Here, such relief would be particularly inappropriate because Barco

2   brought no motion to compel and engaged in no meet and confer regarding the contentions.

3        The closest Barco comes to a case on point is *Berger v. Rossignol Ski Co.*, No. C 05-

4   02523 CRB, 2006 WL 1095914 (N.D. Cal. Apr. 25, 2006).  In *Berger*, the court granted summary

5   judgment because *the contentions affirmatively stated facts that negated infringement*.  *Id.* at *6.

6   The patent in *Berger* required a boot rotate "relative to" a binding, but the contentions described a

7   boot rotating "with" the binding.  *Id.* at *5-6.  The patentee did not dispute that this failed to show

8   infringement, and the court found that, "under plaintiffs' infringement contentions[,] defendant's

9   accused device … does not infringe as a matter of law."  *Id.*  Here, Barco does not contend that

10  TPL's contentions affirmatively disprove infringement, only that TPL could have provided more

11  detail or evidence about how Barco infringes.  TPL has not alleged facts that affirmatively show

12  noninfringement; *Berger* is therefore entirely distinguishable.[15]

13       The other cases Barco cites discuss entirely different issues that are not relevant on a

14  motion for summary judgment.  They generally stand for the unremarkable proposition that a

15  patentee is limited to the infringement theories disclosed in its Patent Local Rule 3-1 infringement

16  contentions.  *See, e.g.*, *Genentech v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) (precluding

17  patentee from asserting infringement under the doctrine of equivalents when patentee did not

18  include that theory in its claim chart); *O2 Micro Int'l, Ltd. v. Monolithic Power Sys., Inc.*, 467

19  F.3d 1355, 1364-67 (Fed. Cir. 2006) (affirming application of Local Patent Rule that "good

20  cause" for amending infringement contentions requires a showing of diligence); *Fresenius Med.*

21  *Care Holdings v. Baxter Int'l., Inc.*, No. C 03-1431 SBA, 2005 U.S. Dist. LEXIS 41837, *at* *30

22  (N.D. Cal. Sept. 2, 2005); *Renesas Tech.*, 2004 WL 2600466 at *1, 4, 5 (denying in part motion

23  to compel further infringement contentions).  TPL has fully disclosed its infringement theories in

24  its PICs, and Barco does not contend otherwise, so none of these cases are applicable.[16]

25

26  [15] Moreover, the patentee in *Berger* had conducted no discovery after serving infringement contentions that were five weeks late, and omitted an asserted patent.  *Berger*, 2006 WL 1095914, at *2.  Judge Breyer flatly stated that the patentees were trying to "alter their infringement theory

27  after it became apparent that they were going to lose," *id.* at *6, and that their counsel "mishandled the case," *id.* at *5.

28  [16] Barco cites *Fresenius* for the proposition that TPL did not specify whether the alleged infringement was literal or under the doctrine of equivalents, as required by Patent L.R. 3-1(e).  In

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                    - 17 -                              23129\2505708.1

2.      TPL's Infringement Contentions Are Sufficient.

To comply with Patent Local Rule 3-1, a party need only set forth "particular theories of infringement *with sufficient specificity to provide defendants with notice of infringement* beyond that which is provided by the mere language of the patents themselves." *Network Caching II*, 2003 WL 21699799, at *4 (emphasis added).  TPL's contentions meet this requirement, as they relate claim terms to specific elements of the Accused Products, using photos and publicly available information.  No more is required.  Indeed, Barco does not even suggest that TPL's theories are not adequately disclosed, contending only that certain factual details were omitted and that the evidence disclosed in the contentions does not prove infringement.

a.      *Barco's Complaints That TPL Omitted Details Are Without Merit*

(1)      *"entire ring oscillator variable speed system clock," "entire oscillator . . . clock," and "entire variable speed clock"*

The asserted '336 patent claims require an on-chip oscillator that varies "due to said manufacturing variations and due to at least operating voltage and temperature of said single integrated circuit."  '336 Patent, Claim 1.  Barco claims that TPL's infringement contentions fail to show that the accused products have (1) an "entire ring oscillator variable speed [system] clock, or "entire variable speed clock," or "entire oscillator [… clocking]," with (2) a "varying" frequency that (3) varies as a function of manufacturing variations or variations in temperature or voltage applied to the chip.  Barco Mot. at 20-22.  Barco's argument is eviscerated by its admission in its Responsive Claim Construction Brief that "TPL's infringement contentions explicitly accuse the 'VCO' of a phase-locked loop as meeting the 'ring oscillator' related elements."  Resp. Claim Constr. Brief, 8:18-19 (Dkt. 130).  And as discussed in Section III.B.2, TPL's preliminary infringement contentions do (1) indicate the presence of a variable on-chip oscillator clocking the CPU in the accused products, and (2) state that, generally, microprocessor clocks vary due to the material properties of the processor, under different operating voltages

---

*Fresenius*, the patentee *did not even mention* the doctrine of equivalents in its infringement contentions.  2005 U.S. Dist. LEXIS 41837, at *30-31.  In contrast, TPL specifically stated that if a claim element is not literally present, the accused products infringe under the doctrine of equivalents.  *See* Barco Mot., Ex. C.  *Fresenius* does not preclude TPL from asserting infringement under the doctrine of equivalents.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

1    and/or temperatures.  This is proper indirect evidence of infringement.  *See Rosemount, Inc. v.*

2    *Beckman Instruments, Inc.*, 727 F.2d 1540, 1547 (Fed. Cir. 1984) (affirming finding of

3    infringement based on indirect evidence that the "temperature variations would equally affect

4    elements arranged in such 'close proximity'").  There is thus no merit to Barco's argument that

5    TPL omitted any reference to the entire "variable speed clock" or its requirement to be capable of

6    varying in its infringement contentions.

7                    *(2)    Location Of Independent "second clock"*

8            Barco falsely claims that TPL's infringement contentions regarding the "second clock" are

9    speculative.  As a starting point, the '336 patent claims a "second clock"[17] or an "external

10   clock"[18] which is either "connected to"[19] or "clocking"[20] the input/output ("I/O") interface, which

11   is how the microprocessor communicates with the outside world.  The second, or external clock

12   consists of one or more clock signals used to time the operation of the I/O interface.  Oklobdzija

13   Decl., ¶ 47.  Therefore, proof of a clock signal that originates from a source that is different from

14   the on-chip oscillator shows the presence of a second clock which is distributed throughout the

15   I/O interface as a number of different signals, all of which are designated as second clock.  *Id.*

16           Barco complains that TPL has not sufficiently identified the second clock, or how it is

17   connected to the I/O interface, but that is wrong.

18

19

20                                             Two of these I/O interfaces are clocked by a second clock whose

21   signals are embedded in a data stream,

22

23                                                                                    In both of these cases, a

---

[17] '336 Patent, Claims 1, 11 (Barco Mot., Ex. B).
[18] *Id.* at Claims 6, 10, 13, 16.  Of note, Barco's Motion does not take issue with the PICs regarding the claimed external clock, only the second clock.  Barco Mot. at 20-21.
[19] '336 Patent Claims 1, 6, 11, 13 (Barco Mot., Ex. B).
[20] *Id.* at Claims 10, 16.
[21] *See, e.g.*, Product Report for Hog iPC at 9, 10, 14, 15 (Barco Mot., Ex. N).
[22] *See, e.g.*, Product Report for Media Axon Server at 11, 13, 19, 21 (Barco Mot., Ex. I).
[23] *See, e.g.,* Product Report for JPEG 2000 Encoder/Decoder, 6, 7, 11, 12 (Barco Mot., Ex. D); Product Report for JPEG 2000 Encoder/Decoder, 6, 7, 11, 12 (Barco Mot., Ex. E).

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                              - 19 -                                    23129\2505708.1

1    second clock is connected to the I/O interface by a set of wires.  Oklobdzija Decl., ¶¶ 52-54, Exs.

2    26, 27. ████████████████████████████████████████████████████████████

3    █████████████████████████████████████

4    ██████████████████████  The transceiver contains a second clock, which does not originate from the

5    microprocessor, but is connected as shown in the Cortina datasheet.  *Id.*, ¶ 51.

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████  The XDR specifications describe a

8    XCG clock generator for generating a clock signal to time the operations of the interface with

9    XDR dynamic random access memory (DRAM).  *Id.*, ¶ 56, Ex. 28.  This generates the

10   independent second clock, which is transmitted into the microprocessor containing an XDR (I/O)

11   memory interface, and is connected through a pair of wires.  *Id.*, ¶ 57-58.

12   ████████████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████  As

14   described previously, Dr. Oklobdzija's declaration explains the basis for his belief that the

15   clocking structure and memory interface for the DDP1011 chip remains the same as in the older

16   model DDP1000 chip.  *Id.*  The Texas Instrument DDP1000 Presentation attached to TPL's

17   Infringement Contentions show that the second clock for these products is generated by the

18   Rambus Clock Gen (DRCG), and the clock connection is explicitly shown by the arrow

19   emanating from the right of the DRCG block, and is connected to the Rambus DRAM and DDP

20   1000.  *Id.*, ¶ 60.

21                    (3)    *Location Of Ring Oscillator And Its Connection to CPU*

22          Barco's complaint that the PICs do not indicate the presence of the ring oscillator and its

23   connection to the CPU overlooks, as it must, the presence of a ring oscillator in the accused

24   device microprocessors.  Because this variable speed ring oscillator operates as the system clock,

25   and is used for clocking the CPU, it must therefore be connected to the CPU.  Oklobdzija Decl.,

26   _____

27   [24] *See, e.g.* Product Report for iCon H500/H250 at 8, 9, 11 (Barco Mot., Ex. L); Product Report for iCon H400 at 7, 8, 12, 13 (Barco Mot., Ex. F); and Product Report for SIM 5R DLP at 8, 9, 11 (Barco Mot., Ex. G).

28   [25] *See, e.g.*, Product Report for RLM R6+ at 9, 10, 15 (Barco Mot., Ex. K); Product Report for SLM R12+ at 3, 4, 8, 9 (Barco Mot., Ex. H).

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

- 20 -

23129\2505708.1

¶ 16.  As explained by Dr. Oklobdzija, these are the theories of infringement that TPL disclosed to Barco in its infringement contentions, and certainly not the basis for summary judgment due to a faulty or otherwise unsupported infringement contention.[26]

      b.  *The Evidence In TPL's Infringement Contentions Is Sufficient*

    The majority of Barco's Motion is given over to complaining about TPL's evidentiary support of its Preliminary Infringement Contentions, for example, the cited publications are somehow lacking, the technical information relates to microprocessors not found in the accused devices, and the chips were not reverse engineered according to Barco's standards.  As set forth above in Section III.B.2.a, those arguments do not withstand scrutiny.

    Barco's contention that TPL's infringement contentions are inadequate because the engineering documentation TPL provided does not, according to Barco, "come close to real reverse engineering," is of no legal significance to the remedy Barco seeks.  *See* Barco Mot. at 11. The question of whether TPL conducted "reverse engineering or its equivalent" is "*not synonymous with whether [patentee] has complied with Patent LR 3-1, which … requires a party only to set forth its theories of infringement.*"  *Network Caching II*, 2003 WL 21699799 at *5 (emphasis added).  Again, Barco is attempting to conflate various legal doctrines to create a new procedural mechanism for summary judgment, rather than relying on available remedies.  *See id.* This is not a proper basis for granting summary judgment.

    *Network Caching I* analyzed sanctions under FRCP 11.  In denying a motion to dismiss a patent case for insufficient infringement contentions, Judge Walker considered whether the Rule 11 standard applies to PICs under Patent Local Rule 3-1: "While the court is reluctant to hold that in all cases such a comparison requires reverse engineering of the defendant's products, the court finds that reverse engineering *or its equivalent* is required."  *Network Caching I,* 2002 WL 32126128, at *5 (emphasis added).  Barco obviously ignored, as it must, that an "equivalent" to reverse engineering is acceptable.[27]  Barco also ignores that a "sufficient investigation … does not

---

[26] The one case Barco cites in support of its argument, *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1112 (Fed. Cir. 2000), has nothing to do with allegedly conclusory infringement contentions but instead concerned the sufficiency of conclusory *declarations* offered in opposition to summary judgment.

[27] In the case Barco relies on, *Renesas Tech*, the accused infringer brought a motion *to strike the*

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

require a plaintiff to reverse engineer every accused product" where "reverse engineering would not provide more detail regarding any potential infringement." *Renesas Tech.*, 2004 WL 2600466 at *2. The transistors on the chips in the accused products here are smaller than the wavelength of visible light. Oklobdzija Decl., ¶ 62. Without the design specifications for the chips — information TPL has sought through discovery — it is impractical to find the transistors for the on-chip oscillator, which is typically made up of only 10-20 transistors out of millions. *Id.*, ¶ 64. In such circumstances, reverse engineering is not required. *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363 (Fed. Cir. 2000) (finding pre-filing investigation reasonable where plaintiffs "could not determine by reverse engineering whether the drug had been manufactured by the patented processes"); *see also Renesas*, 2004 WL 2600466, at *2.

**C.     In The Alternative, The Court Should Deny Summary Judgment And Allow TPL To Complete Key Discovery.**

The Court should deny summary judgment because TPL has proven with detailed declarations that it does not yet have sufficient information about Barco's infringement of the '336 patent, but that it will likely get those facts by completing discovery. TPL has thus proven that Barco's Motion is premature and should be denied under Fed. R. Civ. Proc. 56(d). In the alternative, the Court should continue the hearing on the Motion until after TPL has completed discovery on the design and operation of the microprocessors within the accused products.

1.     Early Summary Judgment Is Disfavored.

Unless further discovery would be "fruitless," the Ninth Circuit generally disfavors summary judgment where relevant evidence remains to be discovered." *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988).

> Summary denial is especially inappropriate where the material sought is also the subject of outstanding discovery requests. [¶] … The courts which have denied a Rule 56(f) application for lack of sufficient showing to support further discovery appear to have done so where it was clear that the evidence sought was almost certainly nonexistent or was the object of pure speculation.

infringement contentions. The court was thus required to determine whether the plaintiff sufficiently compared the accused products to the asserted patent claims, not consider summary judgment. 2004 WL 2600466 at *2.

*VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir. 1986).  This preference for full discovery before summary judgment proceedings is exemplified by *American Guar. & . Ins. Co. v. Westchester Surplus Lines Ins. Co.*, 334 Fed. Appx. 839, 840 (9th Cir. 2009) (unpublished) (abuse of discretion to deny a Rule 56 motion four months before discovery cut-off where outstanding discovery might help defeat summary judgment).

Here, summary judgment should be denied because the parties have only just begun to tap information concerning Barco's infringement, including the presence of a variable speed clock in the accused products.  Further discovery from Barco and its chip suppliers is virtually certain to bear fruit on the design and operation of the microprocessors in the accused products.  With no discovery cut-off yet set, there is ample time to develop a mountain of evidence that Barco infringes — even more time than the four months that was held sufficient in *American Guar.*, 334 Fed. Appx. at 840.  As Magistrate Judge Lloyd recently put it in the related *HTC v. TPL* case, which is proceeding on the same discovery schedule as this action, "discovery … is still very much ongoing and not near its end, especially since … no party depositions have taken place, and no claim construction hearing or discovery cut-off date has been set."[28]  Granting summary judgment now would only reward Barco's attempt to short-circuit discovery and thus prevent TPL from acquiring further evidence of Barco's infringement of the '336 patent.

The situation here is the opposite from *Exigent Tec., Inc. v. Altrana Solutions*, 442 F.3d 1301, 1310 (2006), where the Federal Circuit upheld denial of a Rule 56(d) motion.  In *Exigent*, the patent holder sought additional discovery after the fact discovery cut-off, and only after receiving two extensions of time to respond to the summary judgment motion.  *Id.* at 1309–1311.  Here, discovery is ongoing, and TPL diligently has pursued Barco for documents, interrogatory responses, and Patent Local Rule disclosures, and has subpoenaed chip suppliers for relevant documents as well.  Mar Decl., ¶¶ 3–8, 10.  Moreover, TPL has not sought, for the purpose of obtaining more discovery, any extensions of the summary judgment schedule.[29]  *Id.*, ¶ 16.

---

[28] 01/12/2011 (1) Order Denying Defs.' Mot. to Compel Interrog. Resps. & Produc. of Docs, and (2) Interim Order Re:  Pls.' Mot. to Compel Resps. to Interrogs. Nos. 3 & 4 and RFP Nos. 3, 5, 6, and 8–11, 4, Case No. C 08-00882 JF (HRL) (Dkt. 250).

[29] TPL did seek a change in the briefing schedule on this Motion to accommodate counsel's schedule as TPL's initial opposition brief was due on December 24, 2010.  Mar Decl., ¶ 16.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                - 23 -                          23129\2505708.1

2.   TPL's Declarations Identify the Specific Facts It Seeks, How They Will Be Obtained, And Why They Are Important to Proving Infringement.

Detailed declarations of Dr. Oklobdzija and Mr. Mar prove that further discovery is highly likely to uncover dispositive facts concerning Barco's infringement of the '336 patent. A party can defeat summary judgment under Rule 56(d) by making "(a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists." *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n.5 (9th Cir. 2009) (internal quotation marks omitted) (construing former Rule 56(f)). In granting a Rule 56(d) request, the Court can deny the motion for summary judgment, defer considering it, allow time for more discovery, and/or "issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) is "intended to safeguard against judges swinging the summary judgment axe too hastily," *Morrissey v. Boston Five Cent Sav. Bank*, 54 F.3d 27, 35 (1st Cir. 1995) (internal quotation omitted), and Rule 56(d) motions should be granted "almost as a matter of course." *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 963 (5th Cir. 2009).[30]

a.   *TPL Is Likely To Get Key Chip Schematics*

Despite Barco's refusal thus far to produce schematics and diagrams of the microprocessors incorporated into its accused products, TPL is likely to obtain that information in discovery. Mar Decl., ¶¶ 10, 11, 13. There is no dispute that these documents exist. The documents and the information in them are the subjects of Barco's disclosure obligations and of outstanding discovery requests, including TPL's requests for production nos. 11, 13, 14, 26, and 27, 76, 78, 79, 82, 83, and 86; interrogatory nos. 3, 14, and 18; and the production of documents concerning accused products that is required under Patent Local Rule 3-4(a). TPL is also pursuing this discovery from other sources: TPL has subpoenaed documents from the chip manufacturers themselves and has opened discussions with those manufacturers concerning additional measures to protect any legitimate confidentiality concerns. Mar Decl., ¶ 10, Ex. I.

With documents providing detailed product level datasheets, block diagrams, source code,

---

[30] *See also Mid-South Grizzlies v. Nat'l Football League*, 720 F.2d 772, 779 (3d Cir. 1983) ("Where Rule 56(f) affidavits have been filed … and the facts are in the possession of the moving party … a continuance of the motion for purposes of discovery should be granted almost as a matter of course.").

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA 94104
Telephone: (415) 954-4400

and technical presentations, TPL will be able to determine the design and operation of the exact microprocessors in the accused products, including the presence and variability of an on-chip ring oscillator.  This is the information upon which Dr. Oklobdzija, and a jury, would rely on in assessing infringement.  Oklobdzija Decl., ¶ 60.

> b.  *TPL Intends To Depose People Knowledgeable About The Microprocessors' Design And Operation*

TPL will also obtain relevant information through depositions of engineers knowledgeable about the design and operation of the relevant microprocessors.  Mar Decl., ¶ 11.  Interrogatories 14 and 18 seek to identify these witnesses, who will likely be produced by chip suppliers in response to subpoenas.  Such witnesses can provide details about the presence of an on-chip ring oscillator, its variation with temperature, voltage, and the manufacturing process, and its ability to vary with or track process frequency.  Oklobdzija Decl., ¶¶ 10-11, 40-45.

As the declarations prove, there are many sources of information relevant to Barco's infringement that are still being developed.  In part this is because Barco has refused to provide the required information.  Other sources, such as the chip manufacturers and their witnesses, have not yet borne fruit because it is still early in the discovery process, and TPL has properly elected to pursue party-only discovery before turning to third parties.  There is no dispute, however, that the relevant technical data exists and that TPL is entitled to it in the course of normal discovery.  It thus is highly likely that this information will become valuable evidence in proving Barco's infringement.  The Court should deny Barco's attempt to cut Defendants off from discovery by granting the Rule 56(d) motion and denying summary judgment or, in the alternative, continuing the hearing until Defendants complete discovery of the structure and operation of the microprocessors in the accused devices.

## IV.   <u>CONCLUSION</u>

Defendants respectfully request the Court deny Barco's Motion, or in the alternative, continue the hearing on this Motion until Defendants complete discovery.

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)

- 25 -

23129\2505708.1

1   Dated:  February 4, 2011                    FARELLA BRAUN + MARTEL LLP

2                                               By:_____/s/ *John L. Cooper*_____
                                                         John L. Cooper
3
                                                Attorneys for Defendants
4                                               TECHNOLOGY PROPERTIES LIMITED
                                                and ALLIACENSE LIMITED
5
                                                KIRBY NOONAN LANCE & HOGE LLP
6
                                                By:_____/s/ *Charles T. Hoge*_____
7                                                        Charles T. Hoge

8
                                                Attorneys for Defendant
9                                               PATRIOT SCIENTIFIC CORPORATION

10
        Counsel for Technology Properties Ltd. and Alliacense Ltd. hereby attests that he has
11
   obtained the other signatory's concurrence in the filing of this document.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
Russ Building, 30th Floor
235 Montgomery Street
San Francisco, CA  94104
Telephone: (415) 954-4400

DEFS.' OPP. TO BARCO'S MOT. FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT
Case No. 5:08-cv-05398 JF (HRL)                - 26 -                        23129\2505708.1