Daniel J. O'Connor
Edward K. Runyan
**Baker & McKenzie LLP**
130 E. Randolph Street
Chicago, Illinois  60601
daniel.oconnor@bakermckenzie.com
ph 312-861-2790

Tod L. Gamlen
**Baker & McKenzie LLP**
660 Hansen Way
Palo Alto, CA 94303-1044
Telephone: +1 650 856 2400
tod.l.gamlen@bakernet.com

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **BARCO N.V., a Belgian corporation** | **Case No.  C 08 05398 JF** |
| **Plaintiff,** | **BARCO'S REPLY BRIEF ON ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT ON THE '336 PATENT** |
| **v.** | |
| **Technology Properties Ltd., Patriot Scientific Corp., and Alliacense Ltd.,** | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

1
2
3

**TABLE OF CONTENTS**

4   I.   Introduction ................................................................................................. 1

5   II.  Response to Arguments Raised by TPL ....................................................... 4

6        A.   TPL Admits It Lacks Evidence Of Infringement --
             Which Is The Point Of Barco's Motion ............................................ 4
7
8        B.   TPL's Arguments Blaming Barco For TPL's Lack Of
             Evidence Are Without Merit And Only Underscore
             The Merits of This Motion ................................................................ 5
9
10       C.   TPL's Expert Declaration Does Not Defeat Summary Judgment .... 7

11       D.   TPL's Defense Of Its Infringement Contentions Is Without Merit ... 13

         E.   TPL'S Request for Relief Under Rule 56(d) Should Be Denied ........ 14
12
13  III. Conclusion ................................................................................................. 15

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Baxter Healthcare Corp.*,
    2010 U.S. Dist. LEXIS 104531 (N.D. Ill. Sept. 30, 2010) .......................................8

*Anticancer, Inc. v. Cambridge Research & Instrumentation, Inc.*,
    Case No. 07CV97 JLS (S.D. Cal. Feb. 13, 2009) ...................................................13

*Bender v. Maxim*,
    2010 U.S. Dist. LEXIS 89957 (N.D. Cal., July 29, 2010) .......................................5

*Berger v. Rossignol Ski Co., Inc.*,
    2006 WL 1095914 (N.D. Cal. April 25, 2006) .......................................................13

chip. *Shared Mem. Graphics v. Apple*,
    2010 U.S. Dist. LEXIS 138868 (N.D. Cal., Dec. 30, 2010) ....................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)...............................................................................................2

*Exigent Tech. v. Atrana*,
    442 F. 3d 1301 (Fed. Cir. 2006)......................................................................1, 4, 12

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    2005 U.S. Dist. LEXIS 41837 (N.D. Cal. Sept. 2, 2005) .......................................13

*Fujitsu Ltd. v. Netgear, Inc.*,
    2009 U.S. Dist. LEXIS 85802 (W.D. Wis. Sept. 18, 2009) .....................................8

*Genentech, Inc. v. Amgen, Inc.*,
    289 F.3d 761 (Fed. Cir. 2002)................................................................................13

*Kim v. Conagra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006)..............................................................................7

*McCauley v. Stanford Univ. Med. Ctr.*,
    2009 U.S. Dist. LEXIS 18748, *37-39 (N.D. Cal. Mar. 11, 2009) ........................15

*MEMC Elec. Matls., Inc. v. Mitsubishi Matls. Silicon Corp.*,
    248 Fed. Appx. 199 (Fed. Cir. 2007).......................................................................7

*O2 Micro International, Ltd. v. Monolithic Power Systems, Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006)..............................................................................13

-ii-

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Renesas Tech. Corp. v. Nanya-Tech. Corp.,*
       2004 U.S. Dist. LEXIS 23601 (Nov. 10, 2004)...................................................5, 13

4
     *Sowell v. County of Santa Clara,*
5      2008 U.S. Dist. LEXIS 101883 (N.D. Cal. Dec. 17, 2008).....................................14

6    *United States v. Kitsap Physicians Serv.,*
       314 F.3d 995 (9th Cir. 2002) ...............................................................................15
7

8    *View Engineering v. Robotic Vision,*
       208 F. 3d 981 (Fed. Cir. 2000)...............................................................................5

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-iii-

## I.    INTRODUCTION

Barco filed this motion because it believed TPL does not have evidence that the accused products meet certain limitations of the asserted claims of the '336 patent, and that has now proven to be true.  Remarkably, TPL admits that it lacks the evidence it would need to prove infringement. The admissions are clear and they are multiple.  *See* Section II.A. below.  These admissions are really all that is needed to grant this motion, because the purpose of the motion is to challenge that TPL has evidence necessary for infringement.  See *Exigent Tech. v. Atrana*, 442 F. 3d 1301 (Fed. Cir. 2006)[1]  TPL has now conceded the point.  TPL says, although it "does not yet have sufficient facts about Barco's infringement", it "will likely get those facts by completing discovery." Opposition ("Opp."), p.22.  This is something the court should not allow.

If ever a party is undeserving of a break to allow it to find the evidence it needs it is TPL. Their brief is a litany of unfounded excuses why TPL lacks evidence of infringement.  Moreover, TPL has approached this case disingenuously, shown by its treatment of "reverse engineering". TPL's Opposition says reverse engineering is "highly impractical."  TPL ignores that it originally claimed to have done reverse engineering. Its infringement contentions were originally labeled "Reverse Engineering Report".  Barco pointed out that no real reverse engineering had been done. Docket No. 100, p. 1. This court referred to TPL's "reverse engineering reports" in its order denying TPL's motion to amend its infringement contentions.  Docket No. 105, p. 5.  TPL has now dropped the term "Reverse Engineering Report", and instead re-packages the same images using the term "Teardown Report."  See Opp., p. 11.  What was formerly a "Reverse Engineering Report" is now a "Teardown Report", and "reverse engineering" is now "highly impractical."

TPL's first defense is to make excuses for it's lack of evidence.  Specifically, TPL contends it is "highly impractical" to do reverse engineering, and that *"TPL has Not Yet Been Able To Obtain Critical Discovery"*.   These two excuses, by themselves, are damning to the merits of TPL's position.  As to the first, it is not Barco's purpose or intent to "suggest" to TPL how to "establish

---

[1] "[W]e conclude that nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." 442 F. 3d at 1308-09.

BARCO'S REPLY BRIEF ON ITS MOTION FOR SUMMARY JUDGMENT
OF    NONINFRINGEMENT    ON    THE    '337    PATENT
CASE NO. C 08-05398 JF

infringement".  If the most common way to show infringement in a case about chips, i.e. reverse engineering, is truly "impractical", which Barco doubts, that is TPL's problem and it should have been considered before TPL added the '336 patent to the case.[2]  Rather than use reverse engineering, TPL says it is instead pursuing a "more efficient" way to show infringement, by seeking documents which it still does not have two years into this case.

TPL's other excuse, actually a plea for mercy, that it "has not yet been able to obtain critical discovery", is equally damning.  Barco does not believe there exists evidence of infringement, but if it does exist, TPL has gone about seeking it in the least efficient way.  The accused products are not really Barco's products, but they are off-the-shelf chips that Barco buys and uses as components in its products.  If there is evidence of infringement anywhere it is at the companies, i.e. the chip makers, who designed and made the chips that supposedly infringe.  Amazingly, TPL never sought discovery from those companies until January 19, 2011, well after Barco filed this motion.  The chip makers are hardly inaccessible or impervious to discovery. They are all in plain sight, in the United States, and two of them are headquartered in this district, in Milpitas and San Jose.

The truth is that TPL <u>could</u> have, before it asserted the '336 patent against Barco, reverse engineered or otherwise tested the accused chips for infringement, and TPL <u>could</u> have, after this case was filed, sought discovery from the makers of these chips to look for evidence of infringement, yet TPL did <u>neither</u>.  TPL's plea that it "has not yet been able to obtain critical discovery" should rightfully fall on deaf ears.  The court should not indulge TPL, which now finds itself, by its own admission, lacking "critical evidence" of infringement after it has squandered the resources of the court and Barco by maintaining unsupported allegations of infringement for over two years.

TPL also relies on an expert's declaration in an attempt to stave off summary judgment.  That tactic fails.  The expert, like TPL, lacks "critical evidence."  The expert's declaration does not pass muster under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and Fed. R. Evid. 702 and is otherwise insufficient to defeat summary judgment.  The expert does not rely on any inspection or testing of the accused chips, but instead on published articles that are about concepts of engineering,

---

[2] The '336 patent was not pleaded in the original complaint for dilatory judgment, filed in December, 2008.  It was introduced into the case in TPL's counterclaim filed in  February, 2009.

2

not even about the accused chips.  Testing for infringement could have been done, yet this expert did no tests. His report is riddled with qualifiers such as that features are "commonly implemented" in a certain way (instead of what features are actually found in the accused chips), how features are known to be  "capable of operating" (instead of how features in fact operate in the accused chips), and what he "expects" additional discovery would confirm (instead of what he has found or measured the chips to be actually doing).

It is important not to lose sight of the claim limitation put at issue by Barco's motion – an on-chip clock, controlling the speed of the microprocessor, the speed of which varies with the temperature and voltage experienced by the chip.  A typical microprocessor in a computer, for example, an Intel Pentium, does not have a speed that varies if the chip heats up.  One of the named inventors on the '336 patent, Moore, conceded this:



(Ex. 1, Moore Depo. at 227.)

It is this clock – a clock in which the speed varies with the chip's temperature and voltage – and it is evidence of such a clock in the accused chips that Barco put at issue in its motion.  TPL has no such evidence.

This case, and this motion, should stand for the following: in a patent case, you cannot overcome a motion for summary judgment of non-infringement if you have never tested or reverse engineered the accused product, unless you have strong documentary evidence of infringement.  TPL has none of the above.

3

## II.   RESPONSE TO ARGUMENTS RAISED BY TPL

### A.   TPL Admits It Lacks Evidence Of Infringement -- Which Is The Point Of Barco's Motion

Under a heading "TPL Lacks Key Information", TPL says it "lacks a plethora of information relevant to Barco's infringement of the '336 patent." Opp., p. 4  The evidence it lacks, TPL hopes to obtain in discovery.  In the same section, the Opposition states: "Through discovery, TPL is likely to obtain documents concerning the microprocessors' clock trees, clock circuitry diagrams, timing diagrams, system and transistor level schematics for the clocking circuitry and phase-locked loops, schematic diagrams of the ring oscillator used in the phase-locked loops, block diagrams of the phase-locked loops including the circuit schematics for each block of the phase-locked loops, simulation procedures and results for the clocking circuitry and phase-locked loops, and results from testing the clocking circuitry and phase-locked loops." *Id.*  TPL then states that these documents, which TPL acknowledges it does not have, "will confirm that Barco's accused products contain an on-chip ring oscillator variable speed system clock clocking the CPU". *Id.*

TPL thereby admits that it does not have documents that can "confirm" that the accused products contain an "on-chip variable speed system clock clocking the CPU."  That which TPL admits it does not have evidence of is required in all the claims of the '336 patent.  That is the point of Barco's motion – to challenge that TPL has evidence on this point.  TPL has now admitted it does not.

This admission is repeated in the Opposition.  At page 22, TPL states: "TPL has proven with detailed declarations that it does not yet have sufficient information about Barco's infringement of the '336 patent, but that it will likely get those facts by completing discovery."  Again, TPL admits the point of Barco's motion – that TPL lacks evidence needed to show infringement.  TPL candidly indicates its strategy is that it is "likely" to find evidence of infringement if it does more discovery.

The entire rest of TPL's brief should be read against these admissions.  The purpose of a motion for summary judgment under *Exigent* and *Celotex*, as set forth in Barco's motion, when made by a party on an issue wherein it does not bear the burden, is to identify a claim limitation, state that it is lacking in the accused products and explain why, and state that the patent holder lacks

4

1  evidence on this point.  That is what Barco did in its motion.  That puts the burden on the patent

2  holder to come forth with evidence showing the accused product has the feature which the movant

3  says is lacking.  TPL has admitted it does not have that evidence.  TPL says it will "likely" find the

4  evidence it needs through additional discovery.

5       The court should not permit this.  TPL should have had evidence to prove up infringement by

6  at least one Barco product before it asserted the '336 patent against Barco[3].  Patent litigation is

7  expensive and time-consuming, and a patent holder should not be allowed to assert a patent on the

8  hope that it will "likely" find evidence of infringement.  The '336 patent is not a process patent

9  wherein infringement cannot be found without suing because the process is practiced in secret.  The

10  '336 patent is on a circuit or a collection of circuits, and the products that TPL accuses of

11  infringement are publicly available on the open market and can be tested and analyzed.  The

12  counterclaim for infringement of the '336 patent should not have been filed and it should not have

13  been allowed to get as far as it has.  The court should call a halt to it.

14      B.    **TPL's Arguments Blaming Barco For TPL's Lack Of Evidence Are Without Merit And Only Underscore The Merits of This Motion**

15

16       TPL complains that reverse engineering of the accused chips was suggested by Barco, but

would be "highly impractical."[4]  This is not Barco's problem.  If reverse engineering or its

17  equivalent[5] is "highly impractical" for these chips, that is something TPL should have considered

18  prior to litigation.  By making this argument, TPL concedes that it has not, before or after this

19  litigation started, reverse engineered any of the accused chips to determine if they infringe.  This

20  concession, coupled with TPL's admission that it lacks critical documentary evidence of

21  infringement, raises issues about the adequacy of TPL's pre-filing investigation, which supports

22  Barco's point in filing this motion.

23       TPL claims it has been diligent in propounding the discovery it needs to show infringement,

24

---

25  [3] *View Engineering v. Robotic Vision*, 208 F. 3d 981, 986 (Fed. Cir. 2000).
[4] TPL's expert suggests that reverse engineering has fallen out of favor today due to the high

26  numbers of transistors in chips today compared to the 1980's or early 1990's.  This begs credulity. Recent cases show reverse engineering is still an accepted means to determine infringement in a

27  computer chip.  *Shared Mem. Graphics v. Apple*, 2010 U.S. Dist. LEXIS 138868 (N.D. Cal., Dec. 30, 2010); *Bender v. Maxim*, 2010 U.S. Dist. LEXIS 89957 (N.D. Cal., July 29, 2010).

28  [5] *Renesas Tech. Corp. v. Nanya-Tech. Corp.,* 2004 U.S. Dist. LEXIS 23601, *8-9 (Nov. 10, 2004) ("reverse engineering or its equivalent is required").

5

but blames Barco for allegedly withholding the evidence needed to oppose this motion: "Barco thus is withholding the very evidence necessary to address its Motion."  Opp., p. 4.  If there is any merit to this charge, TPL should have filed a motion to compel against Barco.  No such motion was filed. This is, in fact, a totally false charge.  The only discovery TPL propounded on Barco before this motion was filed is a set of requests for production of documents, served February 25, 2009, and interrogatories served April 8, 2010.  Because Barco is not the manufacturer of the accused chips, Barco informed TPL that it has few technical documents about them. In a letter dated June 25, 2009, Barco informed TPL that it had two datasheets responsive to TPL's requests, one of which was produced with the letter.  As to the other data sheet, Barco's June 29, 2009 letter told TPL that it was a Texas Instruments ("TI") data sheet for one of the accused chips, that it was marked proprietary by TI, and Barco was not free to produce it.  TPL did not follow up until January 5, 2011, after Barco's motion was filed, when TPL asked Barco to produce the TI data sheet, because there is now a protective order in place.  Barco then approached TI and obtained authorization to produce the data sheet, and it was provided to TPL.  At any time, TPL could have served a subpoena on TI for that document, and all other documents or information about the accused two accused TI chips, but TPL failed to do so.

As stated above, the parties most likely to have information relevant to infringement are the companies who designed and made the accused chips.  Those companies and their locations are as follows: AMCC Power (Cleveland); Agere (Allentown); Texas Instruments (Dallas); Xilinx (San Jose.); and LSI Logic (Milpitas).  Notably, these are all companies located in the United States – two are in this District – and subject to discovery via subpoena.  These companies are logically the best and most complete sources of documents and information about how their products are designed and operate.  Yet, TPL ignored them.

TPL's lack of diligence is shown by the paucity of information it has about the accused chips and the total inadequacy of their investigation.  TPL's "Teardown Report" (formerly a "Reverse Engineering Report") includes pictures of the accused chips – the outsides of the chips.  The chips were not decapped to expose the circuits that can be studied and photographed microscopically. TPL has done no testing of the accused chips and has no results of testing.

6

1    TPL throws around wild and incorrect charges.  TPL lists documents requested in February

2    2009, which "Barco refuses to produce."  Opp., p. 5.  TPL fails to say that Barco has informed TPL

3    that it does not have those documents, and TPL has never challenged this, as it could have, by filing

4    a motion to compel.   TPL's charges that Barco has failed to provide complete answers to

5    interrogatories or has not produced all documents requested should be seen for what they are –

6    makeweight arguments.  If TPL believed Barco's interrogatory answers were inadequate or that

7    Barco owed documents that had been requested, TPL should have made those complaints the subject

8    of a motion to compel.  They did not do so.  Barco's response to TPL's document requests were

9    served in the spring of 2009, nearly two years ago.  Barco's answers to interrogatories were served

10   in May, 2010, nine months ago.

11        C.    **TPL's Expert Declaration Does Not Defeat Summary Judgment**

12            TPL's expert declaration carries with it the same handicaps that are conceded in TPL's brief,

13   a lack of evidence needed to show the purported infringement.  TPL's expert does not have any more

14   complete documents or information about the accused chips than TPL has.  As discussed above, TPL

15   has admitted it does not have what it needs.

16            Notably, the expert has done no testing of the accused chips and he relies on no test results

17   from any other source.  Testing the chips is not even mentioned in his declaration.  Moore, a named

18   inventor on these patents, was asked can be done to determine if a chip infringes.  His answer: "█

19   ████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████

21   ████████████████████████████████"  (Ex. 1, Moore Depo., p. 241.)  Aside from examining

22   available documents (which are sparse), TPL's expert did none of this.  He did not decap the chip to

23   examine the surface of the silicon, he did not operate the chip or monitor the RFI emitted by it, and

24   he did not put scope probes on the pins  -- and, as discussed, the chips were not reverse engineered.

25            The absence of testing by the expert has consequences.[6]  TPL has samples of the accused

---

[6] *MEMC Elec. Matls., Inc. v. Mitsubishi Matls. Silicon Corp.*, 248 Fed. Appx. 199, 203 (Fed. Cir. 2007) (affirming summary judgment of noninfringement and exclusion of expert declaration submitted in opposition to summary judgment on the grounds that the tests performed by the expert were unreliable); *Kim v. Conagra Foods, Inc.,* 465 F.3d 1312, (Fed. Cir. 2006) (holding that expert "did not prove infringement because she presented no testimony based on the accused products

7

chips. They have had them for years. We know that because pictures of the chips were included in "Product Reports" sent to Barco before this litigation. The lack of testing further shows TPL's lack of diligence in investigating possible infringement. Moreover, the lack of testing by the expert – particularly in light of the testimony from Moore as to what is usually done – along with the other shortcomings of the declaration, renders it inadmissible. When a party relies on an expert in opposing a motion for summary judgment, the expert's declaration must meet the standards of Daubert and Fed. R. Evid. 702. Because the expert could have, but did not, test any of the accused chips, and because the named inventor testified that certain tests are normally done, but it is known they were not done here, this expert's declaration, to the extent it purports to be relevant to infringement, is not reliable. Because of the lack of any testing and due to its other shortcomings, the declaration does not constitute admissible evidence of infringement, and it fails under Fed. R. Civ. Proc. 56(e)(1).

The expert's declaration is riddled with qualifiers. Rather than state what the accused chips actually do (because the expert does not know what they actually do, not having tested them or reverse engineered them), the expert refers to what is "commonly" done, or what certain types of structures are "capable" of doing. The expert's frame of reference is not the accused chips themselves but published articles about principles of electrical engineering or circuits generally. He relies on figures from published articles, which are presented misleadingly as if they are figures depicting the accused products. For example, the figure accompanying par. 20 of his declaration is not from any accused product, rather it is from an article published in a 1995 edition of an IEEE journal. *See* Opp., fn. 15. The figure accompanying par. 21 is not from any accused product, but is from an article published in a 1992 edition of an IEEE journal. *See* Opp., par. 21. The figure accompanying par. 26 is from a data sheet for a TI chip, but not one of the accused TI chips. The

themselves that supported a finding of infringement," "offered conclusory testimony," and did not conduct "any examinations or tests of the actual accused products"); *Abbott Labs. v. Baxter Healthcare Corp.,* 2010 U.S. Dist. LEXIS 104531, *7-8 (N.D. Ill. Sept. 30, 2010) (denying motion to reconsider grant of summary judgment of noninfringement and holding that experts' speculative testimony failed to raise genuine issues of fact); *Fujitsu Ltd. v. Netgear, Inc.,* 2009 U.S. Dist. LEXIS 85802, *12 (W.D. Wis. Sept. 18, 2009) (granting summary judgment of noninfringement and holding that an expert's "[c]onclusory statements that the products perform the same function or that different versions *typically* perform the same function are speculation, not evidence that the products actually perform the same function.") (emphasis in original).

8

accused TI chip is DDP3020 DLP, whereas the data sheet is for a different part number, CDCDLP223.

The expert's declaration is also contradicted by TPL's infringement contentions on a point that is repeated throughout the declaration. The expert states that a voltage-controlled oscillator ("VCO") is a "necessary and indispensable building block of a PLL (phase-locked loop")". This is repeated in the declaration, in pars 20, 25, 28, 33, 34, 40. This statement is contradicted by the following statement from TPL's infringement contentions: "Note: The presence of a PLL indicates the presence of a ring oscillator, either a voltage controlled oscillator ('VCO') or a current controlled oscillator ('CCI')." The expert says a PLL must have a VCO, but the infringement contentions say a PLL can have a VCO or an ICO.

The expert's declaration's discussion of each of the accused chips is flawed:

**(1) AMCC Power PC 405.** For this chip, as for the others, because the expert has not tested it or reverse engineered it, and has insufficient documentation about the chip, he has no direct evidence of what circuits are actually in the chip, where they are located, or exactly how they operate. Therefore, he bases his statements on secondary sources as to what is he says is usually or expected to be found or occur. He states, without support, that the accused chip has a VCO that is implemented using a ring oscillator, which is a required element of all the asserted claims of the '336 patent. TPL and its expert use a subtle technique for this, which is repeated for each accused device: it starts out with qualified or conclusory statements of possible features of the accused products, and then moves to progressively stronger statements until, by the end of the argument, TPL is stating as an established fact that which started out as a mere possibility. For each accused product, there is at least one (and most often more than one) link in the chain that is not supported by admissible evidence.

Here is the deceptive chain of logic TPL uses for the 405 GP:

- *A* voltage-controlled oscillator "is a necessary and indispensable building block of a PLL" (phase-locked loop).
- *A* VCO "is most commonly implemented using a ring oscillator."
- "In a PLL, *the* on-chip VCO, implemented using a ring oscillator …"
- "[T]he output of *the* VCO is an internal clock used to time the operation of *the* CPU."

9

- "It is evident that *the* VCO associated with the PLL is generating the clock …"
- "This clearly establishes the presence of an on-chip oscillator corresponding to the claimed on-chip ring oscillator variable speed clock."

Opp., p. 10-11 (emphasis added).  *A* possible ring oscillator becomes *the* ring oscillator, implying that reference is being made to a specific, actual ring oscillator in a product, without proof that "the" VCO, which is itself assumed to be present, is *in fact* implemented as a ring oscillator.  To support its theory that the AMCC uses a ring oscillator, TPL's expert cites an IEEE journal article by Alvarez from 1995, which TPL says is "specific to PowerPC microprocessors."  Opp., p 10  However, Alvarez is merely a paper describing a design for Motorola and IBM PowerPCs—there is *no evidence* that this design is used in the accused chip.  The paper itself concludes by saying: "The fully integrated analog Phase-Locked-Loop described in this paper was successfully implemented in Motorola and IBM's 0.5 um, 3.3 V, four layer metal, CMOS processes."  Alvarez at 9.  The Alvarez paper was published over 15 years ago, when Motorola and IBM jointly made PowerPC chips for Apple's desktop computers.

**(2)   Agere 100404226 Microprocessor.**   TPL speculates that a photograph showing an unknown component shows a crystal because "the packaging of the TXC device resembles a crystal."  Opp., p 11.  This is conjecture.  From there, TPL jumps to the  conclusion that "the" crystal "is an external timing reference for the PLL, and as discussed previously, a VCO is an indispensable and necessary building block of the PLL."  Opp. at 11 (emphasis added).  This leads to the next step—"a VCO is most commonly implemented using a ring oscillator," followed by "It is well known to one having ordinary skill in the art that the variable speed VCO, implemented using a ring oscillator, is the element generating the clocking signal used to time the CPU."  Opp. at 11 (emphasis added).  TPL concludes: "[t]his establishes that the Agere 100404226 microprocessor contains an on-chip oscillator that corresponds to a "ring oscillator variable speed system clock' as described in the '336 Patent."  *Id.*  This conclusion is based on a series of conjectures.

TPL has no evidence that the Agere chip has a PLL.  The support is par. 24 of the expert report which says simply "The crystal provides an external reference signal for the PLL" with no further cited reference.  There is also no evidence that it has a VCO.  TPL relies on a 1980 article with no link to the accused chip.  As discussed above, TPL's own infringement contentions state that

a PLL could be implemented using an ICO. Further, just because TPL claims that a VCO is "most commonly implemented" as a ring oscillator, that does not mean a particular product does so. TPL's support for this is not admissible evidence under Rule 401—it does not pertain to the Agere chip and TPL shows no link between it and the Agere chip. Finally, TPL asks the court to assume that all the above-listed elements are ultimately used to clock the CPU in the chip. However, the inventor's own testimony proves it is impossible to conclude from the mere presence of an external crystal, that the crystal is used for the CPU and not for an input/output (I/O) interface.

> Q. ███████████████████████████████████████
> ███████████████████████████████
>
> A ██████████

(Ex. 1, Moore Depo., p. 239.)

**(3) LSI Logic TTB4398A0.** TPL's arguments regarding this chip are even weaker than the Agere and AMCC chips. Literally, TPL expects this court to find a genuine issue of fact based on the following: a chip with the designation LSI TTB4398A0 with a crystal connected to it. There is simply nothing more than this. TPL cannot even show what the LSI part is or whether it has or is a microprocessor. TPL simply states the a Barco product "uses a microprocessor from LSI Corporation," with a footnote stating that Agere Systems was acquired by LSI Logic. The support TPL alleges as proof of the presence of the claimed features is exactly the same as for the Agere chip, and will not be repeated here.

**(4) Xilinx Virtex-5**. TPL's arguments for this chip are nearly identical, and have the same problems, as those it makes regarding the AMCC chip. TPL has no support linking the references it uses to "show" that the Virtex-5 has a ring oscillator with the actual chip. Again, TPL cites Alvarez and Gardner, and adds another IEEE Journal article, from 2002, which also does not discuss the accused product.

**(5) TI DDP3020**. TPL's arguments, and the problems with them, regarding the TI DDP3020 are substantially the same as those made for the Agere chip. TPL has not shown evidence that the TI DDP3020 has a PLL, a VCO, or a ring oscillator. TPL relies again on Young, Alvarez, and Gardner, all secondary sources that do not discuss the accused product. TPL also cites its own infringement contentions for support. Expert declaration, at 15. However, TPL's contentions are

unverified. They are inadmissible hearsay.

**(6)  TI DDP1011.**  TPL's arguments for this chip are substantially the same as those  for TI DDP3020, and Barco's response will not be repeated in full here.  TPL additionally concludes, without evidence, that the allegedly infringing circuitry in the DDP1011 is the same as the DDP3020, and also declines to analyze the DDP1011 but instead relies on thinly supported arguments pertaining to yet another chip, the DDP1000, which TPL argues is similar to the DDP1011.  This is based on the expert's statement that he "believes" they "have the same structures as well except for minor functional enhancements unrelated to clock generation."  What the expert "believes" is found in a chip is not evidence.

As to all the accused chips, TPL argues strenuously that they have clocks that are capable of varying, while ignoring that the claims all require that they actually do vary, as a function of temperature, voltage, or processing (also called "parameter variation" in some claims).  That is what is necessary for infringement, and TPL does not have evidence of it for any of the accused products.  Also, for each accused product, a central part of TPL's position is that the clock arrangement uses a phase-locked loop, or PLL.  The inventor Moore admitted that the "locked" part of this term means that the entire clock is locked in frequency at a multiple of the input frequency:



(Ex. 1, Moore Depo., p. 241.)  If the clock is locked at a frequency that is a multiple of the input frequency from an off-chip source, it does not vary as a function of on-chip temperature and voltage.  The input frequency, as TPL states again and again, is derived from an off-chip source, a crystal.  Expert Decl., par. 24 ("The crystal provides an external reference signal for the PLL.").

TPL's attack on Barco's motion as supported by "attorney argument" and not an expert report is without merit.  The Federal Circuit in *Exigent* made clear that the movant, on an issue on which it does not bear the burden, is not required to provide evidence of non-infringement.  "[I]t is clear that Atrana did not have to support its motion with evidence of non-infringement."  *Exigent,* 442 F. 3d at 1309.

BARCO'S REPLY BRIEF ON ITS MOTION FOR SUMMARY JUDGMENT
OF NONINFRINGEMENT ON THE '337 PATENT
CASE NO. C 08-05398 JF

D.    **TPL's Defense Of Its Infringement Contentions Is Without Merit**

In its motion, Barco pointed out that inadequate infringement contentions can result in summary judgment of noninfringement.  In their Opposition, TPL challenges this as a matter of law.  TPL is simply incorrect.  In numerous instances, courts have entered summary judgment on the basis of inadequate infringement contentions.[7]

The problem is not that TPL's contentions are merely incomplete.  It is that they attempt to prove that *specific products* infringe by referencing published articles that have *absolutely no connection* to the accused products.  As an example, *every* claim chart in TPL's contentions refers to a paper by Sundaresan, et al.[8] that says: "Conclusion.  We have presented a . . . ring-oscillator-based clock generator compensated for variations in supply voltage, temperature and process variations."  Exh. D to Barco Motion at PIC 1600.  That Sundaresan and others at the Georgia Institute of Technology may have constructed such a clock generator circuit in 2003 has **nothing** to do with whether the accused products have such a circuit, and there is nothing in TPL's contentions explaining how they do or why this article is relevant.  Quite simply, this article, like much of the other "evidence" in TPL's contentions, is not relevant under FRE 401.  See also Ex. 2, *Anticancer, Inc. v. Cambridge Research & Instrumentation, Inc.*, Case No. 07CV97 JLS (S.D. Cal. Feb. 13, 2009)(granting summary judgment of noninfringement where "the bulk of Anticancer PICs against CRI discuss the contents of an article written by Dr. Hoffman, who is Anticancer's president and has no affiliation with CRI.").

According to the plain language of Patent L.R. 3-1(c), TPL was supposed to show in its claim charts "specifically **where** each limitation of each asserted claim is found within each Accused Instrumentality."  (emphasis added).  TPL has fallen far short of showing where each limitation is found, especially where its contentions refer to unrelated papers and not to any actual products.

---

[7] *O2 Micro International, Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355 (Fed. Cir. 2006), *Berger v. Rossignol Ski Co., Inc.*, 2006 WL 1095914 (N.D. Cal. April 25, 2006), *aff'd*, 2007 WL 200935 (Fed. Cir. Jan. 12, 2007), *cert. denied* 128 S.Ct. 48 (2007), *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761 (Fed. Cir. 2002), *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2005 U.S. Dist. LEXIS 41837 (N.D. Cal. Sept. 2, 2005), *Renesas Tech. Corp. v. Nanya-Tech. Corp.*, 2004 U.S. Dist. LEXIS 23601 (Nov. 10, 2004).

[8] Sundaresan, et al., *A 7-MHz Process, Temperature and Supply Compensated Oscillator*, GA Inst. of Tech., 2003 (see, e.g., Exh. D to Barco Motion, at PIC 1600).

13

TPL states that summary judgment of noninfringement based on TPL's inadequate infringement contentions "would be improper because there is 'no requirement that [the patentee] thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart." Opp., p. 16 (*quoting Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881 at *14 (N.D. Cal. 2003) (*Network Caching II*)).   However, TPL has left out the very next sentence of *Network Caching II*: "At this stage, mapping specific elements of defendants' allegedly infringing products onto NCT's claim construction is adequate. *Id*. It is this very "mapping of specific elements" of the *accused products* that TPL has utterly failed to do. The court in *Network Caching II* criticized the patent owner for not "directly examining each of the allegedly infringing products" but instead looking "to indirect evidence whose reliability and actual resemblance to the products in question is questionable. *Id.* at *19.

Factually, all the inadequacies in TPL's infringement contentions, as stated in Barco's motion, are not affected by the arguments in TPL's opposition. Those inadequacies, which are discussed in more detail previously in this brief, include the failure to cite to or rely on evidence of infringement by the accused products, as opposed to reliance on published articles which do not even pertain to the accused articles. TPL's arguments cannot cover up for the reality that the accused chips have never been reverse engineered and they have never been tested, and TPL does not have documentary evidence that would make up for those two fatal shortcomings.

### E.   TPL's Request For Relief Under Rule 56(d) Should Be Denied.

TPL includes in its Opposition, a request for relief under Rule 56(d), formerly Rule 56(f). This request fails procedurally, because a request under Rule 56(d) must be made by separate motion, and cannot be made as a part of an opposition to a motion for summary judgment.

> A party may request that the hearing on a motion for summary judgment be continued to permit that party to conduct further discovery. Fed. R. Civ. P. 56(f). However, a party requesting a continuance pursuant to Rule 56(f) must do so by formal motion: a "request in his memorandum in opposition to the County's motion for summary judgment . . . [i]s plainly inadequate" to justify a continuance. *Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001).

*Sowell v. County of Santa Clara*, 2008 U.S. Dist. LEXIS 101883, *8-9 (N.D. Cal. Dec. 17, 2008).

Moreover, had TPL filed a proper motion for relief under Rule 56(d), it should be denied in any event.  "Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv*., 314 F.3d 995, 1000 (9th Cir. 2002).  That does not apply to TPL, which has had ample time to develop evidence of infringement.

TPL is also not entitled to relief under Rule 56(d) because TPL had not shown diligence in discovery.

> The movant additionally must show that he or she has been diligent in conducting discovery.  *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996).  Failure to comply with the requirements of Rule 56(f) is a proper ground for denying the motion for continuance and proceeding with the motion for summary judgment. *State of California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998) . . . .  The Ninth Circuit has found a lack of diligence when a party . . . had ample opportunity to conduct discovery, but failed to do so.  *Cornwel* [*v. Electra Cent. Credit Union*], 439 F. 3d [1018,] 1026 [(9th Cir. 2006)].

*McCauley v. Stanford Univ. Med. Ctr.*, 2009 U.S. Dist. LEXIS 18748, *37-39 (N.D. Cal. Mar. 11, 2009).  As set forth earlier in this memorandum, TPL should have, but did not, show greater diligence in discovery.  Most notably, TPL should have taken discovery from the most logical place to discover information about the accused chips, from the companies that designed and made the chips.

## III.   CONCLUSION

The court should grant Barco's motion of summary judgment of non-infringement of the '336 patent.

Dated:  February 11, 2011                    BAKER & McKENZIE LLP


                                             By:  s/Edward K. Runyan
                                                  Edward K. Runyan
                                                  Attorney for Plaintiff Barco N.V.

BARCO'S REPLY BRIEF ON ITS MOTION FOR SUMMARY JUDGMENT
OF NONINFRINGEMENT ON THE '337 PATENT
CASE NO. C 08-05398 JF

1

## <u>PROOF OF SERVICE</u>

2

3

4

I, Edward K. Runyan, declare I reside in the State of Illinois, over the age of eighteen years, and not a party to the within action; my business address is Baker & McKenzie LLP, 130 East Randolph Drive, Chicago, IL  60601.  On February 11, 2011, the following documents were served:

5

6

**1.   BARCO'S REPLY BRIEF ON ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT ON THE '336 PATENT**

7

by transmittal via email to the persons listed below:

8

9

Charles T. Hoge
choge@knlh.com
Counsel for Patriot Scientific Corp.

10

11

I declare under penalty of perjury under the laws of the State of Illinois that the above is true

12

and correct.

13

Executed on February 11, 2011, at Chicago, Illinois.

14

15

   s/ Edward K. Runyan       

16

17

18

19

20

21

22

23

24

25

26

27

28