**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **BARCO N.V., a Belgian corporation**<br><br>**Plaintiff,**<br><br>v.<br><br>**TECHNOLOGY PROPERTIES LTD.,**<br><br>**PATRIOT SCIENTIFIC CORP., and**<br><br>**ALLIACENSE LTD.,**<br><br>**Defendants.** | **Case No. C 08 05398 JF/HRL**<br><br>**DISCOVERY DISPUTE JOINT REPORT #2** |

Issue to be decided: Whether Defendants should be required to amend their Invalidity Contentions to comply with Patent Local Rule (P.L.R. 3-1).

Joint Meeting: July 7, 2011, Denver Int'l Airport, Approx. 5 hours.

Date of Close of Discovery: TBD (Dependent on date of claim construction ruling).

The following lead counsel attest that they have complied with Judge Lloyd's Standing Order re: Civil Discovery Disputes:

| | |
|---|---|
| Dated:  July 19, 2011<br><br>FARELLA BRAUN + MARTEL LLP<br><br>By:/s/_____<br>        John L. Cooper<br><br>Attorneys for Defendants<br>TECHNOLOGY PROPERTIES LIMITED<br>and ALLIACENSE LIMITED | Dated:  July 19, 2011<br><br>BAKER & MCKENZIE LLP<br><br>By:s/ Dan O. Connor<br>        Daniel J. O'Connor<br><br>Attorneys for Plaintiff<br>BARCO, N.V. |

I. **FACTS UNDERLYING THE DISPUTE**

Barco filed this suit for declaratory judgment and noninfringement of TPL's patents in December 2008. There are currently three patents in the case, United States Patent Nos. 5,809,336, 5,440,749, and 5,530,890. Each of these patents is directed to circuitry within microprocessor Integrated Circuits or "chips". As required by this court's Patent Local Rules (P.L.R.s), TPL served Barco with its first Disclosure of Asserted Claims and Infringement Contentions (ICs), accompanied by Claim Charts purporting to show where each limitation of each asserted claim is found within the accused instrumentalities.

**BARCO'S POSITION**

For every asserted claim, TPL's ICs do not comply with P.L.R. 3-1. As an example, for some claims, TPL has relied on publications or "the laws of physics and the state of the art" without showing any relationship of the publications or laws or "state of the art" to any accused products for "support" in its IC claim charts. For other claims, TPL has accused certain chips of infringing but has only provided information relating to different chips for support in its IC charts. In addition, many of TPL's contentions are simply too vague to show "specifically where" the accused instrumentality meets the claim limitation. The deficiencies identified in this Report are not meant to be an exhaustive list. Barco does not believe it can sufficiently address <u>all</u> of the deficiencies in TPL's ICs in this Report. The ICs that have been identified in this Report illustrate the need for amended ICs that would comply with P.L.R. 3-1. TPL cites *Network Caching Tech*. for the proposition that marketing materials, white papers, etc. can adequately support ICs. This misses the point, since in *Network Caching* there was no dispute over whether the white papers, etc. pertained to the accused products. TPL's ICs fail because they rely on white papers, etc. that *have no relationship to the accused products*.

TPL also argues that it is too late for Barco to complain about TPL's ICs, an argument it made rather than responding substantively to Barco's position at the joint meeting. When TPL raised this issue in the meeting, Barco's counsel asked if TPL had any authority for this position: TPL had none, and does not cite any now. This case was stayed during reexamination, and since the stay was lifted it has not moved rapidly: as recently as this May the Court stated that "[a]fter nearly three

years of litigation, this case still is in its early stages." Order, D.I. 286 (May 13, 2011). Further, because all the patents have been reexamined and had their claims amended, this court has allowed TPL's ICs to be amended. The IC for the '749 patent was amended on June 3, 2011 and the IC for the '890 patent was amended on May 17, 2011.

### A. The '336 Patent

All the asserted claims of the '336 patent expressly require "a microprocessor system" that includes "a central processing unit". TPL has accused a "field-programmable gate array" ("FPGA") chip called the Xilinx Virtex-5, of infringing. Barco has pointed out to TPL that, although some Virtex-5 chips include on-board microprocessors, the one Barco uses <u>does not</u>. TPL's ICs are deficient in this respect because they only contain the unsupported statement that "the device contains the Xilinx Virtex-5 microprocessor. This microprocessor is a monolithic integrated circuit." Ex. A, PIC1637. TPL does not even allege that the purported "microprocessor" includes a central processing unit. *Id.*

All the asserted claims of the '336 patent also require "an entire oscillator" or "entire ring oscillator variable speed system clock"[1]. For every such term and every accused product, TPL has simply alleged the following statement or a similar statement: "Note: The presence of a PLL *indicates the presence* of a ring oscillator, either a voltage controlled oscillator ('VCO') or current controlled oscillator ('ICO')"[2]. Telling the court that one thing *indicates the presence* of another does not "show specifically where" these limitations are "found within each Accused Instrumentality" as required by P.L.R. 3-1(c). *Bender v. Maxim Integrated Products*, 2010 U.S. Dist. LEXIS 32115, *5 (N.D. Cal. 2010) ("Plaintiff's claim charts do not actually specify the location of each element within the accused product. Rather, the court is asked to assume that certain elements of the patent are present in the accused product.").[3]

---

[1] In some cases, the exact language of the claim may vary slightly.
[2] For a few examples, s*ee* Ex. A, PIC1599, PIC1604, PIC1610, PIC1612, PIC 1617, PIC1678, PIC1683, PIC1689, PIC1691, PIC1696, PIC1701, PIC1707, PIC1709, PIC1719, PIC1724, PIC1730, PIC1733, PIC1737, PIC1743, PIC1748, PIC1751, PIC1760, PIC1767.
[3] For one of the charts, TPL relies on "industry best practices and other commercial realities" to "show" that accused products have the claimed "entire ring oscillator." For a few examples, see Ex. A PIC1638, PIC1643, PIC1651, PIC1656.

In addition to vague allegations that ask the court to assume elements are present, TPL's ICs also rely on published articles and chips other than the accused chips to allegedly show where the claim elements are found within the accused instrumentalities. In each such case, TPL does not and cannot show any relationship between the actual accused products and the material referenced. The table below charts the claim elements, where an example from the ICs can be found, and an explanation of the deficiency regarding the element. In most cases, the deficiency noted is identical for all the accused products and asserted claims, and is accordingly repeated many times throughout TPL's claim charts.

| ACCUSED CHIP OR CLAIM ELEMENT | EXAMPLE IN INFRINGEMENT CONTENTIONS | EXPLANATION OF DEFICIENCY |
|---|---|---|
| "constructed of the same process technology with corresponding manufacturing variations". | Exh A-1, . PIC1599. | Reliance on a published article by "Zuchowski" with no connection to any accused products. |
| The oscillator speed and central processing unit frequency capability vary together.[4] | Exh. A-1, PIC1600. | Published article by Sundaresan, Fetzer, the "laws of physics and the state of the art . . ." with no connection to any accused products. |
| An on-chip input/output interface. | Exh. A-1, PIC1601. | Photograph showing the outside of the accused chip, which cannot show specifically where an on-chip interface inside the chip package is. |
| DDP 3020 Chip. | Exh. A-2, PIC1678. | Datasheet of CDCDLP223, with no connection to any accused products. |
| "second clock". | Exh. A-3, PIC1681. | Datasheet of CDCDLP223, with no connection to any accused products. |
| DDP1011 Chip | Exh. A-8, PIC1927 | Reliance on a Texas Inst. presentation concerning the DDP1000 chip, Datasheet of CDCDLP223, with no connection to the accused products shown. |
| TTP4398A0 Chip. | Exh. A-6, PIC1813-15, alleging the chip has an ARM7 core. | Reliance on a statement in a white paper (itself unrelated to the accused chip) that "A typical HDD has a dual ARM MPU." Again, there is no connection shown to any accused products. |

### B. The '749 and the '890 Patents

---

[4] The actual claim language, but not the meaning, varies somewhat among the asserted claims.

TPL has accused five Barco products of infringing claims 1, 43, 44, 45, 47, 54, and 55 of the '749 patent.  While TPL has served a separate IC for each of the five products, all of the ICs for the '749 patent are the same where they purport to show where the accused products have the claimed elements.  In this regard, comments on the deficiencies of any one ICs for the '749 patent are applicable to all of the ICs.

Similarly, TPL has accused the same five products of infringing claims 11, 12, 13, 17, and 19 of the '890 patent.  While TPL has served a separate IC for each of the five products, all of the ICs for the '890 patent are exactly the same.  In this regard, comments on the deficiencies of any one ICs for the '890 patent are applicable to all of the ICs.  The ICs for the '749 and '890 patents, like the ICs for the '336 patent, are too vague to show "specifically where" the accused instrumentality meets the claim limitation.  The table below shows where the ICs are too vague to show where the accused product meets the claim elements, or otherwise fail to comply with P.L.R. 3-1.

| Deficiencies of TPL's Infringement Contentions  - '749 and '890 patents | | |
|---|---|---|
| **ACCUSED CHIP OR ELEMENT(s)** | **EXAMPLE IN ICs** | **EXPLANATION OF DEFICIENCY** |
| Texas Instrument (TI) DDP 3020 Chip. | Ex. B-2, PIC10453; Ex. C-2, PIC9325 | ICs do not establish that Barco products contain this TI chip. ICs cite to TI materials.  Barco webpage does not identify the TI Chip being used. |
| | Ex. B-2, PIC10454; Ex. C-2, PIC9326 | Image of TI chip is provided from a generic website (www.cin4home.de). No showing or connection that this TI chip is actually used in the Barco products. |
| microprocessor includes an instruction register[5] | Ex. B-3, PIC10482, Ex. C-2, PIC9332 | No showing of an instruction register and where it is located.  Charts highlight (by using a box around) a dotted line, which is not an instruction register. |
| a ring oscillator variable speed system clock connected to said central processing unit integrated circuit[1] | Ex. B-2, PIC10468; Ex. B-3, PIC10490 Ex. B-4, PIC10512 Ex. C-2, PIC9345; Ex. C-3, PIC9373; Ex. C-4, PIC9401 | ICs cite to CDCDLP223 datasheet to "show" that the accused projectors have a ring counter variable speed system clock.  TPL is accusing Barco of infringing by the use of a DDP3020 not a CDCDLP223. The ICs do not show any relationship between the two. |
| connections to the ALU[5] | Ex. B-2, PIC10458-10459; Ex. C-2, PIC9328-9329 | ICs merely repeat claim language and asks Barco and the Court to assume that the claimed limitations are present in a block diagram of an ARM publication.  ICs do not show a first push-down stack, or that it is connected to an ALU, do not show where "any means for storing top-item is," nor where it is "connected to a first input" of the ALU. |

---

[5] The actual claim language, but not the meaning, varies somewhat among the asserted claims.

| | | |
|---|---|---|
| | | The ICs do not show how or where the claimed elements connect to the ALU. |
| "memory external of said central processing unit integrated circuit" (only for the '749) | Ex. B-2, PIC1045-10456; Ex. B-3, PIC10477-10478 | ICs cite to a generic Texas Instruments website that does not refer to the accused chip. No showing that Barco products contain a "memory external" of CPU. |
| bus connecting said CPU integrated circuit to external memory (only for the '749) | Ex. B-2, PIC10457; Ex. B-3, PIC10479; Ex. B-5, PIC10523 | No showing that any bus connects CPU to memory, external or internal. ICs show CPU connected to system controller. |
| "supplying the multiple sequential instructions in parallel to said instruction register during the same memory cycle." (only for the '749) | Ex. B-2, PIC10460-10461;Ex.B-3, PIC10482-10483; Ex. B-4, PIC10504-10505; Ex. B-5, PIC10526-10527. | ICs suggest the exact opposite. Highlighted text shows that either one of two instructions is supplied – "…fetch draws either one 32-bit ARM instruction or two 16-bit Thumb instructions." Nothing is said about instructions supplied in parallel. |
| direct memory access central processing unit providing inputs to said memory controller (only for the '890 patent) | Ex C-2, PIC9337; Ex. C-3, PIC9356; Ex. C-4, PIC9393; Ex. C-5, PIC9412 | ICs cite to a white paper. ICs do not show that white paper applies to accused products. White paper does not show that any such controller includes its own separate central processing unit. |
| 1) said internal bus being bidirectionally connected to a stack pointer and 2) return stack pointer (only for '890 patent) | Ex. C-2, PIC9331; Ex. C-3,PIC9359, Ex. C-5, PIC9415 | ICs do not show where a stack pointer is bidirectionally connected to an internal data bus. For the stack pointer, the ICs simply copy a table from an ARM publication that has the words "stack pointer" but no physical structure. |
| said memory controller having an address/data bus and a plurality of control lines for connection to a random access memory (only for '890 patent) | Ex. C-2, PIC9337-9338; Ex. C-3 PIC9365-9366 | ICs rely on web pages that do not show the claimed elements. Further, the web pages have no connection with the accused product (e.g., the "Rambus" web page on PIC9338 does not apply to accused products and ICs do not explain how "Rambus" is related to any of the accused products). |
| "address bits" from a program counter "are a most significant bit portion from the program counter" (only for '749 patent) | Ex. B-3, PIC10486;Ex. B-4, PIC10508; Ex. B-5, PIC10530 | The highlighted language only describes the bottom two bits and does not mean the program counter has address bit, or that, if it does, they are "a most significant bit portion from the program counter." |

**BARCO'S PROPOSAL:** Barco proposes that TPL amend their ICs (without adding new products or new theories to their ICs) and that further technical discovery from Barco be stayed until TPL complies with P.L.R. 3-1.

II.     **TPL'S POSITION**

      **A. Additional Facts Underlying The Dispute.**

In the 2-1/2 years that this case has been pending, Barco has responded to 94 document requests, 18 interrogatories, and allowed two of its experts to be deposed, never once objecting that TPL's infringement contentions (ICs) were insufficient. To the contrary, the ICs were adequate enough for Barco to participate in discovery, file a motion for summary judgment of noninfringement of the '336 patent in December 2010, and brief the construction of 30 disputed claim terms. (*See e.g.*, Dkts. 140, 130, 146; 112, 135, 143). Barco recently identified an additional five claim terms of the newly amended patent claims that require construction. With each and all of these acts, Barco has both waived any objections it could have had to the contentions, and conceded it has ***notice*** of TPL's theories of infringement, which is the purpose of ICs.

As each patent-in-suit emerged from reexamination, TPL provided claim-by-claim, element-by-element ICs for Barco's eleven accused products. In total, TPL has prepared 9,000-plus pages of ICs. These reports show that TPL purchased and disassembled Barco products, analyzed and photographed their internals, and evaluated publicly available product literature, datasheets, and white papers. They incorporate all technical information about the accused products that is practically accessible, and link specific features to the limitations of the patents.

If Barco's participation without objection in crucial aspects of this case were insufficient by itself to reject the relief Barco is now seeking, Judge Fogel's denial of Barco's summary judgment Motion further supports TPL's position. Barco argued in its Motion that "TPL's infringement contentions with respect to the '336 Patent do not state how the accused products meet the asserted claim limitations." (Dkt. 168 at 2). Judge Fogel rejected this attack on TPL's ICs, and granted TPL's Rule 56(d) request for discovery, stating that "any future motion for summary judgment will need to address additional evidence obtained in discovery." *Id.* at 6.

Thus, TPL engaged in discovery with Barco and its chip suppliers for the detailed technical information, including source code, that is exclusively within their possession. Only when TPL told Barco it would move to compel production of Barco's technical documents and emails did Barco demand TPL amend its infringement contentions to provide greater specificity.

### B.     Barco Has Waived Any Objections That The Contentions Are Inadequate.

Barco's failure to object previously based on TPL's ICs demonstrates (1) that the ICs were then—and now—sufficient, and (2) that it is not entitled to now seek a "stay" of technical discovery having waived this belated objection.  *See Peskoff v. Faber,* 244 F.R.D. 54, 64 (D.D.C. 2007) (failure to state objections to the production of documents in a timely manner constitutes a waiver).

### C.     TPL's Infringement Contentions Are Sufficient.

TPL's ICs set forth "particular theories of infringement with sufficient specificity to provide defendants' with notice of infringement beyond that which is provided by the mere language of the patents themselves."  *Network Caching Tech., LLC v. Novell, Inc.*, 2003 U.S. Dist. LEXIS 9881, *13 (N.D. Cal. Mar. 21, 2003).  "PICs are not meant to provide a forum for litigation of the substantive issues; they are merely designed to streamline the discovery process."  *Id.*  Infringement contentions need only "reasonably disclose all of the information [the patentee] presently possesses."  *FusionArc, Inc. v. Solidus Networks, Inc.*, 2007 U.S. Dist. LEXIS 28970, *2 (N.D. Cal. Apr. 5, 2007) (denying motion to strike or to compel amendment where contentions described accused technology in "broad terms," and relied on marketing materials).  They "provide structure to discovery and enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute."  *Id.* at * 6 (int. cit. omitted).

TPL's ICs fulfill the "notice" function by showing how particular features of Barco's products satisfy various limitations of the claims.  The ICs include pincite references to datasheets, ARM manuals, other publicly available documents *and actual teardowns of Barco products*:

| Claim Elements | Adequacy of TPL's IC Disclosure |
|---|---|
| *On-chip oscillator connected to a CPU* | In one example, TPL identifies the PLL connected to the AMCC PowerPC CPU as the location of the ring oscillator based on a technical datasheet.  (Ex. A-7, PIC00001875.)  Such contentions provide "notice of infringement beyond that which is provided by the mere language of the patents themselves." *Network Caching Tech.*,  2003 U.S. Dist. LEXIS 9881, *13. |
| *Input/output interface* | TPL identifies the Cortina chip as being connected to a PowerPC chip via input/output interfaces that are called out using graphical markups on photographs taken from an actual teardown.  (Ex. A-7, PIC00001877; *see also*, PIC00001827.) |
| *Second Clock* | TPL identifies the Rx and Tx clocks from the Cortina chip that are connected to the AMCC microprocessor, as the second clock.  (Ex. A-7, PIC00001880.)  In another, TPL marks up a teardown to demonstrate the presence of the SATA interface and the second clock associated with that SATA interface is confirmed by a technical paper. (Ex. A-6, PIC00001820-21.) |

| | |
|---|---|
| *Virtex-5 CPUs* | TPL identified both a PowerPC processor and, in the alternative, the DSP48E slices on the Virtex-5 based on XiLinx datasheets as indicating CPUs within microprocessors.  (Ex. A-1, PIC00001598.) |
| *External Memory* | TI's DLP documentation shows that DLP chips require external memory and the DDP 3020 Processor Brief shows that the DDP3020 chip in the accused device is part of the DLP product family.  (Ex. B-2, PIC00010453, 56.) |
| *Chips within the same Texas Instruments family* | For some chips in the accused products, TPL has cited to technical reference material for related chips.  For example, the ICs regarding the Texas Instruments DDP3020, and DDP1011 chips reference technical information regarding Texas Instruments' related CDCDLP223 and DDP1000 chips.  As explained by Dr. Oklobdzija, TPL's expert, relying on literature for chips in the same family to explain basic implementation features is appropriate as "[p]roducts within the same family generally have the same structure except for possibly some minor functional enhancements" and "[i]t is customary that products in the same family have the same numbering designation where the newer product has a higher number."  (Dkt. 137 at ¶¶ 27.) |
| *CPU Features* | TPL reviewed and made multiple pincites to documentation provided by the designers of ARM processor cores, which confirm the presence of the various required elements, such as push down stacks, instruction registers, address/memory busses, etc.  (Ex. B-2, PIC00010457-61.) |

Contrary to Barco's assertion that TPL cites materials that have "no relationship to the accused products," TPL's teardowns and chip documents pertain directly to Barco products,  Barco's products actually have ARM cores, and the concepts in TPL's published articles apply directly to these chips. This level of detail provides notice of infringement that exceeds what has been held satisfactory in other cases.  *Network Caching Tech.*, 2003 U.S. Dist. LEXIS 9881, *14 (contentions based on "marketing materials, white papers and other publicly available product documentation" are adequate); *FusionArc*, 2007 U.S. Dist. LEXIS 28970, *4 (no reverse engineering required).[6]

Whether Barco agrees with TPL's theories is a separate matter from whether it has notice.  For example, by arguing there is no PowerPC processor on the Virtex-5 chip (*supra* pp. 1-2), Barco is making a factual assertion that goes to the merits; however, in doing so it concedes it has notice of TPL's *theory* of infringement.  Tellingly, neither at the in-person meeting of counsel and nowhere in its portion of this Report does Barco deny having adequate notice of TPL's theories.

The ICs have also fulfilled the *purpose* of the notice requirement – they have "move[d] [the parties] efficiently toward claim construction" (*id.* at * 6) and permitted two early summary judgment motions.  (Dkt. 168 (Barco SJ Motion); Case No. 5:08-cv-0882 JF, Dkt. 293 (HTC SJ

---

[6] Barco's assertions that the ICs for the five products accused of infringing the '749 and '890 patents are all the same,  is misleading.  While there is invariably some overlap because the infringing technology is similarly implemented in the various Barco products, TPL's contentions are customized for each product.

Motion).)  As enabling such briefing is the quintessential purpose of ICs, their sufficiency is manifest.

### D. Barco's Criticisms Seek Detail That Is Neither Required Nor Possible.

Patent Local Rule 3-1 "does not require [a patentee] to produce evidence of infringement" or provide "excruciating detail;" nor must the patentee "thoroughly present and successfully defend its theories of infringement in the confines of a PIC chart." *Network Caching Tech.*, 2003 U.S. Dist. LEXIS 9881, *13-14.  TPL's expert Dr. Oklobdzija previously explained that the type of circuit level detail that Barco would prefer is as a practical matter impossible given that "[t]he minimal transistor feature size of the fabrication technology today is in the order of hundreds of angstroms, making it far below the wavelength of the visible light (even X-rays)."  (Dkt. 137, at 35.)   The case law recognizes that in the high-tech context such detailed proof is often uniquely in the possession of accused infringers and third parties and requires discovery.  *See Network Caching Tech., LLC v. Novell, Inc.*, 67 U.S.P.Q.2D (BNA), 1034 (N.D. Cal. 2002) ("the only way to pinpoint the specific routine is to analyze the source code, which is solely in the defendants' possession."); *see also, American Video Graphics, L.P. v. Electronic Arts, Inc.,* 359 F.Supp.2d 558, 560 (E.D. Tex. 2005) (finding preliminary contentions sufficient where "defendants' sole possession of the information plaintiffs need" precluded greater specificity).  That is why Patent Local Rule 3-4(a) mandates that the ***accused infringer*** produce "[s]ource code, specifications, and schematics" for the accused instrumentalities.  TPL's ICs "reasonably disclose all of the information it presently possesses," *FusionArc,* 2007 U.S. Dist. LEXIS 28970, *2, and are accordingly adequate.

Barco has already tried identical arguments to the ones it raises here with Judge Fogel in a summary judgment motion, namely that TPL's ICs contain insufficient technical detail:

| Barco's SJ Motion | This Joint Report for Amended ICs |
|---|---|
| Barco argued that TPLs ICs "refer to irrelevant articles, white papers, and 'principles of physics,'" and rely on "Zuchowski", "Sundaresan" and "Fetzer." (Dkt. 112 at 13-14) | "TPL has relied on publications or 'the laws of physics and the state of the art'," (p.1) "Zuchowski", "Sundaresan" and "Fetzer." (*supra*, p.3) |
| Barco argued "TPL is not even sure there is a ring oscillator, [and] it cannot say where it is (as required by the Patent Local Rules)" (*Id.* at 15) | "TPL has simply alleged the following statement or a similar statement: "Note: The presence of a PLL *indicates the presence* of a ring oscillator…" (*supra*, p. 2) |
| Barco argued that TPLs ICs "accuse one | TPL has accused certain chips of infringing but |

| particular chip of infringing, but rely on technical information from a different chip or product." (*Id.* at 20) | has only provided information relating to different chips for support in its IC charts. (*supra*, p.1) |

Confronted with the same litany of complaints Barco presents now, Judge Fogel denied Barco's motion and granted TPL's request for Rule 56(d) discovery. The clear implication of Judge Fogel's order was that Barco's focus should turn to engaging in discovery to move this case forward. Nevertheless, Barco now seeks a "stay" of technical discovery that, if granted, would undermine Judge Fogel and whitewash Barco's own discovery obstructionism.

Barco ignores the legal standard for ICs, which is simply to provide notice, and instead tries to compare this case to *Bender v. Maxim Int. Prods*, 2010 U.S. Dist. LEXIS 32115, *6 (N.D. Cal. 2010), a case that is readily distinguishable. Bender sued a spate of 24 defendants who swiftly moved to compel more detailed ICs because Bender's initial contentions could not have been more bare—they merely repeated the contention over and over for each claim limitation that "[t]his element is located on the integrated circuit contained in the product," with no technical drawings or analysis. *See Bender v. Maxim Int. Products*, Case 3:09-cv-01152-SI, Dkt. 48-1, February 5, 2010. Without Bender amending, those cases should have legitimately been blocked. Here, by contrast, Barco sued TPL, engaged in discovery, filed summary judgment, and briefed claim construction, and now 2-1/2 years later, without even making a proper production under P.L.R. 3-4, seeks amended ICs. This gamesmanship should be denied. TPL's contentions, unlike Bender's, pincite key technical features of the accused products based on teardown reports and detailed technical documents, thereby providing notice well beyond the claim language itself. Indeed, the *Bender* contentions and inapposite procedural posture serve to further confirm the adequacy of TPL's ICs.

### E. TPL's Final Proposal.

There is no justification to now stay Barco's discovery obligations after Barco waived any objection it had to TPL's infringement contentions by participating in discovery and extensive substantive briefing. TPL's infringement contentions are adequate, and Barco's actions speak louder than its words that Barco has sufficient notice of TPL's infringement theories. The relief Barco requests should be denied in its entirety.