[See Signature Page for Information on Counsel for Plaintiffs]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ACER, INC., ACER AMERICA CORPORATION and GATEWAY, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, and ALLIACENSE LIMITED,<br><br>Defendants. | Case No. 5:08-cv-00877 PSG<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF CERTAIN ASPECTS OF FIRST CLAIM CONSTRUCTION ORDER**<br><br>**[RELATED CASES]**<br><br>Date:     November 30, 2012<br>Time:    10:00 a.m.<br>Place:   Courtroom 5, 4th Floor<br>Judge:   Paul Singh Grewal |
| HTC CORPORATION, HTC AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, and ALLIACENSE LIMITED,<br><br>Defendants. | Case No. 5:08-cv-00882 PSG |
| BARCO N.V., a Belgian corporation,<br><br>Plaintiff,<br><br>v.<br><br>TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, ALLIACENSE LIMITED,<br><br>Defendants. | Case No. 5:08-cv-05398 PSG |

## I.     INTRODUCTION

Technology Properties Ltd., Patriot Scientific Corp. and Alliacense Ltd.'s (collectively "Defendants" or "TPL") motion for reconsideration relies on a restriction requirement imposed during the prosecution of the parent application of U.S. Patent No. 5,530,890 (the "'890 patent") (Chen Decl. Ex. 1) that is irrelevant to the construction of the phrase "separate direct memory access central processing unit" ("DMA CPU").  The case law is clear that this restriction requirement is afforded little, if any, weight in claim construction.  And despite TPL's claim that it only recently uncovered this restriction requirement, it has been in the prosecution record for more than two decades and has been relied upon by TPL during at least two rounds of claim construction briefing since 2007.[1]  TPL has provided no basis for the Court to reconsider Judge Ware's construction of "DMA CPU."

The primary dispute regarding the construction of DMA CPU was whether the phrase required a central processing unit that <u>fetches and executes instructions</u> for performing direct memory access.  TPL argued that such requirement should not be incorporated into the construction and that "DMA CPU" was broad enough to cover DMA controllers, which do not fetch and execute instructions.  Judge Ware rejected TPL's arguments and found that "a person of ordinary skill in the art would understand 'CPU' to mean a unit of a computing system that fetches, decodes, and executes programmed instructions," and that "the inventors use the term CPU consistently with its plain and ordinary meaning."  (First Claim Construction Order at 12:6–9 ("Order"), Dkt. No. 336, No. 08-cv-00877-PSG ("*Acer* Action").)  Judge Ware further observed that the "written description criticizes '[c]onventional microprocessors' that use 'DMA controllers' because 'some processing by the main central processing unit (CPU) of the microprocessor is

---

[1] For example, TPL stated in its claim construction brief filed on March 19, 2007 in *TPL v. Fujitsu et al.*, No. 05-cv-00494 (E.D. Tex.), that "[t]he patent examiner issued a restriction requirement finding that the original application contained ten separate inventions and seven patents, including the patents-in-suit, ultimately issued." (Chen Decl. Ex. 3 at 1.) TPL similarly argued in the present action that the common specification disclosed "so many [various inventions] that the PTO required the applicants to divide the original application into 10 separate applications." (TPL Reply Brief at 7, Dkt. No. 322, *Acer* Action.) TPL's prior knowledge of the restriction requirement cited in its motion for reconsideration undermines its attempt to portray it as a recently discovered "material difference in fact."

Case Nos. 5:08-cv-00877, 5:08-cv-00882, 5:08-cv-05398     -2-     OPPOSITION TO TPL'S MOTION FOR RECONSIDERATION

1  required.'"  (*Id.* at 12:10–13 (quoting '890, 1:52–58).)  The Court accordingly construed "separate
2  DMA CPU" to mean "a central processing unit that accesses memory and that <u>fetches and
3  executes instructions directly, separately, and independently</u> of the main central processing unit."
4  (*Id.* at 13:3–4.)  Judge Ware's conclusion that a DMA CPU fetches and executes instructions is not
5  only consistent with the plain and ordinary meaning of "CPU," but also fully supported by the
6  '890 specification.  ('890, 8:22–24 ("The DMA CPU 72 controls itself and has the ability to <u>fetch
7  and execute instructions</u>.") (emphasis added).)

    Nothing in the restriction requirement cited in TPL's motion undermines or even addresses Judge Ware's reasoning.  Judge Ware properly rejected TPL's attempt to remove "CPU" from the language of the claims, and nothing in the restriction requirement warrants reconsideration.

## II.  ARGUMENT

### A.  The Restriction Requirement Is Irrelevant to the Construction of DMA CPU

The Patent Office issued a restriction requirement on August 31, 1992 in the parent application of the '890 patent that later issued as U.S. Patent No. 5,440,749 (the "'749 patent") (Chen Decl. Ex. 2). The Patent Office divided the proposed claims into 10 groups (Group I through Group X).  As shown below, the restriction requirement has no bearing on the meaning of DMA CPU.

Courts have repeatedly given restriction requirements little to no weight in claim construction when, as here, they are unaccompanied by a substantive discussion of the meaning of the disputed claim language.  *See, e.g.*, *Honeywell Int'l, Inc. v. ITT Industries, Inc.*, 452 F.3d 1312, 1319 (Fed. Cir. 2006) (assigning little weight to restriction requirement where examiner did not construe the disputed claim term); *Rambus Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 962 (N.D. Cal. 2008) (Whyte, J.) ("In laying out the details of the original restriction requirement, the court recognizes its limited evidentiary significance."); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, No. C 97-CV-4203 CRB, 2000 WL 34204509, at *15 (N.D. Cal. Feb. 28, 2000) ("A restriction requirement is not a rejection and it cannot be used to controvert the plain language of the claim.").

1    The Patent Office's restriction requirement did not make any reference to the DMA CPU phrase recited in the '890 patent.  TPL cannot identify a single statement by either the Examiner or the applicants regarding the restriction requirement that even references the DMA CPU, let alone sheds light on its proper claim construction.

TPL's argument relies on a simple yet irremediably flawed premise—that because Group III recited a DMA "processing unit" that fetches and executes instructions, that subject matter cannot be within the scope of the claims in Group VIII or any of the other Groups.  TPL cites no authority to support this theory, and Plaintiffs are aware of no court that has ever given such weight to a restriction requirement.  A restriction requirement merely indicates that "two or more independent and distinct inventions are claimed in one application."  35 U.S.C. § 121 (2012).  Because the scope of an invention is determined by its claims, with all of their limitations, two inventions can recite common features and elements yet still qualify as "independent and distinct inventions" and justify the issuance of a restriction requirement.

There are several instances of this occurring throughout the restriction requirement.  For example, the claims in Group VIII that issued as the '890 patent recited a CPU that comprised, among other things, an "**arithmetic logic unit**" and a "**first push down stack**."  (Restriction Requirement (8/31/1992) (Chen Decl. Ex. 6) at ¶ 22 (defining Group VIII as including claim 48); List of Claims (8/3/1989) (Chen Decl. Ex. 4), claim 48 (emphasis added).)  But the claims in Group VI, directed to "a CPU having stacks and pointers," recite the same limitations  (Restriction Requirement (8/31/1992) (Chen Decl. Ex. 6) at ¶ 20 (defining Group VI as including claim 22); Amended List of claims (6/8/1992) (Chen Decl. Ex. 5), claim 22  (reciting a CPU with an "arithmetic logic unit" and a "push down stack")), and so do the claims in Group II (Restriction Requirement (8/31/1992) (Chen Decl. Ex. 6) at ¶ 16 (defining Group II as including claim 6); Amended List of Claims (6/8/1992) (Chen Decl. Ex. 5), claim 6 (reciting an "arithmetic logic unit" and a "first push down stack").)  As another example, the claims in Group VIII recited an internal data bus "**bidirectionally connected to a loop counter**" that is connected to a "**decrementer**." (Restriction Requirement (8/31/1992) (Chen Decl. Ex. 6) at ¶ 22 (defining Group VIII as including

1   claim 48); List of Claims (8/3/1989) (Chen Decl. Ex. 4), claim 48 (emphasis added).) Group II,

2   however, contains claims that recite this same requirement. (Restriction Requirement (8/31/1992)

3   (Chen Decl. Ex. 6) at ¶ 16 (defining Group II as including claim 10); Amended List of Claims

4   (6/8/1992) (Chen Decl. Ex. 5), claim 10 (reciting "a loop counter connected to receive a decrement

5   control signal . . .").)

6       TPL's theory would lead to the absurd result that express limitations in the claims of the

7   '890 patent could be erased simply because the subject matter covered by those limitations is

8   recited in claims within another group. The fact that Group III recited a DMA "processing unit"

9   that fetches and executes instructions does not prevent this subject matter from being covered by

10  the longer and more detailed claims of Group VIII that issued as the '890 patent.

11      TPL's argument also ignores that the claim language in Group III is not the same as the

12  language of Group VIII. Group III merely recited a DMA "processing unit," not the DMA

13  "**central** processing unit" recited in Group VIII. Judge Ware relied heavily on the phrase "central

14  processing unit," or "CPU," observing that "a person of ordinary skill in the art would understand

15  'CPU' to mean a unit of a computing system that fetches, decodes, and executes programmed

16  instructions." (Order at 12:6–9.) Because Group III never recited a "DMA CPU," it can provide

17  no basis for TPL's argument that "CPU" should be eviscerated from the term "DMA CPU" recited

18  in the claims of the '890 patent.

19      This case vividly illustrates the reason courts give so little evidentiary significance to

20  restriction requirements. As one court observed, "Restriction requirements do not constitute a

21  substantive claim construction doctrine. Instead, restriction practice is a procedural tool that may

22  be implemented when the PTO finds that an applicant has two distinctly patentable inventions in

23  the same application." *Michaels of Oregon Co. v. Clean Gun, LLC*, No. Civ-01-1158, 2002 WL

24  31496414, at *8 (D. Or. July 9, 2002). A restriction requirement is merely an administrative tool

25  of the Patent Office to make the examination process more organized and to allow the Patent

26  Office "to obtain additional filing and maintenance fee revenue that would be lost if an applicant

27  were always permitted to obtain a patent covering any number of distinct inventions." *Id.*; *see also*

28

1 *Amersham Pharmacia Biotech*, 2000 WL 34204509, at *16.

2    In this case, the most that can be inferred from the restriction requirement is an attempt to
3 force the applicants to break up their claims into 10 additional divisional applications (and to
4 secure the additional filing fees associated with them).  The restriction requirement did not convert
5 the overlapping subject matter in the various claim groups into mutually exclusive sets of claims,
6 and has no bearing whatsoever on the meaning of the "DMA CPU" claimed in the '890 patent.

7    **B.    The '890 Reexamination Provides No Basis for Reconsideration**

8    TPL also attempts to rely on an *ex parte* reexamination request that was filed by an
9 anonymous third party who challenged the '890 patent.[2]  (Reexamination Request at 9
10 (01/16/2009) (Chen Decl. Ex. 7).)  TPL claims that the reexamination requester mapped the DMA
11 CPU recited in the '890 patent against a conventional DMA controller.  TPL cites no case law,
12 however, suggesting that statements of an anonymous third party reexamination requester—which
13 were not adopted by either the patent owner or the Examiner—should carry any weight in claim
14 construction.

15    TPL has maintained that the conventional DMA controller of the prior art qualifies as the
16 DMA CPU recited in the '890 patent.  It is apparent from the reexamination request that the third
17 party's invalidity mapping was heavily influenced by the way in which TPL was applying its
18 claims.  The third party requester stated it had received claim charts from TPL in connection with
19 licensing demands that mapped the requester's allegedly infringing processing systems to the '890
20 patent, and observed that "scores of substantially similar claim charts have been sent to various
21 companies throughout the semiconductor and other industries."  (*Id.* at 9.)  The requester asked the
22 Patent Office to request copies of them from TPL and further argued that TPL's mapping should
23 be used against it for purposes of construing the claims in reexamination.[3]  (*Id.* at 9–10.)  The third
24 party requester's mapping was likely an attempt to force TPL to confront invalidity in the face of
25 its infringement allegations, not agreement with TPL's positions.  *See Brown v. 3M*, 265 F.3d

---

[2]  None of the Plaintiffs in this action were involved in that reexamination.
[3]  The requester stated that the infringement charts provided by TPL were stamped "Confidential" and thus could not be provided with the request.  (*Id.* at 9.)  There is no indication that the Patent Office ever asked TPL to provide any claim charts as suggested by the third party requester.

1349, 1352–53 (Fed. Cir. 2001) ("The principle of law is concisely embodied in the truism that: 'That which infringes if later anticipates if earlier.'") (citations omitted).  In any event, the third party requester's statements regarding the "DMA CPU" were not adopted by either the Examiner or TPL, and thus should carry no weight in claim construction.

TPL does not identify any of its *own* statements in the reexamination that supposedly support its position on the meaning of "DMA CPU."  TPL merely asserts that "[a]t no time did the patent owner ever try to distinguish the prior art" on the basis of the DMA CPU.  (Defs.' Motion for Reconsideration at 6, Dkt. No. 356, *Acer* Action.)  But inaction by the patent owner falls far short of specific statements regarding the scope of its claims.  Moreover, as explained above, TPL's decision to avoid distinguishing prior art that disclosed DMA controllers was presumably motivated by its desire to not undermine its infringement theory, which depends on mapping the DMA CPU to DMA controllers.  TPL's litigation-inspired decision to say nothing about DMA CPU provides no evidence relevant to claim construction.

### III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny TPL's Motion for Reconsideration of Certain Aspects of First Claim Construction Order.

| | |
|---|---|
| | Respectfully submitted, |
| Dated:  November 2, 2012 | K&L GATES LLP |
| | By: __/s/ *Timothy Walker*__<br>Timothy P. Walker, Esq.<br>Timothy.walker@klgates.com<br>Howard Chen, Esq.<br>Howard.chen@klgates.com<br>Harold H. Davis, Jr., Esq.<br>Harold.davis@klgates.com<br>Jas Dhillon, Esq.<br>Jas.dhillon@klgate.com<br>Jeffrey M. Ratinoff<br>Jeffrey.ratinoff@klgates.com<br>K&L Gates LLP<br>Four Embarcadero Center, Suite 1200<br>San Francisco, CA 94111<br>Phone:  (415) 882-8200<br>Fax:  (415) 882-8220 |
| | ***Attorneys for Acer, Inc., Acer America Corp. and Gateway, Inc.*** |
| Dated:  November 2, 2012 | COOLEY LLP |
| | By:  __/s/  *Kyle D. Chen*__<br>Kyle D. Chen, Esq.<br>kyle.chen@cooley.com<br>Heidi L. Keefe, Esq.<br>hkeefe@cooley.com<br>Mark R. Weinstein, Esq.<br>mweinstein@cooley.com<br>Cooley LLP<br>3000 El Camino Real<br>Five Palo Alto Square, 4th Floor<br>Palo Alto, California 94306<br>Phone:  (650) 843-5000<br>Fax:  (650) 857-0663 |
| | ***Attorneys for HTC Corporation and HTC America, Inc.*** |

Dated:  November 2, 2012                         BAKER & MCKENZIE

By: */s/ Edward Runyan*
Edward Runyan, Esq.
Edward.Runyan@bakernet.com
Baker & McKenzie
130 East Randolph Drive
Chicago, IL 60601
Phone: (312) 861-8811
Fax:  (312) 698-2341

***Attorneys for Barco, N.V.***

**ATTESTATION PER GENERAL ORDER 45**

I, Edward Runyan, am the ECF User whose ID and password are being used to file Plaintiffs' Opposition to Defendants' Motion for Reconsideration of Certain Aspects of First Claim Construction Order.  In compliance with General Order 45, X.B., I hereby attest that the counsel listed above have concurred with this filing.

Dated:  November 2, 2012                By:  */s/ Edward Runyan*
                                                      Edward Runyan