1  JAMES C. OTTESON, State Bar No. 157781
   jim@agilityiplaw.com
2  MICHELLE BREIT, State Bar No. 133143
   mbreit@agilityiplaw.com
3  AGILITY IP LAW, LLP
   149 Commonwealth Drive
4  Menlo Park, CA 94025
   Telephone:  (650) 227-4800
5  Facsimile:   (650) 318-3483

6  Attorneys for Defendants
   TECHNOLOGY PROPERTIES LIMITED and
7  ALLIACENSE LIMITED

8  CHARLES T. HOGE, State Bar No. 110696
   choge@knlh.com
9  KIRBY NOONAN LANCE & HOGE
   35 Tenth Avenue
10 San Diego, CA 92101
   Telephone:  (619) 231-8666
11 Facsimile:   (619) 231-9593

12 Attorneys for Defendant
   PATRIOT SCIENTIFIC CORPORATION
13

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ACER, INC., ACER AMERICA CORPORATION and GATEWAY, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION, and ALLIACENSE LIMITED,<br><br>    Defendants. | Case No.  CV08-00877 PSG<br><br>**DEFENDANTS' REPLY SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF**<br><br>Date:      November 30, 2012<br>Judge:    Hon. Paul S. Grewal |

| | |
|---|---|
| HTC CORPORATION and HTC AMERICA, INC., | Case No. CV08-00882 PSG |
| Plaintiffs, | |
| v. | |
| TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION and ALLIACENSE LIMITED, | |
| Defendants. | |
| BARCO, N.V., | Case No. CV08-05398 PSG |
| Plaintiffs, | |
| v. | |
| TECHNOLOGY PROPERTIES LIMITED, PATRIOT SCIENTIFIC CORPORATION and ALLIACENSE LIMITED, | |
| Defendants. | |

# Table of Contents

Table of Contents ........................................................................................................................... iii

Table of Authorities ...................................................................................................................... iv

Table of Abbreviations ................................................................................................................... v

Introduction .................................................................................................................................... 1

Argument ........................................................................................................................................ 2

I.   JUDGE WARE'S INITIAL CONSTRUCTION OF "RING OSCILLATOR" IS
     CORRECT ......................................................................................................................... 2

     A.   Plaintiffs' Efforts to Limit the Claimed "Ring Oscillator" to "Non-
          Controllable" Are Not Supported by the Specification or Prosecution
          History. .................................................................................................................. 2

          1.   In accordance with controlling law, a disavowal must be "clear and
               unmistakable" and must be made by the patentee. ......................................... 2

          2.   Plaintiffs mischaracterize the '336 specification. .......................................... 3

          3.   Plaintiffs mischaracterize the statements in the original prosecution
               history of the '336 patent. ............................................................................... 4

          4.   Plaintiffs mischaracterize the '148 patent reexamination history
               related to Talbot. ............................................................................................. 5

     B.   Talbot Does Not Disclose a Ring Oscillator. .......................................................... 7

II.  JUDGE WARE'S CONSTRUCTION OF "INSTRUCTION REGISTER" IS
     CORRECT ......................................................................................................................... 7

     A.   Plaintiffs' Attempt to Limit the Term "Instruction Register" to Include
          Unclaimed Right-Justified Operands Violates Fundamental Rules of Claim
          Construction. ........................................................................................................... 7

          1.   The independent claims of the '749 Patent do not require operands. ........... 8

          2.   The '749 Patent Discloses Embodiments Where Operands Are Not
               Right Justified. ................................................................................................ 9

Conclusion .................................................................................................................................... 10

1

# Table of Authorities

2 **Cases**

3  *3M Innovative Props. Co. v. Avery Dennison Corp.*,
4     350 F.3d 1365 (Fed. Cir. 2003) .................................................................................................. 3

   *Cordis Corp. v. Medtronic AVE, Inc.*,
5     511 F.3d 1157 (Fed Cir. 2008) ................................................................................................... 2

6  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
      381 F.3d 1111 (Fed. Cir. 2004) .................................................................................................. 3
7
   *Omega Eng'g, Inc. v. Raytek Corp.*,
8     334 F.3d 1314 (Fed. Cir. 2003) ............................................................................................. 2, 6

9  *Salazar v. Procter & Gamble Co.*,
      414 F.3d 1342 (Fed. Cir. 2005) .................................................................................................. 3
10
   *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*,
11    573 F.3d 1290 (Fed. Cir. 2009) .................................................................................................. 3

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Abbreviations

| Abbreviation | Definition |
|---|---|
| '148 patent | U.S. Patent No. 6,598,148, entitled "High Performance Microprocessor Having Variable Speed System Clock," issued July 22, 2003 (attached to the Otteson Decl. as Exhibit CC) |
| '336 patent | U.S. Patent No. 5,809,336, entitled "High Performance Microprocessor Having Variable Speed System Clock," issued September 15, 1998 (attached to the Otteson Decl. as Exhibit DD) |
| '584 patent | U.S. Patent No. 5,784,584, entitled "High Performance Microprocessor Using Instructions that Operate Within Instruction Groups," issued July 21, 1998 |
| '749 patent | U.S. Patent No. 5,440,749, entitled "High Performance, Low Cost Microprocessor Architecture," issued August 8, 1995 (attached to the Otteson Decl. as Exhibit BB) |
| '890 patent | U.S. Patent No. 5,530,890, entitled "High Performance, Low Cost Microprocessor," issued June 25, 1996 (attached to the Otteson Decl. as Exhibit AA) |
| Alliacense | Defendant Alliacense Limited; "TPL" is also used throughout this brief to refer to all three declaratory judgment defendants |
| Boufarah | U.S. Patent No. 5,127,091, entitled "System for Reducing Delay in Instruction Execution by Executing Branch Instructions in Separate Processor While Dispatching Subsequent Instructions to Primary Processor," issued June 30, 1992 |
| Breit Decl. | Declaration of Michelle G. Breit in Support of Defendants' Reply Supplemental Claim Construction Brief |
| Chen Decl. | Declaration of Kyle D. Chen in Support of Plaintiffs' Consolidated [Supplemental] Opening Claim Construction Brief |
| Def. Op'n Brief | Defendants' Opening Supplemental Claim Construction Brief |
| Opp. | Plaintiffs' Consolidated Opening Supplemental Claim Construction Brief |
| Otteson Decl. | Declaration of James C. Otteson in Support of Defendants' Opening Claim Construction Brief for the "Top Ten" Terms |
| Patriot | Defendant Patriot Scientific Corporation; "TPL" is also used throughout this brief to refer to all three declaratory judgment defendants |
| Sheets | U.S. Patent No. 4,670,837, entitled "Electrical System Having Variable-Frequency Clock," issued June 2, 1987 |
| Talbot | U.S. Patent No. 4,689,581, entitled "Integrated Circuit Phase Locked Loop Timing Apparatus," issued August 25, 1987 |
| TPL | Defendant Technology Properties Limited; also collectively declaratory judgment defendants Technology Properties Limited, Patriot Scientific Corporation and Alliacense Limited |

## Introduction

Declaratory judgment defendants TPL, Patriot and Alliacense (collectively "TPL" or "Defendants") jointly submit this reply memorandum in support of Defendants' Opening Supplemental Claim Construction Brief.  Judge Ware, in issuing his First Claim Construction Order on June 12, 2012, asked the parties to address two narrow issues:  (1) whether or not the voltage-controlled oscillator disclosed in Talbot is or is not a ring oscillator; and (2) the meaning of a statement by the examiner in the '749 patent prosecution history related to operands.  TPL thoroughly addressed these issues in its opening brief, demonstrating that (1) the Schmitt Trigger oscillator in Talbot is not a ring oscillator and (2) the '749 patent as issued includes no limitation regarding operands; instead, the examiner's comment relates to claims that issued in a divisional patent, U.S. Patent No. 5,784,584 (the "'584 patent").

Plaintiffs, in their opening brief, veer far from Judge Ware's request and devote much of their efforts to arguing that the term "ring oscillator" should be construed to exclude all voltage control oscillators by importing into the construction a limitation of "non-controllability."  As set forth in detail below, Plaintiffs' argument is based on a **single word** appearing in an interview summary provided by an examiner and not adopted by the patentees.  The purported disavowal has none of the indicia of an unambiguous and unmistakable disavowal by a patentee that could or should be used to drastically limit the scope of numerous patent claims.  And, it is not supported by the specification or any intrinsic evidence.

Plaintiffs also rehash their arguments, rejected by Judge Ware, in an attempt gain importation of an additional limitation into the term "instruction register" that would require that operands (which are not in the claims at issue) contained within the instruction register to be "right-justified."  As TPL demonstrated in its opening brief and explains further below, the examiner's reference to operands in the '749 patent prosecution history relates to claims that ultimately were filed and issued in the '584 patent.  No basis exists to import that unclaimed limitation into claim 1 of the '749 patent and doing so would violate fundament rules of patent law.

# Argument

**I. JUDGE WARE'S INITIAL CONSTRUCTION OF "RING OSCILLATOR" IS CORRECT**

**A. Plaintiffs' Efforts to Limit the Claimed "Ring Oscillator" to "Non-Controllable" Are Not Supported by the Specification or Prosecution History.**

Although Judge Ware requested that the parties provide supplemental briefing on the issue of "whether the voltage-controlled oscillator disclosed in Talbot is or is not a ring oscillator," Plaintiffs spend most of their brief arguing that TPL disavowed all voltage controlled oscillators due to the examiner's inclusion of the single word "non-controllable" in his interview summary in the prosecution history of the '148 patent. Plaintiffs argue that this single word in the prosecution history – <u>provided by the examiner and not adopted by the patentee</u> – and which appears nowhere in the claims, specification or file history save for the examiners' interview summary, should be used to drastically limit the term "ring oscillator" and thereby drastically limit the scope of claims in the '148, '336, '749 and '890 patents (parties agree that "ring counter" of '749 should be construed as "ring oscillator").

Plaintiffs' position is contrary to governing law requiring a disclaimer to be unmistakable and unambiguous. Moreover, plaintiffs' arguments rely on unabashed mischaracterizations of the prosecution file histories and specifications and cannot withstand scrutiny.

**1. In accordance with controlling law, a disavowal must be "clear and unmistakable" and must be made by the patentee.**

As Judge Ware observed in his claim construction Order in this case, before a submission made by a patentee during reexamination can be regarded as a disavowal, the court must find "the allegedly disavowing statement is 'so clear as to show reasonable clarity and deliberateness, and so unmistakable as to show unambiguous evidence of disclaimer.'" Order at 16, quoting *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) (citations omitted). Stated another way, the "disavowal" doctrine only applies where a disavowal is "clear and unmistakable." *See Cordis Corp. v. Medtronic AVE, Inc.*, 511 F.3d 1157, 1177 (Fed Cir. 2008) ("alleged disavowing actions or statements made during prosecution [must] be both clear and unmistakable").

Second – and very important here – the alleged disavowal must be made by the *patentee*, not the *examiner*. *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) ("unilateral statements by an examiner do not give rise to a clear disavowal of claim scope by an applicant," as "the applicant has disavowed nothing"); *Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Hedrick*, 573 F.3d 1290, 1296-97 (Fed. Cir. 2009) ("a wide chasm exists between the weak inference from the [interview] summary . . . and a clear and unmistakable disavowal as required to limit a claim term"). As the Federal Circuit has recognized, "[p]rosecution history ... cannot be used to limit the scope of a claim unless the **applicant** took a position before the PTO." *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373 (Fed. Cir. 2003) (emphasis added). The reason for requiring the disclaimer to come from the **applicant** rather than the **examiner** is the recognition that sometimes the examiner and applicant are talking past one another. See *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1124 (Fed. Cir. 2004) (where an "examiner and applicant [are] talking past one another" and "the record finally reflects the examiner's acquiescence to the claim language chosen by the applicant, [t]his is not clear evidence of the patentee's disavowal of claim scope").

As set forth in detail below, the purported "disavowal" upon which plaintiffs seek to drastically limit the scope of claims that include a ring oscillator is <u>not</u> unambiguous, <u>not</u> unmistakable and was <u>not</u> adopted by the patentee.

### 2. Plaintiffs mischaracterize the '336 specification.

Plaintiffs incorrectly assert that the '336 specification "describes the ring oscillator frequency as non-controllable by virtue of being variable with environmental parameters." [Opp. 3:2-3] Of course, the specification makes no such disclosure. Plaintiffs point to two statements in the specification (at col 16:47:48 and col. 16:59-17:2), neither of which mentions "controllability." Instead, these statements merely refer to the fact that the invention overcomes issues in the prior art wherein the clock frequencies were <u>fixed</u> to worse case conditions and were not designed to vary. Clearly, these statements in the specification do not amount to the disavowal of all voltage controlled oscillators as plaintiffs assert, particularly because, by their nature, voltage control oscillators do not have a fixed frequency.

### 3. Plaintiffs mischaracterize the statements in the original prosecution history of the '336 patent.

Plaintiffs ask the Court to conclude that the patentees made clear in the original prosecution of the '336 patent that the claimed ring oscillator was "non-controllable" and thereby disavowed all voltage controlled oscillators. Plaintiffs, again, point to statements that, at best, fail to support their assertion, and in fact, point to the opposite conclusion. Indeed, in the statements plaintiffs cite, the patentees repeatedly point out only that the invention does not **necessitate** external circuitry to control the clock frequency; nowhere do the patentees indicate that such circuitry is prohibited in practicing the invention. Thus, in the first statement quoted by plaintiffs, the patentees told the examiner:

> the oscillator or variable speed clock varies in frequency ***but does not require*** manual or programmed inputs or external or extra components to do so.

'336 PH Amendment at 5, 0707/97 (Chen Decl., Ex. 4) (emphasis added). Similarly, in distinguishing the '336 patent invention from U.S. Patent No. 4,670,837 ("Sheets"), the patentees pointed out that by placing the clock and the CPU on the same integrated circuit, the '336 patent invention:

> ***obviates the need*** for provision of the type of frequency control information described by Sheets.

'336 PH Amendment at 8, 04/15/96 (Chen Decl., Ex. 5) (emphasis added). Later, again in distinguishing Sheets, the patentees of the '336 patent invention pointed out that:

> In Sheets, a command input is required to change the clock speed [but in] the present invention … ***[n]o command input is necessary*** to change the clock frequency.

'336 PH Amendment at 4, 01/13/97 (Chen Decl., Ex. 6) (emphasis added).

The '336 prosecution history demonstrates that the patentees distinguished their invention from the prior art by pointing out that, unlike the prior art, the oscillator or variable speed clock in their invention varies in frequency (*i.e.*, is not fixed, for example, like an external crystal) and **does not require** external frequency control. Plaintiffs' unsupported effort to expand this distinction beyond its clear meaning to impose a **prohibition** of any form of control should be rejected as unsupported and without merit.

### 4. Plaintiffs mischaracterize the '148 patent reexamination history related to Talbot.

Plaintiffs baldly assert that TPL "<u>emphasized</u>" during reexamination of the '148 patent "the non-controllability of the claimed clock circuit." [Opp. 3:27-28.] Nothing could be further from the truth. Instead, a review of the prosecution history reveals that the only reference to "non-controllability" is inclusion of the single word "non-controllable" in a summary of an interview ***prepared by the examiner***. '148 PH Interview Summary at 4 of 5, 2/12/08 (Chen Decl., Ex. 2).

> Continuation of Description of the general nature of what was agreed to if an agreement was reached, or any other comments:
>
> Discussed differences in the prior art and the claimed invention. Particularly, the patent owner argued that the references failed to teach of the limitation requiring "said memory further occupying a majority of the total area of said single substrate". The patent owner further pointed out that the reference of May, noted above, describes that the memory can be the largest and densest component on the chip, but this is different than being the "majority of the total area",
>
> ==Continuing, the patent owner further argued that the reference of Talbot does not teach of a "ring oscillator". The patent owner discussed features of a ring oscillator, such as being non-controllable, and being variable based on the environment. The patent owner argued that these features distinguish over what Talbot teaches. The examiner will reconsider the current rejection based on a forthcoming response, which will include arguments similar to what was discussed.==
>
> Joseph R. Pokrzywa
> Primary Examiner
> Central Reexamination Unit 3992

In the short, three-sentence summary of the discussion of Talbot, the examiner provided no explanation regarding the meaning of the word. Moreover, rather than relying on "non-controllability," the examiner specifically stated he would "reconsider the current rejection [premised on Talbot] based on a forthcoming response" from the patent owner.

Within 8 days of the interview (dated February 21, 2008, though filed February 26, 2008) TPL submitted the promised written response. '148 PH Remarks/Arguments, 2/21/88 (Chen Decl., Ex. 3). This written response explained that Talbot was distinguishable because "Talbot does not teach, disclose, or suggest the ring oscillator recited in claim 4." *Id*. at 11. Nowhere – and in no way – did TPL adopt the examiner's reference to "non-controllability." TPL, in fact, made no reference to that word at all.

Importantly, TPL acknowledged that "Talbot discusses a voltage-controlled oscillator (VCO)." *Id*. After that acknowledgment, TPL did not point to that feature as distinguishing Talbot from the claimed invention. Instead, TPL wrote: "<u>but</u>, [Talbot] does not teach or disclose a

ring oscillator." *Id.* TPL, in other words, did not exclude or disclaim voltage controlled oscillators, as plaintiffs assert; TPL, instead, pointed out that voltage controlled oscillators *which do not employ a ring oscillator*, such as in Talbot, do not satisfy the claimed "ring oscillator" limitation of the invention.

Of further importance, in an action dated June 25, 2008, the examiner expressly accepted the arguments contained in the written response, never mentioning the interview. Specifically, the examiner stated "Patent Owner's arguments, filed 2/26/08 with respect to the rejections [based on Talbot] have been fully considered and are persuasive. Therefore, the rejection … has been withdrawn." '148 PH Re-exam, Detailed Action, at 5 (Declaration of Michelle G. Breit in Support of Defendants' Reply Supplemental Claim Construction Brief ("Breit Decl."), Exh. A. Thus, the examiner expressly relied on the patent owner's written arguments to overcome Talbot, and *not* the interview.

The law regarding disavowal is settled: Allegedly disavowing statements must be both "so clear as to show reasonable clarity and deliberateness, and so unmistakable as to show unambiguous evidence of disclaimer" for the Court to use the statement to limit the meaning of claim terms. *Omega Eng'g, Inc.*, 334 F.3d at 1325. Here, the alleged disavowing statement – "non-controllable" – remains unexplained in the file history and not adopted by the patentee. The term itself is ambiguous, and would require further construction. For example, the patent discloses that the ring oscillator frequency will vary with changes in voltage. '336 patent, 17:21-22  That disclosure indicates, therefore, that the voltage provided to the ring oscillator is not fixed and can be changed or even controlled, rendering the meaning of "non-controllable" ambiguous. Where the meaning of purported disavowal is not apparent, there can be no "clear and unambiguous" disclaimer.

As TPL set forth in its opening brief, Talbot does not disclose a ring oscillator. The patentees distinguished Talbot on that basis and the examiner then withdrew his rejection. While the claimed inventions exclude the voltage controlled oscillator disclosed in Talbot *because it does not include a ring oscillator*, nothing in the prosecution histories of '148 and '336 patents or the '336 patent specification support plaintiffs' argument that TPL disavowed all voltage controlled

1  oscillators. Plaintiffs' request to include the limitation of "non-controllable" in the construction of
2  the term "ring oscillator," therefore, should be rejected.

### B. Talbot Does Not Disclose a Ring Oscillator.

In their opening brief, Defendants provided a detailed explanation as to why the oscillator disclosed in Talbot is not a ring oscillator. A ring oscillator requires an odd number and at least three inverters to oscillate. The Talbot oscillator under discussion here may oscillate with only one inversion stage. In particular, Fig. 3 of Talbot discloses an oscillator that may oscillate with only one inversion stage due to the presence of a Schmitt trigger.

Although Judge Ware's preliminary claim construction of "ring oscillator" in the First Claim Construction Order adopted the term "inverter" instead of TPL's proposed term "inversion," no evidence was presented to or cited by the Court to support a distinction between the words. At deposition, both experts indicated that there could be "inversions" that are not "inverters."

If the court finds that the current proposed construction needs further clarification then Defendants would propose: "interconnected electronic components comprising multiple odd numbers of inversions arranged in a loop, where three or more inversions are required to maintain an oscillating output."

## II. JUDGE WARE'S CONSTRUCTION OF "INSTRUCTION REGISTER" IS CORRECT

### A. Plaintiffs' Attempt to Limit the Term "Instruction Register" to Include Unclaimed Right-Justified Operands Violates Fundamental Rules of Claim Construction.

Plaintiffs' theory appears to be there is a single "invention" disclosed in the specification of '749 patent, which specification is shared by all divisional patents that issued from the original patent application. The theory assumes that, to the extent any claim drawn from the shared specification claims an instruction register, the claim must be read also to include not only operands but operands that are right justified only.

In fact, the '749 patent specification discloses at least 10 different inventions, as demonstrated by the 10-way restriction requirement imposed by the examiner (which is discussed

in TPL's related motion for reconsideration). The '749 patent is primarily directed to multiple-instruction fetch. The '584 patent, which shares the same specification, is directed in part to instructions that employ variable-width-operands. Based on Judge Ward's claim construction, Plaintiffs improperly attempt to read into the independent claims of the '749 patent – which do not mention operands – the limitations related to instruction groups in the claims of the '584 patent. The subject of Judge Ward's claim construction concerning "instruction groups," however, was the '584 patent. See Judge Ward Memorandum Opinion and Order, at 22-24 (Otteson Decl., Exh. 3). The '584 patent, however, claims an entirely different invention that does not include the inventive features claimed in '749 patent, but instead is directed to an invention that include right-justified operands. The term "instruction register" has a well understood ordinary meaning, as Judge Ware observed. There is no basis for limiting instruction register to hold operands or even variable-width operands; nor is there a basis in the '749 patent claims to import a limitation requiring right-justified operands, particularly when the claimed invention does not relate to decoding operands, let alone variable-width operands.

### 1. The independent claims of the '749 Patent do not require operands.

Plaintiffs argue that the specification discloses that some instructions may employ variable-width operands, and that the means for decoding these instructions requires the operands to be right-justified in the instruction register. Even assuming the specification contains that disclosure, the independent claims of the '749 patent do not require any operands. As Defendants point out in their opening brief, issued claim 1 (filed claim 3), which was discussed in the examiner's interview under consideration here, requires fixed-width instructions due to its limitation regarding bus width. That bus width limitation was present when the discussion with the examiner occurred.

Moreover, issued claim 7 (filed claim 11), which depends from issued claim 1, further limits claim 1 by adding variable-width-operands and additional structure required to decode the instructions that utilize them. Plaintiffs' flatly ignore the doctrine of claim differentiation by seeking to read into claim 1 the narrowing limitations added in claim 7.

In addition, the prosecution history related to the *independent* claims of '749 include no discussion regarding operands.  The only possible exception would be the entries related to the examiner interview; but, when one considers that issued claim 7 (filed claim 11) was also rejected over Boufarah, it becomes clear that aspect of the interview was directed at features of the *dependent* claim, as set forth in Defendants' opening brief.  (Def. Op'n. Brf. at 6:5-17.)  While the subsequent written amendment indicates that this subject matter was considered for incorporation into the independent claim, the applicant stated that invention would be filed as a separate divisional application – which it was seven months later.  Ultimately, that application matured into the '584 patent which is directed in part to instructions that use variable-width-operands.

The record provides no grounds for concluding that the applicants ever argued that issued independent claim 1 should be construed to incorporate operands, let alone variable-width operands requiring right justification.

### 2. The '749 Patent Discloses Embodiments Where Operands Are Not Right Justified.

Plaintiffs devote significant effort describing embodiments in the shared patent specification that include right-justified operands.  The inclusion of such embodiments, however, is not in dispute.  The real issue, instead, is whether the limitations and subject matter from the '584 patent (including utilizing variable width operands) should be read into the instruction register claimed in the '749 patent claims.  Fatal to plaintiffs' argument is the presence of other embodiments in the specification in which operands are present but <u>not</u> right-justified.  For example, in one embodiment, the instruction register fetches four fixed width 8-bit instructions in a single memory cycle.  See '749 Patent, 7:50-58.  The specification discloses two of these fixed-width instructions with operands that are not right-justified: "Read-Local-Variable XXXX" and "Write-Local-Variable XXXX."  See '749 Patent, 31:45-32:15.  These fixed width instructions include a 4bit opcode and a 4bit operand represented by XXXX, which is a binary number from 0000-1111 which indicates the address of one of the 16 locations on the Return Stack.  *Id*.  Because these two instructions can be in <u>any</u> of the four 8-bit slots in the instruction register, the same is true of their fixed-width XXXX operand – meaning the operand is not right justified in the

instruction register.  For example, the figure below shows how any combination of four of these instructions would contain operands that are not right justified in the 32bit instruction register as disclosed in the specifications.

| 1st location | 2nd location | 3rd location | 4th location |
|---|---|---|---|
| 4bit opcode & 4bit operand | 4bit opcode & 4bit operand | 4bit opcode & 4bit operand | 4bit opcode & 4bit operand |

Because the specification discloses instructions that employ various operand locations, the term "instruction register" cannot be construed to limit the location of operands to any particular operand location such as right-justified, as plaintiffs assert.

Instructions that utilize variable width operands are a separate and distinct novelty from the invention of multiple sequential instructions ('749 Patent, claim 1) which are supplied to the instruction register as claimed.  They were separately claimed in a divisional application that emerged into the '584 patent.  For the reasons specified here and in defendants opening supplemental claim construction brief it would be improper to adopt plaintiffs proposed claim construction which improperly imports limitations from the specifications and ignores the rules of claim differentiation.

## Conclusion

For the foregoing reasons and those forth in TPL's opening brief, the Court should adopt Judge Ware's findings in his First Claim Construction and reject Plaintiffs' effort to import extraneous limitations in the patent claims.

Dated:  November 9, 2012                 Respectfully submitted,

AGILITY IP LAW, LLP


By:   /s/ Michelle G. Breit
        James C. Otteson
        Michelle G. Breit

Attorneys for Defendants
TECHNOLOGY PROPERTIES LIMITED
and ALLIACENSE LIMITED

K<small>IRBY</small> N<small>OONAN</small> L<small>ANCE</small> & H<small>OGE</small>

By: /s/ Charles T. Hoge
      Charles T. Hoge

Attorneys for Defendant
PATRIOT SCIENTIFIC CORPORATION